UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT


THE CALF ISLAND COMMUNITY      )
TRUST, INC., and MARILYN TSAI  )
                               )
          Plaintiffs           )
     v.                        )    CIVIL NO. 3:02CV462(AHN)
                               )         (master)
YOUNG MEN'S CHRISTIAN          )
ASSOCIATION OF GREENWICH,      )
a/k/a YMCA of Greenwich,       )
THE TRUST FOR PUBLIC LAND,     )
d/b/a,THE TRUST FOR PUBLIC     )
LAND INC.                      )
          Defendants           )



UNITED STATES OF AMERICA,      )
                               )
     Plaintiff,                )
                               )
     v.                        )    CIVIL NO.  3:03CV275(AHN)
                               )
28.8 ACRES OF LAND, MORE OR    )
LESS LOCATED OFF THE COAST OF  )
GREENWICH, SITUATED IN THE     )
COUNTY OF FAIRFIELD, STATE OF  )
CONNECTICUT, YOUNG MEN'S       )
CHRISTIAN ASSOCIATION OF       )
GREENWICH, CONNECTICUT AND     )
                               )
UNKNOWN OWNERS, ET AL.,        )
                               )
     Defendants.               )

## MEMORANDUM IN SUPPORT OF PLAINTIFF'S
## MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

Plaintiff, the United States of America, submits this

Memorandum in Support of its Motion for Partial Judgment on the

Pleadings under Federal Rule of Civil Procedure 12(c).  Plaintiff

seeks partial judgment denying the objections to the taking filed

by defendant Marilyn Tsai and by "The Calf Island Community Trust, Inc." ("Trust" hereafter).

## I. STATEMENT OF FACTS

This is a condemnation case in which the United States acquired title to 28.8 acres of land in Fairfield County, Connecticut, known as Calf Island.  The taking was accomplished by filing a Declaration of Taking and depositing estimated just compensation of $6,000,000.00 in the Registry of the  United States District Court for the District of Connecticut.  The date of filing was February 13, 2003, which is also the date of taking.  On that date, the United States acquired fee simple title for the purpose of including the island in the Stewart B. McKinney National Wildlife Refuge.

Prior to the taking the United States Fish and Wildlife Service negotiated with the fee owner, Young Men's Christian Association of Greenwich ("YMCA" hereafter), through a private third party entity, Trust for Public Land, and reached an agreement on price.  Condemnation was necessary, however, because the land was subject to restrictive covenants which were inconsistent with the conservation uses for which the island was being acquired by the United States.  The beneficiaries of the restrictive covenants were the owners of property along the coastline on the Connecticut mainland which had a view of Calf Island.  Plaintiff determined that the restrictive covenants did not contribute value to the coastal properties to which they were

attached.  A title search was completed and the owners of the coastal properties and others in their chain of title, as determined by the title company, were named as defendants in this case.  Personal service is now complete.

Prior to the filing of the Declaration of Taking, Marilyn Tsai, a land owner benefitting from the restrictive covenants, and an entity named Calf Island Community Trust, Inc., brought an action in state court against the YMCA and the Trust for Public Land.  The case was removed to federal court (Civil No. 3:02CV462 (AHN)), and it is now consolidated with this condemnation case. The four-count complaint in that action alleged that the then proposed sale of Calf Island by the YMCA was a breach of the restrictive covenants, that the original conveyance to the YMCA was invalid, that the YMCA was equitably estopped from conveying the island, and that the Trust members were vested with a prescriptive easement to use the island.  Defendant YMCA has indicated it plans to file a Motion for Summary Judgment to dismiss the Trust's complaint in that action.

The Trust was not initially named as a party in this condemnation case because it did not appear as an entity included in the chain of title in the title examination, and owns no property which could form a basis for a claim as a beneficiary of the restrictive covenants.  Nonetheless, the Trust has now been added as a party (See Docket Item No. 23) and has had an opportunity to prove its interest, if any, in the subject

property.  The Trust has never provided any evidence that it has members who are beneficiaries of the restrictive covenants or that the Trust itself holds any real property interest in the island.

Marilyn Tsai and the Trust have filed an Answer Objecting to Taking in this condemnation case, in which they have presented purported objections and defenses to the taking.  They object that the acquiring federal agency is without authority to condemn and that it has failed to comply with various statutory, regulatory, and policy requirements.  The United States contends that the condemnation of this property was authorized by Congress, that defendants' objections and defenses have no merit, and that the Court should grant the United States partial judgment on the challenges raised by defendants.

## II. ARGUMENT

### A. Standard for Rule 12(c) and for Review of the Agency's Action in Condemning the Property

Rule 12(c) allows any party to move for judgment on the pleadings "after the pleadings have closed but within such time as not to delay the trial."[1]  The Second Circuit has set a standard for motions brought under Rule 12(c).

> [T]he district court must accept all allegations in the complaint as true and draw all inferences in the non-moving party's favor.  [citation omitted]  The court

---

[1] There is no issue of timeliness here, because no trial date has been set to determine just compensation for the taking.

> will not dismiss the case unless it is satisfied that
> the complaint cannot state any set of facts that would
> entitle [the non-moving party] to relief.

*Patel v. Contemporary Classics of Beverley Hills*, 259 F.3d 123,

126 (2d Cir. 2001). *See also Irish Lesbian & Gay Org. v.*

*Giuliani*, 143 F.3d 638, 644 (2d Cir.1998) (Test for evaluating a

motion for judgment on the pleadings is the same as for a motion

to dismiss under Rule 12(b)(6)); *Lion Oil Company, Inc., v. Tosco*

*Corporation*, 90 F.3d 268, 270 (8th Cir. 1996) (Judgment on the

pleadings is appropriate if the moving party clearly establishes

that there are no material issues of fact and that he is entitled

to judgment as a matter of law).

Defendants argue that the authority of the United States to

condemn this property is lacking. They have not, however,

presented any argument that compels revocation or dismissal of

the condemnation. The only question courts may consider in

takings challenges is whether there is a congressionally

authorized public purpose for which the land is being taken.

*United States v. 416.81 Acres of Land*, 514 F.2d 627, 631-32 (7th

Cir. 1975). After that question is answered, courts do not

review the executive agency's decision to condemn the particular

properties and estates. The Supreme Court's ruling in *Berman v.*

*Parker*, 348 U.S. 26, 75 S. Ct. 98(1954), states the governing

principles:

> ... Subject to specific constitutional limitations,
> when the legislature has spoken, the public interest
> has been declared in terms well-nigh conclusive. In

such cases the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation, ... [citations deleted].  This principle admits of no exception merely because the power of eminent domain is involved.  The role of the judiciary in determining whether that power is being exercised for a public purpose is an extremely narrow one.

***

...Once the object is within the authority of Congress, the means by which it will be attained is also for Congress to determine. ... [T]he means of executing the project are for Congress and Congress alone to determine, once the public purpose has been established.

348 U.S. at 32-33, 75 S. Ct. at 102-3.  *See also Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 241, 104 S. Ct. 2321, 2329-30 (1984) ("where the exercise of eminent domain power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause").

### B. Response to Defendants' "Jurisdictional" Objections

### 1) The statutes cited in the Declaration of Taking, Complaint, and Notice of Condemnation authorize the United States to condemn property for the stated wildlife refuge purpose.

The authority for this taking is set forth in Schedule "A" attached to the Declaration of Taking, Complaint, and the Notice of Condemnation.  The Declaration of Taking Act, 40 U.S.C. § 3114 (2002), is the general condemnation authority that allows the immediate taking upon filing a Declaration of Taking.  The Declaration also cites three statutes authorizing the Secretary of the Interior to purchase land: 16 U.S.C. § 460**l**-4 (1982) (provides "funds for the Federal acquisition and development of

certain lands and other areas" for outdoor recreation resources);
16 U.S.C. § 742f(a)(4) (authorizes steps "for the development,
advancement, management, conservation and protection of fish and
wildlife resources, including ... acquisition by purchase or
exchange of land and water, or interest therein"); and 16 U.S.C.
§ 1534(a)(2) (providing authorization to "acquire by purchase,
donation or otherwise ... lands, waters, or interest therein, ...
in addition to any other land acquisition authority vested in
[the Secretary]").  Furthermore, any agency that has
congressional authorization to purchase is also given authority
to condemn.

> An officer of the Federal Government authorized to
> acquire real estate for the erection of a public
> building or for other public uses may acquire the real
> estate for the Government by condemnation, under
> judicial process, when the officer believes that it is
> necessary or advantageous to the Government to do so.

40 U.S.C. § 3113.  The U.S. Fish and Wildlife Service is the
bureau authorized by Congress to administer the National Wildlife
Refuge System an the land in question is being acquired for the
Stewart B. McKinney National Wildlife Refuge specifically because
of its value in its undeveloped state as a wildlife habitat.  See
16 U.S.C. §§ 668dd(a)(1), 742(f)(4).  It is inconceivable that
the acquisition of this island could be found to have no rational
relationship to the wildlife refuge purposes stated in the
Declaration.  Defendants' objections that the taking is not
authorized are without merit.

### 2) Failure to name a party claiming an interest does not render the condemnation void under Federal Rule of Civil Procedure 71A(c)(2).

The Trust claims the condemnation case is defective because the Trust was not named as a party.  Even if correct, this objection is now moot, because the Trust has been added as a party.  Federal Rule of Civil Procedure 71A(c)(2) requires that the condemner join only those persons having or claiming an interest whose names are known; others may be added later.

> Upon the commencement of the action, the plaintiff need join as defendants only the persons having or claiming an interest in the property whose names are then known, but prior to any hearing involving the compensation to be paid for a piece of property, the plaintiff shall add as defendants all persons having or claiming an interest in that property whose names can be ascertained by a reasonably diligent search of the records, ....

Rule 71A(c)(2).  It is true, as defendants assert, that plaintiff was aware of the civil suit filed by the Trust against the YMCA.  However, the title report on the property did not reveal any interest held by the Trust, and plaintiff could not have known that the Trust claimed a compensable interest in the property.  Even if the Trust had a compensable interest, there has been no prejudice.  It will have an opportunity to have its claim heard, regardless of its merits, when the compensation issue is determined.

### 3) Distribution of estimated just compensation is not a valid defense to the taking.

Defendants Tsai and the Trust argue that disbursing the

estimated just compensation deprives them of "rights to be heard" on their objections.  They assert that disbursement of the deposit is a determination of compensation under *United States v. Certain Parcels of Land in the City of Philadelphia*, 339 F.2d 414 (3rd Cir. 1964).  To the contrary, under 40 U.S.C. § 3114 and Rule 71A(j), the deposit of estimated just compensation and its disbursement do not affect the rights of parties to challenge the taking or claim just compensation.  "The payment is of estimated compensation; it is intended as a provisional and not a final settlement with the owner." *United States v. Miller*, 317 U.S. 369, 381, *rehearing denied* 318 U.S. 798, 63 S. Ct. 276, 284 (1943).  In fact, a claimant who has a compensable property interest may present value evidence at trial and share in the distribution of the award even if he has not previously answered or appeared. *See* Rule 71A(e).  Rule 71A(j) favors disbursement and provides a procedure for adjustment of the amount disbursed at the end of the case.  In fact, on July 31, 2003 a hearing was held on an amended motion to release deposited to funds filed by the YMCA and the court entered an order of Release of Deposited funds on that day [Docket Item #22] which specifically provides for a later adjustment.  All of defendants' objections regarding distribution are unsupported and contrary to the provisions of the Declaration of Taking Act and Rule 71A.

**4)  The Secretary has discretion to determine the land needed for future expansion of the project to achieve the purpose stated in the Declaration of Taking.**

Defendants argue that the Secretary of the Interior is not authorized to expand the Stewart B. McKinney National Wildlife Refuge to include Calf Island, because Calf Island is not listed among the designated islands in the statute establishing the refuge or in a later amendment to the establishing statute.  The statutes are Public Law No. 98-548, §§ 201-306 (1984) (establishes refuge), and Public Law No. 101-443, § 2 (1990) (amendment) and they are attached hereto respectively as Exhibits 1 and 2.  Public Law 98-548 was enacted to establish the Connecticut Coastal National Wildlife Refuge[2] and Section 201 thereof sets forth the Congressional findings and purposes for establishing the refuge.  Section 203 provides the mechanism for the Security of the Interior to actually establish the refuge, Section 204 provides for the administration of the refuge and Section 205 provides for the authorization of funds for the acquisition of lands for the refuge.  Several years later Congress provided for the expansion of the refuge through Public Law No. 101-443 (1990). In section 2 of Public Law No. 101-443, Congress amended § 205 of Pub. Law 98-548 by adding three new areas to the McKinney refuge, none of which included Calf Island. However, § 2 of Public Law No. 101-443, also amended Public law 98-548 by redesignating certain sections and adding new sections

---

[2] Thereafter named the Stewart B. McKinney National Wildlife Refuge pursuant to the Stewart B. McKinney National Wildlife Refuge Act, Public Law 100-38, 101 Stat.306 (May 13,1987). Attached as  Exhibit 3.

so that it now provides for future expansion of the refuge and places the decisions for the boundary adjustments within the Secretary's discretion. The new § 207 provides that "...[t]he Secretary may acquire such additional lands for the refuge as the Secretary considers appropriate, and may adjust the boundaries of the refuge accordingly." Pub. L. No. 101-443, § 2 (1990).

Defendants rely on the additional language in § 207 that such acquisition must be "in accordance with all applicable laws ..." and they then mistakenly argue that the expansion must be within the previously designated geographical areas. See Answer Objecting to Taking at 4. Their interpretation of the statute would render it internally inconsistent. The new Section 205 created by § 2 of Public Law No. 101-443 specifically provides for the acquisition of certain designated areas for addition to the refuge.[3] On the other hand, the provision in the new § 207 captioned "Future Expansion" allows for acquisition of "additional lands" and makes provision explicitly for the Secretary to "adjust the boundaries of the refuge accordingly." Therefore, the Secretary has been given specific, discretionary authority to add Calf Island, as well as other islands, to the refuge to achieve its preservation purposes.

### 5) The Secretary has authority to use the United States' power of eminent domain.

---

[3]Section 205 provides for the addition of 690 acres of land and water known as Great Meadows Marsh in Stratford, 230 acres of land and water at Menunketesuck Island in Westbrook, and 80 acres of land and water in Norwalk Harbor.

Defendants Trust and Tsai also argue, on page 4 of their Answer Objecting to Taking, that there is no specific authorization to condemn in the refuge's enabling acts, because § 203(b) of Pub. L. No. 98-548, only refers to acquisitions made through "donation, purchase with donated or appropriated funds, or exchange." This argument fails for three reasons. First, as noted above in section B.1 of this Memorandum, authority to purchase carries with it the authority to condemn, 40 U.S.C. § 3113. Second, the provision cited by defendants was amended in 1990 to remove any perceived restrictions set out in § 203 of the 1984 Act. "Any such acquisition [for future expansion of the refuge] shall be carried out in accordance with all applicable laws and without regard to section 203 of this Act." Pub. L. No. 101-443, §2. See Exhibit 2. Third, the Secretary has authority to condemn outside these enabling acts, under the other statutes cited in the Declaration of Taking Schedule "A". *See* 16 U.S.C. § 742f(a)(4); 16 U.S.C. § 1534(a)(2). Even section 204 of Public Law No.98-548, cited by defendants, specifies that the Secretary "may utilize such additional statutory authority as may be available to him.... to carry out the purposes of the refuge" Therefore, this challenge to the Secretary's authority is without merit.

## 6) Failure to comply with NEPA and other regulations and agency policies is not a defense to condemnation.

Defendants challenge the taking on the ground that the Fish and Wildlife Service allegedly did not comply with its own

policies requiring a statement that the project is in compliance
with the National Environmental Policy Act, 42 U.S.C. §§ 4321 and
4331-4335 ("NEPA" hereafter) (Answer Objecting to Taking at 4).
They also allege that the project is not in compliance with NEPA
(Answer Objecting to Taking at 5). Compliance with NEPA,
however, is not a prerequisite to the condemnation of property by
Declaration of Taking. This view is supported by case law and by
the procedure set out for federal condemnation in 40 U.S.C. §
3114.[4]

The Eighth Circuit addressed NEPA non-compliance in *United
States v. 255.25 Acres of Land More or Less, in Monroe County,
Missouri*, 553 F.2d 571 (8th Cir. 1977). In footnote 2, the Court
said:

> The landowners' complaint as to the Secretary's
> noncompliance with NEPA and other environmental statutes has
> no merit. It has been held again and again that the "only
> question for judicial review in a condemnation proceeding is
> whether the purpose for which the property (is) taken is for
> a ... congressionally authorized use." [citation omitted]

553 F.2d at 572. *See also United States v. 178.15 Acres of Land,
More or Less, in Grayson County, Virginia*, 543 F.2d 1391 (4th
Cir. 1976) (no merit to landowners' argument that government
lacked power to condemn land because of failure to file
Environmental Impact Statement under NEPA). Thus, it is
generally accepted as a principle of eminent domain law that NEPA

---

[4] It is plaintiff's position that, as a factual matter, it is in full compliance with NEPA and with all regulatory and
agency policy requirements. The issue here, however, is whether compliance is a defense to the condemnation. This
is a question of law. Therefore, plaintiff has not presented all of the specific facts relating to its compliance with
regulatory and policy requirements.

does not provide a defense to the taking. *See City of Oak Creek v. Metropolitan Sewage District*, 576 F. Supp. 482, 490 (E.D. Wisc. 1983) (district court dismissed action for failure to state a claim where landowners sought to enjoin condemnation prior to completion of Environmental Impact Statement); *United States v. 27.09 Acres of Land in the County of Westchester, New York*, 737 F. Supp. 277 (S.D.N.Y. 1990) (condemnation proceedings can be initiated before NEPA review is completed).[5]

Consideration of the title-vesting provision in 40 U.S.C. § 3114 adds support to the proposition that a Declaration of Taking cannot be dismissed on the basis of an assertion that the NEPA review is inadequate or incomplete. In *United States v. 162.20 Acres of Land*, 639 F.2d 299 (5th Cir. 1981), the Court disposed of an asserted defense of non-compliance with project review provisions in the National Historic Preservation Act of 1966 (NHPA), 16 U.S.C. § 470 *et seq.*, by saying, "The district court, powerless to dismiss the proceedings, performs an almost ministerial function in decreeing the transfer of title." 639 F.2d at 303. *See also United States v. Cobb*, 328 F.2d 115, 116 (9th Cir. 1964) ("when a declaration of taking is filed and deposit is made, title vests in the United States and the

---

[5] Plaintiff recognizes that there is a contrary holding in *United States v. 18.2 Acres of Land*, 442 F. Supp. 800 (E.D. Cal. 1977). However, *18.2 Acres* is distinguishable in that the taking was considered to be inseparable from the proposed use. This approach has not been adopted by a majority of the circuits, nor has the Second Circuit adopted it.

district court is powerless to dismiss the proceedings").  The
Court in *162.20 Acres* presented the following reasoning:

> The filing of a declaration, by which title vests, is a
> neutral act vis-a-vis NHPA compliance procedures and the
> policy concerns behind them.  ...  [W]here it has been long
> established that the role of the district court in DOTA [40
> U.S.C. § 3114] condemnations is limited to a bare
> consideration of the legal authority to take, and where the
> courts have been careful to refrain from considering matters
> of propriety, expediency and policy with regard to the use
> of the property sought, we conclude that only an express
> statement by Congress that NHPA noncompliance is a defense
> to a condemnation itself would be sufficient to achieve that
> result.

639 F.2d at 304.  NHPA review is analogous to NEPA review.  NHPA
review must be completed for federal projects with historical
significance before any action is taken that will have an adverse
effect on the property.  The Fifth Circuit, in *162.20 Acres*,
found that NHPA did not provide a defense to a Declaration of
Taking, because title had vested under § 3114 and the only
defense to the condemnation is lack of authority to take the
land.  The same principles apply here.  In its authorization of
this project, Congress did not provide a NEPA challenge that
would nullify a declaration of taking.[6]

Defendants also argue that plaintiff failed to get other

---

[6] The proper vehicle for challenging the adequacy of environmental review is not the
condemnation case.  Rather, a proper action under NEPA seeks administrative review of
the decision of the agency under the federal Administrative Procedure Act, 5 U.S.C. §
702, *et seq*.  The procedure in Federal Rule of Civil Procedure 71A does not support an
APA action within the condemnation case.  Nor does the time honored eminent domain
case law allow this type of review of agency actions surrounding the decision to
condemn.  *See Berman v. Parker*, 348 U.S. 26 at 32-33  (1954).

prerequisite approvals before filing the Declaration of Taking,
mentioning Congressional approval for use of Land and Water
Conservation Funds and appraisal requirements, among others.
These objections to the taking, however, are also unmeritorious
as a matter of law.  Like the NEPA analysis above, the approvals
mentioned by defendants are relegated to agency decision-making
powers and may only be challenged through an action filed
pursuant to the Administrative Procedure Act.  Further support
for plaintiff's position is found in *Portland Natural Gas
Transmission System v. 4.83 Acres of Land*, 26 F.Supp.2d 332
(D.N.H. 1998).  The Court there held that the gas transmission
company did not have to wait for compliance with all
preconstruction conditions in its license before filing its
condemnation case.  *See also Tennessee Gas Pipeline Co. v. 104
Acres of Land*, 749 F. Supp. 427, 433 (D.R.I. 1990) (FERC order
does not prevent condemnation of property based on possible
denial of approval, because  requirements arise after ownership
of rights of way are obtained).

   Defendants also object based on a purported non-compliance
with appraisal requirements, set forth in a Fish and Wildlife
Service Manual, Part 342, Really Operations. The chapter of the
Manual dealing with condemnation is attached to the Answer
Objecting to Taking and is designated 342 FW 6.  Although § 6.01F
of that chapter in the Manual refers to an appraisal requirement
set forth as part of the pre-condemnation procedures provided in

the Uniform Relocation Assistance and Real Property Acquisition

Policies Act, 42 U.S.C. §§ 4601 *et seq.* ("URA" hereafter), this

Act and the agency Manual that implements it do not give rise to

takings challenges.  The URA provides:

> (a) The provisions of § 4651 of this title create no
> rights or liabilities and shall not affect the validity of
> any property acquisitions by purchase or condemnation.

> (b) Nothing in this chapter shall be construed as
> creating in any condemnation proceedings brought under the
> power of eminent domain, any element of value or of damage
> not in existence immediately prior to January 2, 1971.

42 U.S.C. § 4602.  The URA's appraisal requirement is not a valid

defense to the condemnation.  Section 4602 establishes that the

uniform relocation guidelines are not prerequisites to

condemnation.  *Tennessee Gas Pipeline Company v. New England*

*Power*, 6 F.Supp.2d 102, 104-105 (D.Mass. 1998).

Defendants object that the agency needed specific

Congressional approval for this taking.  However, § 6.9.C of the

Fish and Wildlife Service Manual, cited by defendants, and

referenced above, is only an expression of the policy of the Fish

and Wildlife Service to give notice to Congressional Committees

of its intention to file a Declaration of Taking, it is not a

requirement of law.  Furthermore, the Manual provides for

condemnation without Congressional notice where there is an

agreement on value, as there was here.  (Complaint ¶ 10).  In any

event, the policy manuals of an acquiring agency do not create a

basis for a challenge to a condemnation.  In *United States v.*

*27.09 Acres of Land*, 737 F. Supp. 277 (S.D.N.Y. 1990), the Court

rejected objections that were based on agency policies similar to the Fish and Wildlife Service Manual.  As in *27.09* Acres, the Fish and Wildlife Service Manual merely sets forth the agency's internal policies and procedures for filing condemnation cases. Like the handbook in *27.09 Acres*, it is not enforceable against the agency.  *Id.* at 286-287.  Because the Fish and Wildlife Service has authority to condemn this property for the public purpose stated in the Declaration of Taking, the objections based on failure to comply with internal procedures and agency policy requirements should be rejected.

### 7. The Complaint and Declaration of Taking meet all the Requirements of 40 U.S.C. § 3114 and Fed. R. Civ. Proc. 71A.

Defendants argue (Answer Objecting to Taking at 7) that the condemnation is defective, because the agency did not include a list of prerequisite approvals required by internal Fish and Wildlife Service policy statements.  The Declaration of Taking Act, 40 U.S.C. § 3114, requires only the following items in or attached to the Declaration:

    (1) a statement of the authority under which, and the public
    use for which, the land is taken;
    (2) a description of the land taken that is sufficient to
    identify the land;
    (3) a statement of the estate or interest in the land taken
    for public use;
    (4) a plan showing the land taken; and
    (5) a statement of the amount of money estimated by the
    acquiring authority to be just compensation for the land
    taken.

40 U.S.C. § 3114(a).  The Declaration and its Schedules contain these items and fully comply with all the statutory requirements.

The procedural requirements for complaints in condemnation are listed in Rule 71A(c)(2): "a short and plain statement of the authority for the taking, the use for which the property is to be taken, a description of the property sufficient for its identification, the interests to be acquired, and ... a designation of the defendants who have been joined as owners thereof or of some interest therein." The Declaration contains all of these items in the attached Schedules and meets all the procedural requirements. Therefore, none of defendants' "jurisdictional" objections has merit.

### C. Response to "Ownership and Transactional Considerations"

Defendants have made a number of arguments in Part II of their objections regarding title to the property and the rights of the restrictive covenant holders. The thrust of the arguments is that the Court should not distribute the estimated just compensation before hearing the objections and determining the right to compensation of defendants Trust and Tsai. The suggestion that they have been denied the right to have their claim heard is disingenuous. A hearing on the YMCA's distribution motion was scheduled and held, but the Trust and Marilyn Tsai did not appear at the hearing due to a sudden decision to fire their counsel. They chose to terminate their counsel but they should have arranged for representation at this important hearing.

Nor has the Trust submitted any information to the Court or to the United States that establishes any interest in the property whatsoever, compensable or not. To date, the Trust has not provided any documents, evidence, or argument that would support a finding that they have an interest in this property that is a recognizable property interest. The Fifth Amendment to the United States Constitution allows compensation only for private property that is taken. Condemnation is a proceeding *in rem*, which is not a taking of rights of persons, but an appropriation of the land or property itself, *United States v. 25.936 Acres of Land in Borough of Edgewater*, 153 F.2d 277, 279 (3rd Cir. 1946). Defendants have the burden of proving that they have a private property interest that entitles them to compensation. *United States v. Powelson*, 319 U.S. 266, 274 (1943) (landowner has burden of proving he is entitled to just compensation and the amount thereof). Therefore, plaintiff urges the Court to find that, having had an opportunity to present evidence of a compensable interest, defendants Trust and Tsai cannot now seek to overturn the distribution. They may yet be given another opportunity to seek compensation at the hearing on that issue but they do not have a basis to challenge the taking itself.

## III. CONCLUSION

The Court should reject defendants' objections to the taking and grant plaintiff Partial Judgment on the Pleadings, leaving only the issue of just compensation to be determined after hearing and based on the agreements of the parties.

                    Respectfully submitted,

                    KEVIN J. O'CONNOR
                    UNITED STATES ATTORNEY


                    _____

                    JOHN HUGHES, CIVIL CHIEF
                    P.O. Box 1824
                    FEDERAL BAR NO. ct05289
                    New Haven, CT  06508
                    (203) 821-3700
                    john.hughes@usdoj.gov

                    JOY RYAN, TRIAL ATTORNEY
                    United State Department of Justice
                    Environment and Natural Resources Division
                    Land Acquisition Section
                    P.O. Box 561, Ben Franklin Station
                    Washington, D.C.  20044
                    (202) 305-0298

CERTIFICATION

This is to certify that a copy of the within and foregoing

Memorandum in Support of Plaintiff's Motion for Partial Judgment

on the Pleadings has been mailed, postage prepaid this

day of February, 2004 to:

John Van Allen Murray, Esq.
Diserio Martin O'Connor &
    Castiglioni, LLP
One Atlantic Street
Stamford, CT 06901

Mary E. Sommer, Esq.
Sandak, Hennessy & Greco, LLC
970 Summer Street
Stamford, CT 06905

Joy Ryan, Esq.
United States Department of Justice
Environment & Natural Resources Division
Land Acquisition Section
P.O. Box 561
Ben Franklin Station
Washington, DC 20044

Dorothy Nelson Stookey, Esq.
New England Regional Counsel
The Trust for Public Land (Ind.)
33 Union Street
Boston, MA 02108

Philip H. Bartels
Holland Kaufmann & Bartels, LLC
289 Greenwich Avenue
Greenwich, CT 06830-6595


_____
JOHN B. HUGHES
ASSISTANT U.S. ATTORNEY
FED. BAR NO. CT05289
157 CHURCH STREET
NEW HAVEN, CT 06510