UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(at Bridgeport)

FILED

2004 FEB 27  P  1: 44

| | | |
|---|---|---|
| THE CALF ISLAND COMMUNITY | ) | CIVIL NO. 3-02-CV-462 (AHN) |
| TRUST, INC., and MARLYN TSAI | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| YOUNG MEN'S CHRISTIAN ASSOCIATION | ) | |
| OF GREENWICH, a/k/a, YMCA OF GREENWICH, | ) | |
| THE TRUST FOR PUBLIC LAND, d/b/a, | ) | |
| THE TRUST FOR PUBLIC LAND (INC.) | ) | |
| | ) | |


| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CIVIL NO. 3-03-CV-275 (AHN) |
| | ) | |
| v. | ) | |
| | ) | |
| 28.8 ACRES OF LAND, MORE OR LESS, | ) | |
| LOCATED OFF THE COAST OF | ) | |
| GREENWICH, SITUATED IN THE COUNTY | ) | |
| OF FAIRFIELD, STATE OF CONNECTICUT, | ) | |
| YOUNG MEN'S CHRISTIAN ASSOCIATION | ) | |
| OF GREENWICH, CONNECTICUT (YMCA), | ) | |
| AND UNKNOWN OWNERS, ET AL. | ) | |
| | ) | February 25, 2004 |

## DEFENDANT YMCA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

***Subject Pleading***:   The 2/13/02 Complaint filed in the above–entitled Master Case
by The Calf Island Community Trust, Inc. and Marlyn Tsai

---

In connection with the above–referenced 2/13/02 "State Court" Complaint,

defendant **Young Men's Christian Association of Greenwich ("YMCA")** hereby files

this Memorandum of Law in Support of its Motion for Summary Judgment, of even

date herewith, pursuant to Local Rule 7(a)(1).

No. 3-02-CV-462 (AHN) (Master Docket)                    •*Defendant YMCA's Memorandum*
No. 3-03-CV-275 (AHN) (Member Case)                      *of Law in Support of its Motion*
*(United States District Court, at Bridgeport, CT)*       *for Summary Judgment*

1.    **The Summary Judgment Standard.**   In <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986), the Supreme Court summarized the two-prong summary judgment requirement in FRCP Rule 56(c), as follows:  a Motion for Summary Judgment is to be granted "if there is no genuine issue as to any material fact and that if the moving party is entitled to judgment as a matter of law".  This is so even if there were *"some* alleged factual dispute between the parties [which nevertheless] will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact".  477 U.S. at 247-48, 106 S. Ct. at 2510 (Emphasis in the original).  As discussed in the balance of this Memorandum, each of the foregoing two Rule 56(c) requirements has been met with regard to the Four Counts of the State Court Complaint.

2.    **The Requirements Re: Standing.**   As reaffirmed in <u>Steel Company v. Citizens for a Better Environment</u>, 523 U.S. 83, 102, 118 S. Ct. 1003, 1016, 140 L. Ed. 2d 210 (1998), in each lawsuit there necessarily is, "the threshold jurisdictional question: whether respondent, the plaintiff below, has standing to sue [because] Article III, §2, of the Constitution extends the 'judicial Power' of the United States only to 'Cases' and 'Controversies'".  As the Supreme Court further explained, 523 U.S. at 102-04, 118 S. Ct. at 1016-17:

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*
*(United States District Court, at Bridgeport, CT)*

*•Defendant YMCA's Memorandum*
*of Law in Support of its Motion*
*for Summary Judgment*

> The "irreducible constitutional minimum of standing" contains three requirements. First and foremost, there must be alleged (and ultimately proved) an "injury in fact"—a harm suffered by the plaintiff that is "concrete" and "actual or imminent, not 'conjectural' or 'hypothetical.'" Second, there must be causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant. And third, there must be redressability—a likelihood that the requested relief will redress the alleged injury. This triad of injury in fact, causation, and redressability constitutes the core of Article III's case-or-controversy requirement, and the party invoking federal jurisdiction bears the burden of establishing its existence. (Cits. and Footnote omitted).

Simply put: "The plaintiff must have a personal stake in the litigation". Fetto v. Sergi, 181 F. Supp. 2d 53, 67 (D. Conn. 2002) (CFD) (Cit. omitted). As discussed in the balance of this Memorandum, the YMCA has made a proper showing that neither of the State Court Complaint plaintiffs has standing to assert any of the claims in the four 2/13/02 Counts. (In this context, it is noted that: (i) only Mrs. Tsai is asserting 2/13/02 Counts One and Two; and (ii) only The Calf Island Community Trust, Inc. — the "Trust"— is asserting 2/13/02 Counts Three and Four.)

3.    **Count One (Re: Alleged Breach of the 6/21/55 Restrictive Covenant).**

(a)    **The 6/21/55 Restrictive Covenant has not been breached.** In sum, in Count One plaintiff Marlyn Tsai impliedly asserts in her "artful pleading", *See, e.g.,*

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Defendant YMCA's Memorandum
of Law in Support of its Motion
for Summary Judgment

U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 389 (3d Cir. 2002), that the then–impending ownership by the United States of Calves Island would be in violation of the 6/21/55 Quitclaim Deed (the "6/21/55 Deed"—See Exhibit "B") from the four subject donors (the "6/21/55 Four Donors"). (All references herein to Exhibits are referenced to Exhibits "A" to "L", which are attached to the YMCA's Local Rule 56(a)(1) Statement of Material Facts, of even date herewith.)

More specifically, Mrs. Tsai first states in Count One that she is the owner of 109 Byram Shore Road (the "Tsai Premises"), in Greenwich, Connecticut. (Count One, Paragraph 2). She then impliedly alleges (Count One, Paragraph 11) that the ownership by the United States of the Island would be in violation of the following restrictive covenant (the "6/21/55 R/C") in Paragraph 1 of the 6/21/55 Deed: that, except during the ownership by the YMCA (or a successor entity), Calves Island "shall never be used for any purpose other than residential purposes".

However, "used for residential purposes only" restrictive covenants have long ago acquired under Connecticut real property common law a straight–forward, common sense meaning (which is in accord with the common law from the sister states), viz., simply that it is a "use" restrictive covenant (in sharp contrast to a "structures" restrictive covenant) and thus a use for "residential purposes contemplates the continued existence of such an area from which business is excluded". Bickell v. Moraio, 117 Conn. 176, 181, 167 A. 722 (1933). Accord:

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Defendant YMCA's Memorandum
of Law in Support of its Motion
for Summary Judgment

Mellitz v. Sunfield Co., 103 Conn. 177, 185-86, 129 A. 228 (1925) (property that is restricted to residential purposes does not have to be developed into a residential neighborhood, but instead it only must not be used for a business purpose–citing Laughlin v. Wagner, 146 Tenn. 647, 244 S.W. 475 (1922)); Shorefront Park Improvement Association v. King, 157 Conn. 249, 256-57, 253 A. 2d 29, 33 (1968); 20 Am. Jur. 2d, Covenants, Conditions and Restrictions, §181, at pp. 605-06 (1995) ("[t]he word 'residential' as used in a covenant restricting the use of property is used in contradistinction to 'business' or 'commerce'"– Footnote 47); 43 ALR 4th 71, at p. 76; 99 ALR 3d 985, at p. 987.

As discussed in the preceding paragraph, the 6/21/55 R/C is only a "use" restriction in contrast to a "structures" restriction. In this context, Connecticut common law is clear that a use restriction will not be transmogrified into constituting a "structures" restriction, and vice-versa. For example, in 5011 Community Organization v. Harris, 16 Conn. App. 537, 540, 548 A.2d 9, 10-11 (1988), there was a structures restriction that stated: "only one dwelling house shall be erected on said lot . . . and that no out building shall be erected upon said lot other than a private garage". In said case, Burger King had wanted to use the subject property, which was encumbered by the foregoing restriction, as a parking lot for its restaurant that was located on an adjacent and non-restricted parcel. The Appellate Court held, 16 Conn. App. at 541, 548 A.2d at 11, that because "the [structures] restrictions do not

-5-

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Defendant YMCA's Memorandum
of Law in Support of its Motion
for Summary Judgment

prohibit the _use_ of the property in question as a parking lot, but only limit the quality and type of dwelling that may be erected thereon" (Emphasis supplied), therefore, the structures restriction did not prohibit the use of the property as a commercial parking lot.

Similarly, in <u>Neptune Park Association v. Steinberg</u>, 138 Conn. 357, 358, 84 A.2d 687, 689 (1951), the structures restriction prohibited the erection of "any building or structure other than _a_ dwelling house". (Emphasis supplied). The defendants therein were four married sisters who had a total of eight children, and all four families spent their summer vacations together in the one dwelling house that had been constructed on the lot. The Supreme Court held that the multi-family _use_ of the house was not in violation of the "one dwelling house" structures restriction, which was "not concerned with the use to which the structure is to be put after it is erected", but instead it was directed only at the "form and design of the permitted structure". _Id._, 138 Conn. at 361, 84 A.2d at 690. In sum, the 6/21/55 R/C's use restriction does not require that the structures on the Island must be residential structures. Instead, the Island (including any structures thereon) simply cannot be _used_ for any commercial purpose.

Therefore, even if the 6/21/55 R/C had not been extinguished on 2/13/03 via the Government's 2/13/03 Condemnation Complaint (and its 2/13/03 $6M deposit with the Clerk of the Court) pursuant to the Declaration of Taking Act (the "DTA"),

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Defendant YMCA's Memorandum
of Law in Support of its Motion
for Summary Judgment

40 U.S.C. §258a, (*See* Paragraph 7(b) below), nevertheless, it is beyond dispute that the ownership of Calves Island by the United States (and administered as a Federal Wildlife Refuge by the United States Fish and Wildlife Service—the "FWS") is not whatsoever a commercial use of the Island. (*See* the public uses to be made of the Island, as a part of the FWS's Stewart B. McKinney National Wildlife Refuge, which are listed on page 1 of Schedule "A" to the Government's 2/13/03 DTA Complaint, which was filed in the Member Case). Thus, the 6/21/55 R/C (even if, *arguendo*, it were to still remain valid and enforceable after the filing of the 2/13/03 DTA Complaint) would obviously not be violated by the FWS's exclusive management and control of the Island as a Federal Wildlife Refuge, which wholly non–commercial conduct is being undertaken pursuant to the numerous wildlife refuge statutes cited on said Schedule "A", at page 1.

(b) **As a separate matter: Mrs. Tsai has no standing to assert the claim in Count One**. In an overview, because for four reasons Mrs. Tsai has never had any interest in the Island (via fee simple or otherwise), and thus she could not have incurred any personal injury arising out of a purported breach of the 6/21/55 R/C with respect to the Island, she thereby fails to meet the case-or-controversy's first requirement for standing of having suffered an "injury in fact" involving the Island. *See, e.g.,* Steel Company, 523 U.S. at 102-04, 118 S. Ct. at 1016-17. More specifically:

-7-

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Defendant YMCA's Memorandum
of Law in Support of its Motion
for Summary Judgment

First, in the two relevant deeds with respect to Mrs. Tsai's current ownership of the Tsai Premises (*viz*.: (i) the 11/21/69 Executors' Deed to Gerald Tsai – Exhibit "C"; and (ii) his 6/24/86 Warranty Deed to Mrs. Tsai – Exhibit "D"), there is no reference whatsoever made to any interest that was conveyed therein with respect to the Island. (*For example*, there is no language in either Tsai Deed that: "the Premises at 109 Byram Shore Road are hereby conveyed *together with* an undivided appurtenant interest in and to Calves Island"). In this context, it is hornbook law that a real property grantee can receive no greater title than his deed has conveyed to him. This result arises from a doctrinal corollary to the "admissions-by-privies" principle. Said principle holds that the declarations of a real property predecessor-in-title constitute admissions against interest as to the subject parcel of real property and thus are "admissible against his or her successors in title". 29A <u>Am</u>. <u>Jur</u>. 2d, Evidence, §824, pp. 211-12 (1994). Herein, it is a declaration "in the negative", <u>*viz*</u>., that neither of her immediate predecessors-in-title had stated in their respective deeds (Exhibits "C" and "D") that the title to the Tsai Premises also included an interest in the Island. Accordingly, said admissions in the Exhibit "C" and "D" deeds for the Tsai Premises wholly negate Ms. Tsai's assertion herein that she has an interest in the Island. Moreover, as a final matter that confirms the admissions by her predecessors-in-title, Mrs. Tsai's own conduct of acceptance (and her 6/30/86 prompt recording) of the 6/24/86 Deed unequivocally precludes her, particularly now seventeen years

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Defendant YMCA's Memorandum
of Law in Support of its Motion
for Summary Judgment

later, from arguing that an appurtenant interest in the Island was somehow included in her 6/24/86 Deed.

As a second reason, because the allegations in the 2/13/02 Second Count that there are three alleged defects in the 6/21/55 Deed are without merit (*See* Paragraph 4 below), therefore, the 6/21/55 Deed was valid and only the YMCA thus owned the fee simple of the Island from 6/21/55 up through the 2/13/03 date of the Government's DTA condemnation of the Island. Third, neither Mrs. Tsai or anyone else had a reversionary, a contingent or any other non-fee simple interest in the Island from 6/21/55 to 2/13/03: (i) because the 6/21/55 Four Donors did not retain any interest in the Island in the 6/21/55 Deed (*See* the 6/21/55 Deed), nor did they convey away any interest in the Island other than the fee simple to the YMCA in the 6/21/55 Deed (*See:* Exhibit "B"; and Paragraph 4(i) of the accompanying YMCA Supporting Affidavit); and (ii) because the YMCA did not convey away any interest in the Island during the period from 6/21/55 to 2/13/03 (*See* Paragraph 3(ii) of the YMCA's Supporting Affidavit).

Fourth and finally, if a Connecticut resident fails to convey away or otherwise dispose of an asset during his lifetime, thus, it necessarily must pass via his probate estate to his heirs pursuant to the Connecticut Decedents' Estates Act, C.G.S. §§ 45a-273, *et seq.*, at §45a-353(b). Said Section defines the assets of a decedent's estate as: "all property and property interests, whether real or personal, ... of a

No. 3-02-CV-462 (AHN) (Master Docket)          •Defendant YMCA's Memorandum
No. 3-03-CV-275 (AHN) (Member Case)            of Law in Support of its Motion
(United States District Court, at Bridgeport, CT)     for Summary Judgment

decedent at the time of his death". *Ibid*. (Ellipses added). Therefore, if the 6/21/55

Deed were invalid for any reason, then, the undivided interest of each of the 6/21/55

Four Donors, upon death, would have become part of his or her probate estate and

would have passed thereunder to his/her heirs (subject, of course, to any creditor's

claims and the other financial obligations of a probate estate). Because Mrs. Tsai does

not allege that she has any interest in the probate estate of any of the 6/21/55 Donors

(including her predecessor-in-title once-removed, Rowena Lee Teagle), therefore, even

if *arguendo* the 6/21/55 Deed were invalid, nevertheless, the respective interests in

the Island of the 6/21/55 Donors would necessarily have passed only on to the heirs

of the 6/21/55 Four Donors (pursuant to the Decedents' Estates Act), and not to Mrs.

Tsai or to any other non-heir of the 6/21/55 Donors.

In sum, for these four reasons Mrs. Tsai has no interest in the Island. Without

any such interest, Mrs. Tsai could not have suffered any "injury in fact" with respect to

the Island, including any injury arising from Count One's  purported breach of the

6/21/55 R/C. Therefore, as a second and separate reason for the dismissal of Count

One, she has no standing under the strict requirements of Steel Company, 523 U.S.

at 102-04, 118 S. Ct. at 1016-17, to assert any Count One claim.

    4.    **Count Two (Re: Alleged Invalidity of the 6/21/55 Deed)**. In an overview,

Mrs. Tsai alleges in Count Two (at Paragraphs 13 and 15): that there were three fatal

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Defendant YMCA's Memorandum
of Law in Support of its Motion
for Summary Judgment

defects in the 6/21/55 Deed; and that, because she was a successor–in–title to a *mainland* parcel of property of one of the 6/21/55 Four Donors (*viz*., the Tsai Premises), she therefore has an undivided interest in Calves Island as a result of said purported invalidity of the 6/21/55 Deed. (It is noted that the allegations in Paragraph 15 of Count Two with regard to the YMCA/TPL 6/30/99 Bargain Sale Option Agreement, which obviously is not a "document of transfer", are therefore wholly irrelevant to the narrow Count Two claim that (in Mrs. Tsai's own words) is limited strictly to: "Invalidity of Documents of Transfer".)  In sum, as discussed below in Paragraphs 4(a)-(d), Mrs. Tsai's claims in Count Two with regard to the validity of the 6/21/55 Deed are without merit, as follows: (i) the three alleged defects do not exist; and (ii) even if *arguendo* there were any defects in the 6/21/55 Deed, nevertheless, Mrs. Tsai does not have standing to raise any such issues.

(a)  **The 6/21/55 Four Acknowledgments complied with the Connecticut Statutes.** The 6/21/55 Deed undisputably complied with each of the four statutory requirements (including the notary public's acknowledgment requirement) for a valid real property deed pursuant to then–applicable §7805 of the Connecticut General Statutes, Revision of 1949 (Exhibit "L"), which four requirements are the same as the present–day four requirements in C.S.G. §§47-5(a)(1)–(4)) (Exhibit "L"), *i.e.*: (i) the deed must be in writing; (ii) it must be signed by the grantor; (iii) (at issue herein) it must be acknowledged by the grantor "to be his free act and deed"; and (iv) it must

-11-

No. 3-02-CV-462 (AHN) (Master Docket)                    •*Defendant YMCA's Memorandum*
No. 3-03-CV-275 (AHN) (Member Case)                      *of Law in Support of its Motion*
*(United States District Court, at Bridgeport, CT)*      *for Summary Judgment*

be attested to in writing by two witnesses. A review of each of the four Acknowledgments in the 6/21/55 Deed shows that each Acknowledgment therein: (i) was signed and "sealed" by a Notary Public; and (ii) did carefully track word-for-word the formulaic statutory language, "to be his free act and deed" (except the Acknowledgment for Mrs. Teagle properly stated: "and acknowledged the same to be *her* free act and deed" — Emphasis supplied).

Moreover, even if there were any technical defects in the 6/21/55 Deed, such as its Acknowledgments, which there clearly were not, such technical defects would nonetheless be automatically cured by the General Assembly's biennial Validating Acts, which have been enacted in each odd−numbered year since at least 1919. *See, e.g.,* Lupoli v. Lupoli, 38 Conn. App. 639, 642-43, 662 A. 2d 809, 811, *cert. den.* 235 Conn. 907, 665 A. 2d 902 (1995). ("This argument is unavailing, however, because the imperfections in the execution of the deed, if any were cured by the passage of Special Acts, 1993, No. 93-17, which validated deeds otherwise infirm") (Cit. and Footnote omitted). *Accord*: Molk v. Micklewright, 151 Conn. 606, 610, 201 A.2d 183, 185 (1964); Dennen v. Searle, 149 Conn. 126, 133-34, 176 A.2d 561, 566 (1961); Giannopoulos v. Corbin, 7 Conn. App. 601, 603, 509 A.2d 1075, 1077 (1986); Grabarz v. Waleski, 5 Conn. App. 435, 436, 499 A.2d 433, 434 (1985). For example, a typical Validating Act is the Validating Act of 1993, Special Acts 93 - 17, at Section 3, which provided as follows:

No. 3-02-CV-462 (AHN) (Master Docket)              •Defendant YMCA's Memorandum
No. 3-03-CV-275 (AHN) (Member Case)                 of Law in Support of its Motion
(United States District Court, at Bridgeport, CT)   for Summary Judgment

> Sec. 3. **CONVEYANCES.** (a) <u>No</u> deed, mortgage, lease, power of attorney, release, assignment or other instrument made for the purpose of conveying, leasing, mortgaging or affecting any interest in real property in this state and recorded prior to the effective date of this act in the land records of the town in which such real property is located *shall be <u>deemed</u> <u>invalid</u>*, because any such deed, mortgage, lease, power of attorney, release, assignment or other instrument:
>
> (1)    Was not acknowledged or *was improperly acknowledged*, or the person taking the acknowledgment did not have the authority to do so, or the authority of the person taking such acknowledgment was not properly stated or authenticated, or the date or place of such acknowledgment is not stated.  (Emphasis supplied).

Thus, each of the twenty-three intervening Validating Acts enacted after the 6/24/55 recording of the 6/21/55 Deed, *viz*., from 1957 to 2003, has validated any improperly stated acknowledgment in the 6/21/55 Deed.

(b)    <u>**The property description was sufficient**</u>. As confirmed in 23 Am. Jur. 2d, Deeds §48, at p. 106 (2002): "Where certain land has acquired a name by which it is generally known or by which it may be identified with certainty, it is sufficient in a conveyance of the land to describe it by such name".  (Footnote omitted). In the chain of title of the Island going as far back as the 2/23/21 Deed of the Island from Hunter S. Harstow to The Island Corporation ("TIC") (Exhibit "H"), and the 6/17/55 Deed (Exhibit "I") from TIC to the 6/21/55 Four Donors (or their immediate predecessors-in-title), Calves Island was uniformly described in said 2/23/21 and 6/17/55 Deeds, as well as on the first page of the 6/21/55 Deed (and

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*
*(United States District Court, at Bridgeport, CT)*

•*Defendant YMCA's Memorandum*
*of Law in Support of its Motion*
*for Summary Judgment*

also on the Survey that was appended to the 6/21/55 Deed and entitled "Calves Island"), as the parcel "commonly known as Calves Island". In addition, 39 years before the 6/21/55 Deed was recorded and even 6 years before the 2/23/21 Deed to TIC was recorded, a 1/31/16 Survey (Exhibit "J") of "Calves Island" was filed in the Office of the Greenwich Town Clerk as Map No. 559. Indeed, the Trust importantly confirms the foregoing validity of description of the property by its commonly–known name because the Trust itself uses a variant of the name of this well–known parcel of Greenwich property in its own corporate name: The **Calf Island** Community Trust, Inc. (Emphasis supplied).

Moreover, the Connecticut courts will construe a deed so as to remove any patent or latent ambiguities in order to effectuate the intent of the parties, *viz*., to undertake a valid transfer the subject property. *See, e.g.,* Il Giardino, LLC v. Belle Haven Land Company, 254 Conn. 502, 510-11, 757 A.2d 1103, 1110 (2000); Young Men's Christian Association of Meriden v. Zemel Brothers, 171 Conn. 310, 311, 370 A. 2d 937, 937-38 (1976); Torgerson v. Sarah Tuxis Residential Services, Inc., 81 Conn. App. 435, 440, ____ A.2d ____ (2004). *See also* 23 Am. Jur. 2d, Deeds, §40, at p. 101 (2002). Finally, if there is an ambiguity in a deed's description, it shall be "construed *against* the grantor and *in favor of* the grantee", Mackie v. Hull, 69 Conn. App. 538, 542, 795 A.2d 1280, 1284 (2002) (Emphasis supplied), such as the construction to be made in favor of the YMCA (as the grantee in the 6/21/55 Deed). In sum, the property was sufficiently described in the 6/21/55 Deed.

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Defendant YMCA's Memorandum
of Law in Support of its Motion
for Summary Judgment

(c)    **The YMCA was properly named as the 6/21/55 Grantee**.  The

YMCA was legislatively chartered (as distinguished from being privately incorporated)

as a corporation as, "Young Men's Christian Association of Greenwich", pursuant to

a Special Resolution of the Connecticut General Assembly in its January, 1915

Session, as approved on 5/21/15. (*See* the photocopy of the Connecticut Secretary

of the State's – the "CSOS" – 1/31/02 Certified Copy of the YMCA's 7/3/16 Certificate

of Organization, which was filed with the CSOS on 7/12/16 pursuant to the General

Assembly's 5/21/15 Resolution,  and which is  attached hereto as Exhibit "E".)  As

such, the YMCA is "a chartered corporation as distinguished from the joint–stock

corporation which is organized under the general law". Barber v. Morgan, 89 Conn.

583, 587, 94 A. 984 (1915).

The  relevant set of the Connecticut General Statutes with regard to the

YMCA's  chartering by the General Assembly on 5/21/15 is the Revision of 1902, as

amended  in 1903 and 1907. In the relevant portion of said Revision of 1902, as

amended at Chapter 194 of the 1903 Public Acts (and as restated and unchanged as

§3419 in the Revision of 1918) (Exhibit "K"),  it was confirmed that the terms of a

corporation's charter (which charter, as discussed above, would be created via a

Special Resolution of the General Assembly) would *not* be subject to the general

provisions concerning corporations (the "General Provisions") in the 1902 Revision, as

amended, in the event that the charter did not comply with the General Provisions.

Thus, the requirement  in the General Provisions, at §3311 of the Revision of

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*
*(United States District Court, at Bridgeport, CT)*

•*Defendant YMCA's Memorandum*
*of Law in Support of its Motion*
*for Summary Judgment*

1902, as amended and restated as Section 3420 of the Revision of 1918 (*See* Exhibit

"K"), that the terms "Company", " Corporation" or "Incorporated" must be after or

under the corporation's name only applies to corporations which were incorporated

pursuant to the General Provisions (*i.e.*, incorporated by an attorney or other such

person), in sharp contrast to corporations (such as the YMCA) that were specially

chartered by the General Assembly. In conclusion, the YMCA's name has *ab initio*

been in proper form for a *chartered* corporation; and it was specifically to said

properly–named entity to which the Island was conveyed via the 6/21/55 Deed (with

the designation of "Connecticut" that had been superfluously added to the end of its

name).


     (d)    **In addition to the fact that the 6/21/55 Deed was valid, Mrs. Tsai**

**does not have standing to raise the claim in Count Two**.  Similar to Count One,

because Mrs. Tsai does not have any interest in the Island for the four reasons

discussed above in Paragraph 3(b), therefore, she fails to satisfy the <u>Steel Company</u>

"injury in fact" first requirement for standing. Accordingly, Mrs. Tsai's claims in Count

Two are without merit for this second and separate reason.


    5.    **Count Three (Re: Alleged Breach of Promissory Estoppel)**.

    (a) **The Trust's status herein is solely in its capacity as a *representative***

**of its members**. As the Trust has very clearly pleaded in Count Three, Paragraph 14,

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*
*(United States District Court, at Bridgeport, CT)*

•*Defendant YMCA's Memorandum*
*of Law in Support of its Motion*
*for Summary Judgment*

it is acting herein <u>only</u> as a representative of "[i]ts members", who are unnamed individuals "who would otherwise have standing to sue [herein] in their own right".

(b) **However, the Trust has never had any members**. The issue is thus presented pursuant to the applicable sections of the Connecticut Nonstock Corporation Act, C.G.S. §§3-1000, *et seq.*, at C.G.S. §§33-1026(a)(3) and 1055: what limitations or prohibitions with respect to members are there in the Trust's Certificate of Incorporation? In this context, the Trust was incorporated via a 6/14/01 Certificate of Incorporation (the "6/14/01 C/I") (Exhibit "F"), which was filed on 6/18/01 with the Connecticut Secretary of the State (the "CSOS"). In Paragraph 2(A) of the 6/14/01 C/I, the following prohibition is set forth: "The corporation shall ***not*** have members". (Emphasis supplied). In addition, as confirmed via the 2/24/04 CSOS "CONCORD" website printout (Exhibit "G"), the 6/14/01 C/I has not been amended. Thus, the Trust has never had any members.

(c) **Accordingly, the Trust has no Standing Re: Count Three**. In <u>Irish Lesbian and Gay Organization v. Giuliani</u> ("<u>ILGO</u>"), 143 F.3d 638, 649 (2d Cir. 1998), the Court held that, as with an individual plaintiff, an organization must similarly meet the requirements of standing in order to be able to assert a claim:

> It is well established that organizations are entitled to sue on their own behalf for injuries they have sustained. To do so, the organization must meet[] the same standing test that applies to individuals ... [by] show[ing] actual or threatened injury in fact that is fairly traceable to the alleged illegal action and likely to be redressed by a favorable court

-17-

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*
*(United States District Court, at Bridgeport, CT)*

*•Defendant YMCA's Memorandum*
*of Law in Support of its Motion*
*for Summary Judgment*

decision.   (Cits. and Internal Quotation Marks omitted; Textual alterations in the original).

Thus, the issue is whether or not the Trust has satisfied this <u>ILGO</u> standing requirement.  Because the Trust asserts no claims in Count Three that are independent of its purported members' claims, and because there are no members who could have suffered any injury in fact, therefore, the Trust has no standing and accordingly its claims in Count Three are without merit.

6.    <u>Count Four (Re: Alleged Prescriptive Easement)</u>. Similar to Count Three, the Trust alleges in Count Four, at Paragraph 18, that it is asserting the claims therein only on behalf of its purported members, as follows: "The members of the Plaintiff Trust, on whose behalf it is acting in a ***representative*** capacity...". (Emphasis and Ellipses supplied).   Because the Trust asserts no claims in Count Four that are independent of its purported members' claims, and because there are no members, therefore, the Trust has no standing under the <u>ILGO</u> test, 143 F. 3d at 649, and accordingly its claims in Count Four are without merit.

7.    <u>In addition, the 2/13/03 DTA Complaint has rendered the State Court Complaint moot in its entirety</u>.

(a) <u>The Mootness Doctrine</u>.  Similar to the standing requirement, the mootness doctrine is also based on Article III, §2, Cl. 1 of the Constitution. As

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Defendant YMCA's Memorandum
of Law in Support of its Motion
for Summary Judgment

explained in <u>Van Wie v. Pataki</u>, 267 F.3d 109, 113 (2d Cir. 2001):

> "The mootness doctrine is derived from Article III of the Constitution, which provides that federal courts may decide only live cases or controversies. This case–or–controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate. A case becomes moot when *interim* relief or *events* have eradicated the effects of the defendant's act or omission and there is no reasonable expectation that the alleged violation will recur." (Cits. and Internal Quotation Marks omitted; Emphasis supplied).

Similarly, as the Supreme Court stated in <u>City of Erie v. Pap's A.M.</u>, 529 U.S. 277, 287, 120 S. Ct. 1382, 1390, 146 L. Ed. 2d 265 (2000), mootness is a seminal matter of justiciability: "A case is moot when the issues presented are no longer live". (Cits. and Internal Quotation Marks omitted). As a final aspect of this doctrine, the courts must evaluate "mootness 'through all stages' of the litigation in order to ensure there remains a live controversy". <u>21st Century Telesis Joint Venture v. Federal Communications Commission</u>, 318 F. 3d 192, 198 (D.C. Cir. 2003) (Cits. omitted). *Accord*: <u>Van Wie</u>, 267 F.3d at 113.

(b) **The *post–2/13/02* intervening event of the filing of the 2/13/03 DTA Complaint.** As noted previously, the Government simultaneously filed its 2/13/03 DTA Complaint in the above–entitled Member Case along with its $6M deposit of the "estimated compensation [that was] stated in [the DTA Complaint]", 40 U.S.C. §258a, on the second page of Schedule "A" of the DTA Complaint. As a result of making said 2/13/03 $6M deposit, then, pursuant to the explicit provisions of the DTA: "title to [the subject] lands in fee simple absolute... shall vest in the United States of America". *Ibid*. (Ellipses supplied). *See* <u>United States of America v. 99.66 Acres of Land</u>, 970 F.2d 651, 658 (9th Cir. 1992) ("Upon depositing estimated

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Defendant YMCA's Memorandum
of Law in Support of its Motion
for Summary Judgment

compensation, the [DTA] authorizes the Government to take immediate *title* to the land", citing the DTA) (Emphasis supplied).  Stated another way, the "exercise of eminent domain founds a new [fee simple] title and extinguishes <u>all</u> previous rights". <u>A.W. Duckett & Co., Inc. v. United States</u>, 266 U.S. 149, 151, 45 S. Ct. 38, 38, 69 L. Ed. 216 (1924) (Cits. omitted; Emphasis supplied). *Accord:* <u>Norman Lumber Co. v. United States</u>, 223 F.2d 868, 870 (4th Cir. 1955), *cert. den.* 350 U.S. 902, 76 S. Ct. 181, 100 L. Ed. 792 (1955) ("There can be no question but that the condemnation proceeding, which is a proceeding in rem, gave title to the United States good against the world").  Therefore, because each of the Four Counts of the State Court Complaint strictly relates to issues involving the YMCA's now–prior fee simple ownership of Calves Island, thus, with the fee simple title statutorily vested in the United States as of 2/13/03 pursuant to the DTA, all of the State Court Counts have undeniably  become moot.


**WHEREFORE**, because the YMCA has proven in connection with each of the 2/13/02 Counts that there are no genuine issues as to any material fact and that it is entitled to judgment as a matter of law, thus, pursuant to FRCP Rule 56(c), the YMCA respectfully requests that the State Court Complaint be dismissed with prejudice.

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Defendant YMCA's Memorandum
of Law in Support of its Motion
for Summary Judgment

•Dated February 25, 2004 at Greenwich, CT.

DEFENDANT
Young Men's Christian Association
of Greenwich, a/k/a

By: _____
    Philip H. Bartels
For: HOLLAND, KAUFMANN & BARTELS, LLC
     Its Attorneys
     289 Greenwich Avenue
     Greenwich, CT 06830-6595
     (203) 869-5600 * (Fax) 869-4648
     (Federal Bar No. ct06836)

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the foregoing shall be mailed this day, postage prepaid, to all formal and informal Counsel of Record on February 25, 2004:

John Hughes, Esq.
Civil Chief
United States Attorneys' Office
Box 1824
New Haven, CT 06508

Joy Ryan, Esq.
United States Department of Justice
Environment and Natural Resources Division
Land Acquisition Section
P.O. Box 561
Ben Franklin Station
Washington, DC 20044

John Van Allen Murray, Esq.
Diserio Martin O'Connor & Castiglioni, LLP
One Atlantic Street
Stamford, CT 06901

Dorothy Nelson Stookey, Esq.
New England Regional Counsel
The Trust for Public Land (Inc.)
33 Union Street
Boston, MA 02108

Mary E. Sommer, Esq.
Sandak, Hennessy & Greco, LLC
970 Summer Street
Stamford, CT 06905

_____
Philip H. Bartels

U:\PHB\PROPERTY\YMCA\Memorandum of Law. Motion for Summary