UNITED STATES DICTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CALF ISLAND COMMUNITY<br>TRUST, INC., and MARLYN TSAI<br>     Plaintiffs<br><br>v.<br><br>YOUNG MEN'S CHRISTIAN ASSOCIATION<br>OF GREENWICH, a/k/a YMCA OF GREENWICH,<br>THE TRUST FOR PUBLIC LAND, d/b/a, THE TRUST<br>FOR PUBLIC LAND INC.<br>     Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No. 3:02CV462 (AHN) |
| UNITED STATES OF AMERICA,<br>     Plaintiff,<br>v.<br><br>28.8 ACRES OF LAND, MORE OR LESS,<br>LOCATED OFF THE COAST OF<br>GREENWICH, SITUATED IN THE COUNTY<br>OF FAIRFIELD, STATE OF CONNECTICUT,<br>YOUNG MEN'S CHRISTIAN ASSOCIATION<br>OF GREENWICH, CONNECTICUT (YMCA),<br>AND UNKNOWN OWNERS, ET. AL.,<br>     Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil No.3-03-CV-275(AHN)<br><br><br><br><br><br><br><br><br>May 5, 2004 |

**OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
JUDGMENT ON PLEADINGS**

The Calf Island Community Trust and Marlyn Tsai, (Plaintiffs in the Master Case and Defendants in the Condemnation Proceeding) by their counsel, John V.A, Murray, Of Counsel, Diserio Martin O'Connor & Castiglioni LLP, oppose the motion of Plaintiff, United States of America, for partial judgment on the pleadings pursuant to FRCP 12(c) for the following reasons:

1. Plaintiff has failed to sustain its burden of proving its compliance with applicable statutory requirements to support the contested condemnation and taking, including, *inter alia*, the Declaration of Taking Act, 40 U.S.C. §3114 (DTA).

2. Defendants Trust and Tsai contest the *bona fides* of the acquiring authority's statement of the sum of money estimated to be just compensation, as required by DTA par. 5, and the validity of the contractual basis therefor.

3. Defendants Trust and Tsai have raised material issues of fact that preclude Partial Judgment on the Pleading.

**Summary of Argument:**

1. The within action was initiated by a Complaint for Condemnation "for the taking of property under the power of eminent domain and for ascertainment and award of just compensation to the owners and parties in interest".

2. Exhibit A to the Complaint specifies six Acts of Congress as "Authority for the Taking", including DTA and the Endangered Species Act of 1973.

3. The Complaint further alleged a Bargain Sale Option Agreement, and certain alleged amendments thereto, including as "accepted by plaintiff", as the basis for fixing "the amount of just compensation for the entire property described herein in the sum of $6,000,000.00".

4. In their Answer, Defendants Trust and Tsai denied and placed in issue, *inter alia*, (a) Plaintiff's asserted compliance with the authorities pleaded in the Complaint (i.e. including DTA), and (b) the Plaintiff's allegations of the contractual basis for the $6,000,000.00 amount of just compensation.

5. Irrespective of Plaintiff's position on other requirements imposed on the United States to sustain a Condemnation and Taking, including compliance with statutory authorities cited in the Complaint relative to public use for which the lands are taken, Plaintiff concedes that compliance with the requirements of DTA are essential and jurisdictional – indeed, it and Defendant YMCA assert that such are the *sole* prerequisites for a taking.

2

6. While Defendants Trust and Tsai contend that the Plaintiff has the burden of proving compliance with all authorities relied on in the Complaint, that issue is mooted to a degree as far as the within motion is concerned by Plaintiff's failure to meet the requirements of DTA, as more specifically demonstrated herein.

7. The DTA provides in part that a "declaration of taking [filed in the cause] shall contain or have annexed thereto: *** (5) A statement of the sum of money *estimated by said acquiring authority* to be just compensation for the land taken." (emphasis added)

8. The Declaration of Taking, signed by the Regional Solicitor, Department of the Interior and filed in the pending condemnation proceeding immediately after the filing of the Complaint herein, stated that "the gross sum estimated as just compensation for said lands... is SIX MILLION ($6,000,000.00) DOLLARS".

9. The denial by Defendants Trust and Tsai of Plaintiff's contractual allegations in the Complaint asserted as the basis for the jurisdictional requirement of a "statement of the sum of money estimated by [the] acquiring authority to be just compensation", imposes on Plaintiff the burden of proving its compliance with the requirement of paragraph 5 of the DTA – i.e. the truthfulness of the required statement that $6,000,000.00 was in fact the "estimate by said acquiring authority".

10. Plaintiff has not met this burden in the face of said Defendants' denial, and, as set forth in the following analysis of the alleged transactions relied on and attached to the Complaint, Defendant Trust suggests that Plaintiff is *unable* to do so since it appears that aspects of the alleged transactions are wholly misleading in material respects on the part of the original parties to said transactions whose interest was to maximize the amount received from the government – and therefore do not provide a legitimate basis for a bona fide "estimate by said acquiring authority", much less a basis for inducing the United States

3

to appropriate and pay an unwarranted amount of alleged "compensation"[1].

11. The objections by Defendants Trust and Tsai to the Distribution to the YMCA of the $6,000,000.00 estimated just compensation were and are rendered moot by the Court's distribution thereof [2], although it is assumed that the Court will in due course require the repayment of said sum to Plaintiff by the YMCA, as required by FRCP 71A, as and when the within proceeding is dismissed for failure of compliance with the DTA and other cited authorities.

## I. STATEMENT OF FACTS

**The alleged transaction on which estimate of just compensation, as well as the federal appropriation, were based:**

The following is a critical analysis of the validity of the documentation not only relied on to support the within taking, but, importantly, fashioned by private sector entities to induce the United States government to authorize, appropriate, and pay $6,000,000.00 of taxpayers' funds for a piece of property that the owner had been unable to sell for a fraction of that amount.

Since, on a motion to dismiss, the court must draw all inferences in the non-moving party's favor (*Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 [2d Cir. 2001]), and since Plaintiff seeks to rely on documentation of a series of transactions which it only partially produces, Defendants Trust and Tsai are entitled to have the failure to produce the documentation on which Plaintiff relies to satisfy its statutory compliance and other irregularities

---

[1] In the words of Judge Cardozo, " It is the duty of the state, in the conduct of the inquest by which compensation is ascertained, to see that it is just, not merely to the individual whose property is taken, but to the public which is to pay for it." (*New York, Ontario and Western Railway Co. v. Charles V. Livingston*, 238 N.Y. 300, 306, 144 N.E. 589, 591).

[2] Although, for the record, said Defendants object to Plaintiff's reference to, and attempted reliance on, their failure to appoint substitute counsel to appear at the July 31, 2003 conference, which they had only been informed of by their former counsel late the afternoon before – which lack of notice was one of several grounds for discharging that counsel for cause (as explained to the Judge's clerk by telephone, and, at his suggestion, by telefaxed letter to the Judge, that evening [copy attached as Exhibit 9]).

(all as described below) construed against Plaintiff (and other parties involved in those transactions).

Because of the failure of Plaintiff to produce complete documentation applicable to the transaction upon which it relies to estimate just compensation to support the purported taking, and evidence of compliance with the terms of such transaction, it is impossible to draw a final conclusion as to the existence of possible wrongdoing in connection therewith. Nevertheless, these omissions in documentation and other irregularities, as outlined below, and the inferences to be drawn therefrom, raise the distinct possibility that (i) this Honorable Court, (ii) respected elected officials, (iii) Plaintiff United States of America, (iv) citizens of the United States of America, and (v) themselves, have been duped by the Defendants YMCA and TPL, *solely* for their private benefit and purposes, into believing, and relying upon, a transaction between the two Defendants (YMCA and TPL) which forms the underpinnings of both the condemnation proceedings, the taking, and the estimated 'just compensation' relating thereto, and which transaction provided no basis for this proceeding, and to the extent advanced for that purpose, may well turn out to have been a sham.

**Faulty basis of 'just compensation' determination**

The only inference to be drawn based on the documentation relied on by Plaintiff is that the transaction, by which Defendants YMCA and TPL have ratcheted-up the purported valuation of the property for 'just compensation' purposes to $6-million, particularly the June 30, 1999 Bargain Sale Option Agreement, had expired under its own terms and had not been extended, but was nevertheless proffered to the United States Department of the Interior/ Fish and Wildlife Service as the legal foundation for the undated and apparently unexecuted Agreement for the Purchase of Lands between Defendant TPL and Plaintiff United States, which Agreement

5