purports to establish, relying on the expired Bargain Sale Option Agreement, a price of $6,480,000.

The <u>Agreement for the Purchase of Lands</u>, and purported January 18, 2002 "Amendment" thereto (which was signed by Regional Counsel for TPL but <u>not</u> by the other party to the Agreement, i.e. not by Plaintiff United States, rendering it void and without any legal effect), formed the basis (albeit a false one) of the estimated just compensation of $6-million.

Plaintiff United States had no reason to suspect any type of deception or conspiracy between the nationally-recognized and respected Trust for Public Land (Inc.), the purported "Optionee", or the Young Men's Christian Association of Greenwich, the purported "Optioner".

Nor did well-meaning public officials who, based on the representations of the Defendants (representations which The Calf Island Community Trust believes to be false), have any reason to suspect that the $6,000,000 in <u>federal</u> appropriations for the purchase of the subject property (Calf Island), was premised on, *inter alia*, a purported <u>Bargain Sale Option Agreement</u> which was the private *workings* of Defendant YMCA and TPL and which had, on information and belief, expired and was of no continuing legal effect whatever.

**An examination of the suspect documents**

A review of the documents proffered by Defendants YMCA and TPL in these consolidated proceedings – and upon which Plaintiff United States necessarily and explicitly relied for its determination of market value and price, and later, for its estimate of 'just compensation', and which also may have been the basis of the Government's initial interest in the subject property – show a mish-mash of documents, many misdated or undated, some not executed, together with "fix-it" purported "amendments" and even out-of-context purported "phases" of amendments which attempt to put the Humpty Dumpty Bargain Sale Option

Agreement back together again after it had presumably <u>expired</u>, and to reconstruct, through purported amendments, the undated and apparently unexecuted <u>Agreement for the Purchase of Lands</u> which it appears was never actually executed by the United States.

By way of example, annexed hereto as <u>Exhibit 1</u>, is the undated purported "Agreement for the Purchase of Lands" (and January 18, 2002 Amendment) between Defendant TPL and the United States of America. This apparently unexecuted agreement contains conditions and contingencies, such as "Acceptance of this agreement is contingent upon the results of a Contaminants Study" [par. 14], "Acquisition is contingent upon the vendor's removal of all personal property, including but not limited to all personal items referenced in a letter…attached hereto as Exhibit 'A'" (not attached)[par. 11], "Acquisition is further contingent upon the Service's receipt of funding in an amount sufficient to acquire the subject property"[par. 12], "It is mutually understood and agreed that notice of acceptance of this agreement shall be sent to the vendor by certified mail addressed to The Trust for Public Land"[par.15]. The agreement further states, in the WITNESS WHEREOF concluding paragraph, that "the vendor has hereunto signed and affixed the seal on the day first written above" (no date is written above, or below for that matter). The document is, however, signed by Dorothy Nelson Stookey, TPL's Regional Counsel and witnessed by one Elizabeth Bromberg.

The undated and apparently unexecuted (by purchaser) Agreement provides further, in the concluding paragraph, that the United States shall have the option and right to enter into the Agreement for Purchase within 12 months from the execution thereof by vendor. As noted, the date of execution by vendor is not provided. The signature line for the other party to the agreement is not signed. However, there is a handwritten notation:

> "Note: See attached '*Amendment* of the Agreement for the Purchase of Lands' dated September 26, 2000 French 9-26-00". (italics ours)

7

Annexed to the Agreement is a purported "Acknowledgement" (annexed hereto as Exhibit 2) wherein it is acknowledged by a Notary Public that Dorothy Nelson Stookey, as Regional Counsel for TPL, "executed the within instrument", without identifying same. It would appear that the "within instrument" is not the Agreement for the Purchase of Lands since the *second* acknowledgment on the page, by Andrew C. French, Realty Officer for U.S. Fish and Wildlife Service, dated the same day (September 26, 2000), refers to execution of "Phase I of this amendment" (emphasis ours). What amendment? Was the original underlying Agreement for the Purchase of Lands ever executed by the United States? If so, TPL can no doubt produce proof pursuant to par. 15 of the Agreement and would have the burden to do so since the Agreement, together with the expired Bargain Sale Option Agreement upon which the Purchase Agreement is based, were proffered as the basis for the determination of estimated 'just compensation' in the Condemnation Complaint.

The next piece of the puzzle is a *third* acknowledgment, on the same page, dated a year later, on September 28, 2001. This acknowledgement is by Suzanne M. Oliveira, Fish and Wildlife Realty Officer, as the authorized representative of the Secretary of the Interior and states that she has "executed Phase II of this amendment". Again, what amendment?

Annexed to the aforementioned pages, all as annexed to and incorporated in the Condemnation Complaint (par. 10 of the Complaint), there is a single sheet (annexed hereto as Exhibit 3), without a date or a heading, purporting to extend the Agreement for the Purchase of Lands, which Agreement apparently was never actually executed. This purported extension is signed by TPL's Regional Counsel on September 26, 2000, but not signed by the other party to the agreement, i.e., not signed by Plaintiff United States.

8

If we are to assume that the above-referenced "Acknowledgment" by Mr. French on September 26, 2000, is an acknowledgement of his execution of "this amendment", <u>where</u> is there a reference in the purported amendment to "Phase I" of the amendment, and <u>where</u> is there a reference to "Phase II" of the amendment, acknowledged a year later by Ms. Oliveira?

Next comes the real riddle – a further purported extension, denominated as "Amendment to the Agreement for the Purchase of Lands" (not "Phase I amendment", not "Phase II amendment", not "Second Amendment") referring to "an Agreement for the Purchase of Lands entered into on <u>July 26,</u> 2000" (the agreement itself, though undated, was only signed by the Regional Counsel for TPL and no date was noted for the signing). In fact, not one of the documents proffered by Plaintiff (or Defendant YMCA in its submissions) shows a date of July 26, 2000, but "July 26, 2007", happens to be the expiration date of the Notary Public's commission in the September 26, 2000 Acknowledgement [<u>Exhibit</u> 2 hereto].

The Calf Island Community Trust, based on its careful review of the documents in question, believes that the July 26, 2000 date was picked up by mistake, after-the-fact, presumably by Defendant YMCA's attorneys, in belated efforts to prepare purported amendments in an effort to reconstruct purported options and/or agreements which had either expired, or which had never been executed or exercised.

Significantly, and in support of the position of Defendants' Trust and Tsai, <u>no document has ever been proffered by Plaintiff or by Defendants YMCA or TPL which demonstrates that the relied upon Bargain Sale Option Agreement was ever, in fact, exercised pursuant to par. 1 of the Agreement which required the payment of "Additional Option Consideration in the amount of $50,000" on or before April 30, 2000, or that said Bargain Sale Option Agreement was ever</u>

9

further extended pursuant to par. 2a, which required "Extension Consideration" of $50,000 prior to April 30, 2001). A copy of the Bargain Sale Option Agreement is annexed hereto as <u>Exhibit 4</u>.

Among other showings that Plaintiff would have to make to sustain the validity of the sole transaction on which it bases the estimate of just compensation, would be the fact of two $50,000 payments required to keep that Agreement alive and in effect. Of course, there has been no such showing, and it is therefore doubtful that any such payments were made.

Nor have Plaintiff or Defendants YMCA or TPL ever demonstrated that the conditions and contingencies contained in the referenced and relied upon Agreement were ever met, or that the Agreement was ever executed in the manner required under it own terms (par.15). Hence the need for belated, after-the-fact, fix-it purported extensions and/or amendments which, in any event, would not, we respectfully submit, serve to resurrect an expired or unexecuted agreement, or give it any legal effect whatever.

Despite Defendant YMCA's attorneys' spirited advocacy and prolific submissions and sur-submissions, we submit that the Court must now itself question why it <u>has never seen any document</u> which (i) demonstrates that the option in the Bargain Sale Option Agreement was either exercised or extended pursuant to its own unambiguous terms; or (ii) demonstrates that the Agreement for the Purchase of Land was ever properly executed by the United States pursuant to its own clear terms.

Indeed, while Plaintiff and Defendant YMCA continue to annex copies of the above-referenced documents to many of their submissions, the Court should take judicial notice of the fact that the oft-referenced purported <u>3/12/02 "amendment"</u> to the Bargain Sale Option Agreement has <u>never been produced</u> by Plaintiff or by Defendant YMCA. Instead, in her 3/12/02 and 5/9/02 Statutory Affidavits (annexed hereto as <u>Exhibit 5</u>), Dorothy Nelson Stookey,

10