legislature has spoken, the public interest has been declared in terms well-nigh conclusive. In such cases, the legislature, not the judiciary, is the main guardian of the public needs to be served by social legislation…" 348 U.S. at 32, 75 S.Ct. at 102.

As is readily evident from adding just a few words more than the Government chose to quote from this seminal case, the facts in *Berman v. Parker* dealt with the entire redevelopment of the Seat of Government; they dealt with "public safety, public health, …law and order".

What constitutes a "public use" in a condemnation case should be determined in the first instance by the legislature, and there is a strong presumption in favor of the correctness of the legislative determination, but such determination is always reviewable by the courts, who bear the ultimate responsibility for the decision. *U.S. ex. rel. Tennessee Valley Authority v. Three Tracts of Land Containing a Total of 1,174 Acres, More or Less, In Jackson County, Alabama*, N.D.Ala. 1974, 377 F. Supp.631

In the case at bar, the condemnation was not determined by the legislature, nor does the condemnation fit the purposes of the laws cited as authority for the taking. The Government did not determine it needed or wanted Calf Island; <u>it was the YMCA that needed the Government</u> in order to short-circuit the State Court action of Defendant Trust and Tsai. The Fish & Wildlife Service has publicly conceded that it lacks the money, management, and manpower to manage the Island properties they already have and the lack of those resources have had a devastating impact on the very conservation and wildlife purposes for which the Refuge was established.

But even if Plaintiff were right that the only question for judicial review in a condemnation proceeding is whether the purpose for which property was taken is for a

Congressionally authorized public use, there would still be issues of fact on that narrow point which preclude judgment on the pleadings..

For example, Plaintiff cites, *inter alia*, The Land and Water Conservation Fund Act of 1965 as an authority for its condemnation proceeding. Ironically, this act has as its purpose to assist in preserving, developing and assuring <u>accessibility to outdoor recreation resources</u> where, in fact, the acquisition of Calf Island by the Fish and Wildlife Service results in <u>dramatically reduced public access for recreational purposes</u> which have traditionally been enjoyed on the Island by local and regional citizens for over forty-three years. Public access for recreational, educational, cultural, and character-build purposes, and the loss of same by F&W acquisition, is the purpose for which The Calf Island Community Trust was formed and its State Court action commenced.

Use of Land and Water Conservation Funds, in this case, would not be advancing the purposes of the Act. The Court has jurisdiction to review that issue. *U.S. ex. rel. Tennessee Valley Authority v. Three Tracts of Land Containing a Total of 1,174 Acres, More or Less, In Jackson County, Alabama*, N.D.Ala. 1974, 377 F. Supp.631

Plaintiff also cites The Endangered Species Act of 1973 as an "authority" for the taking of Calf Island. To justify "taking" (immediate seizure and possession) under the Endangered Species Act (ESA) (Title 16, Chapter 35, Section 1533), F&W must document, "on the basis of the best scientific and commercial data available", exactly which species will be adversely affected and suffer irreparable harm, thus requiring this drastic action, and must issue a biological evaluation identifying one or more such listed species. Based on the printed materials published by the Fish & Wildlife Service about Calf Island, and most if not all of the Stewart B.

24

McKinney National Wildlife Refuge for that matter, *neither* of these requirements can be met by the Plaintiff to sustain the purported taking and condemnation under this authority.

**F. Defendants Trust and Tsai did not assert the interim "distribution" of just compensation as a defense to taking, but, rather that the "determination" of just compensation was based on irregularities and representations which may amount to a duping of the American public and thereby tainting and invalidating the proceeding**

As noted above, the Government has the duty to insure that the compensation paid for a condemned property is rationally-based and in accordance with the true market value of the property at the time of the taking. *U.S. v. Certain Parcels of Land in Warren County*, W.D.Va. 1949, 90 F. Supp. 27; *U.S. v. Certain Lands Located in Town of Hempstead, Nassau County*, E.D.N.Y., 1939, 43 F. Supp. 418; *Bowie Lumber v. U.S.*, C.C.A. La. 1946, 155 F. 2d 225.

Although we quote the venerable Judge Cardozo ["It is the duty of the state, in the conduct of the inquest by which compensation is ascertained, to see that it is just, not merely to the individual whose property is taken, but **to the public which is to pay for it.**" (emphasis added)] in *New York, Ontario & Western R. Co. v. Livingston*, 238 N.Y 300, 306, 144 N.E. 589, 591], Defendants have not found a case directly on point where an issue of possible impropriety and private-deal-making may have tainted a condemnation proceeding and resulted in an unjust award and distribution **at the expense of the public**. It is nonetheless submitted that no citation is required for the proposition that a proceeding and distribution should be invalidated under such circumstances.

This may well be a case of first impression. This Honorable Court is respectfully urged not to permit the interested and implicated parties to continue shoving the issue of propriety under the carpet and burying it in cases which purport to proclaim that the Government can do

whatever it pleases, that the Government can do no wrong, or that the Court is without authority to redress a wrong if it has been done.

### G. The Matter of Defendant YMCA's gratuitous and unauthorized "Supporting Memorandum of Law"

It is respectfully submitted that the belated legal argumentation gratuitously provided by Defendant YMCA, in support of the Government's Motion, addresses essentially the same legal propositions as are addressed by Plaintiff. Defendants Trust and Tsai believe that said submission was intended solely to draw attention *away from* the facts surrounding these questionable transactions and purported transactions, and *onto* legal theories, which, in any event, can be readily distinguished based on the facts herein.

WHEREFORE, Defendants Trust and Tsai respectfully request that the Court deny Plaintiff's motion in its entirety and call a hearing to ascertain, at the least, the legitimacy of Plaintiff's estimate of just compensation, and for such other and further relief as to this Court seems just and proper.

DATED: May 5, 2004

Respectfully submitted,

The Calf Island Community Trust, Inc.
and Marlyn Tsai

By_____
John V. A. Murray/ct06756
Of Counsel
DISERIO MARTIN O'CONNOR &
  CASTIGLIONI, LLP
One Atlantic Street
Stamford, CT 06901
(203) 358-0800
Telefax (203) 348-2321

26

## CERTIFICATION

THIS IS TO CERTIFY that a copy of the within opposition to Defendant YMCA's Motion for Summary Judgment and Cross-Motion to strike Defendant YMCA's Answer and Affirmative Defenses has been mailed, postage paid this 5th day of May, 2004, to:

John Hughes, Civil Chief
United States Attorney
157 Church Street
New Haven, Ct. 06510

Joy Ryan, Trial Attorney
United States Department of Justice
Environmental and Natural Resources Division
Land Acquisition Section
P.O. Box 561, Ben Franklin Station
Washington, DC 20044

Philip H. Bartels, Esq.
Holland Kaufmann & Bartels, LLC
289 Greenwich Avenue
Greenwich, CT 06830

Jay H. Sandak, Esq.
Sandak, Friedman, Hennessy & Greco, LLP
970 Summer Street
Stamford, CT 06905

Dorothy Nelson Stookey, Esq.
New England Regional Counsel
The Trust for Public Land (Inc.)
33 Union Street
Boston, MA 02108

Mary E. Sommer, Esq.
Sandak, Friedman, Hennessy & Greco, LLP
970 Summer Street
Stamford, CT 06905

By _____
John W. A. Murray ct06756
Of Counsel
DISERIO MARTIN O'CONNOR &
CASTIGLIONI, LLP
One Atlantic Street
Stamford, CT 06901
(203) 358-0800
Telefax (203) 348-2321