Ex 4

6/1/99

## BARGAIN SALE OPTION AGREEMENT

This is an Agreement dated _June 3, 1999_ between the YMCA of Greenwich, a _Corporation_, with a place of business at 50 East Putnam Avenue, Greenwich, CT, which shall be referred to as "Seller," and THE TRUST FOR PUBLIC LAND (INC.), a nonprofit California public benefit corporation, with a place of business in New Haven, Connecticut, which shall be referred to as "Buyer."

### RECITALS

A. The addresses and telephone numbers of the parties to this Agreement are as follows. Telephone numbers are included for information only.

SELLER:

YMCA of Greenwich
50 East Putnam Avenue
Greenwich, CT 06830
Attn.: Mr. John P. Eikrem
Tel.: (203) 869-1630
Fax: (203) 869-7252

BUYER:

The Trust for Public Land (Inc.)
383 Orange Street
New Haven, CT 06511
Attn.: Tim Northrop Project Manager
Tel.: (203) 777-7367
Fax: (203) 777-7488

Copies of any notice to Seller should also be sent to:

Alexander J. Holland, Esquire
Holland, Kaufman & Bartels
289 Greenwich Avenue
Greenwich, CT 06830
Tel: (203) 869-5600
Fax: (203) 869-4648

Copies of any notice to Buyer should also be sent to:

The Trust for Public Land (Inc.)
33 Union Street, 4th Floor
Boston, MA 02108
Attn.: Donna H. Smith, Esq.
Tel.: (617) 367-6200
Fax: (617) 367-1616

B. Seller is the owner of certain real property on Calves Island, off the coast of Greenwich, County of Fairfield, State of Connecticut containing 28.8 acres +/- and described in Exhibit A attached hereto and incorporated herein by this reference.

Said real property, together with any and all improvements, fixtures, timber, water and/or minerals located thereon and any and all rights appurtenant thereto including but not limited to timber rights, water rights, grazing rights, access rights and mineral rights shall be referred to in this Agreement as the "Subject Property."

C. It is the mutual intention of Seller and Buyer that the Subject Property be preserved and used eventually for habitat protection, conservation as well as public, open space and recreational purposes. However, this intention shall not be construed as a covenant or condition to this Agreement. Buyer makes no representation that any efforts it may undertake to secure the eventual government acquisition of the Subject Property will be successful.

D. Seller acknowledges that Buyer is entering into this Agreement in its own right and that Buyer is not an agent of any governmental agency or entity.

E. Seller wants the Subject Property to be held for conservation purposes and wants a guarantee of significant public access rights subject only to reasonable regulations or restrictions for habitat protection. Since the appraisal of the Subject Property must be at its highest and best use, unrestricted by such conditions, Seller and Buyer have agreed, as set out below, that Buyer may not purchase the Subject Property until the permanent conservation owner is identified and has negotiated an acceptable management agreement that affords the desired public access.

F. Buyer is a conservation organization having among its purposes the acquisition on behalf of the public of open space, scenic and recreational lands. Buyer is exempt from taxation under Section 501(c)(3) of the Internal Revenue Code and is included in the "Cumulative List of Organizations described in Section 170 (c) of the Internal Revenue Code" published by the Internal Revenue Service. Buyer is not a private foundation within the meaning of Section 509(a) of the Internal Revenue Code.

G. Seller believes that the purchase price for the Subject Property which is specified in this Agreement is below fair market value. Seller intends that the difference between the purchase price and fair market value shall be a charitable contribution to the permanent conservation owner. However, Buyer makes no representation as to the tax consequences of the transaction contemplated by this Agreement. Seller will obtain independent tax counsel and be solely responsible for compliance with the gift value substantiation requirements of the Internal Revenue Code. To the extent that the purchase price is below the fair market value, the parties agree that it does not reflect the existence of defects in the Subject Property, such as environmental conditions requiring remediation, known to Seller or Buyer.

2

THE PARTIES AGREE AS FOLLOWS:

1. **Option.** In consideration of the payment by Buyer to Seller of Five Thousand Dollars ($5,000.00), receipt of which is hereby acknowledged, Seller grants to Buyer an exclusive and irrevocable option to purchase the Subject Property on the terms and conditions set forth in this Agreement (the "Option"). Additional Option Consideration in the amount of Fifty Thousand Dollars ($50,000.00) will be due the earlier of (a) five (5) days after the signing of the federal budget for the fiscal year 2000 (due to be signed October 1, 1999) provided that the federal budget includes a line item appropriation of at least $2,000,000 toward the acquisition of the Subject Property or (b) April 30, 2000. The option consideration paid above and any additional option consideration or extension consideration ("Option Consideration") shall be credited toward the Purchase Price (as defined below) of the Subject Property in the event Buyer exercises the Option. Seller shall return the Option Consideration to Buyer if (a) the sale of the Subject Property is not consummated under this Agreement because of Seller's failure, refusal or inability to perform any of Seller's obligations under this Agreement, (b) any of Seller's representations or warranties cease to be true prior to Closing as defined below, (c) Buyer elects to terminate this Agreement because Seller is unable to remove a title exception objected to by Buyer, (d) Buyer elects to terminate this Agreement in accordance with Section 11 of this Agreement because of unacceptable environmental or building conditions on the Subject Property, (e) Buyer elects not to close by reason of damage to or condemnation of the Subject Property in accordance with Sections 12 and 13 of this Agreement, (f) Buyer determines before the expiration of the Due Diligence Period, as herein defined, that fundraising capacity is insufficient in accordance with Section 11A of this Agreement, or (g) Buyer's Executive Committee of its Board of Directors disapproves the terms of this Option, which action will be taken on or before the expiration of the Due Diligence Period, as herein defined.

2. **Option Term.** Buyer's Option shall run from the date of this Agreement through and including April 30, 2001.

   a. **Extension of Option Term.** Buyer may elect, upon written notice to Seller given prior to the expiration of the Option Term (the "Extension Notice"), to extend the Option Term from April 30, 2001 to April 30, 2002 (the "Extension"). The Extension Notice will be accompanied by a check payable to Seller in the amount of Fifty Thousand Dollars ($50,000.00) as the Extension Consideration. The Option Consideration, including the Extension Consideration, is not refundable to Buyer except as otherwise expressly provided for in paragraph 1 above but is applicable to the Purchase Price.

3. **Exercise.** In the event Buyer exercises the Option, it shall do so by notifying Seller within the term specified in Section 2. Such notice shall be deemed timely if it is deposited in the mail, first class postage prepaid, or delivered personally by courier or Express

3

Mail within the term specified in Section 2. As stated above, Buyer shall no have the right to exercise the Option or acquire the Subject Property unless the permanent conservation buyer for the Subject Property has been identified and has agreed in writing to a management plan for the Subject Property which guaranties significant public access to the island subject only to reasonable regulations or restrictions for protection of habitat.

3A. <u>Dates for Performance</u>. Any action required of Buyer or Seller hereunder to be taken by a specified date in this Agreement may be taken on the next succeeding business day if such date for performance falls on a Saturday, Sunday or national holiday.

4. <u>Purchase Terms</u>.

    a. <u>Price</u>. In the event Buyer exercises the Option, Seller shall sell to Buyer and Buyer shall buy from Seller the Subject Property for a purchase price ("Purchase Price") equal to the Fair Market Value ("FMV") of the Subject Property as determined by an appraisal approved by the review appraiser of the United States Fish and Wildlife Service ("USF&WS") as adjusted by up to a ten percent (10%) discount off the FMV as described in more detail below. The appraisal (the "Appraisal") will be prepared by a MAI appraiser, acceptable to Buyer and Seller. The Appraisal will be prepared according to USF&WS guidelines and will be obtained at Buyer's cost and submitted to the USF&WS for approval by Buyer. If the Appraisal values the Subject Property at a value between $6,666,666 and $8,900,000, Buyer may acquire the Subject Property for a Purchase Price equal to 90% of such value. If the Appraisal values the Subject Property at less than $6,666,666, Buyer may acquire the Subject Property for a Purchase Price equal to $6,000,000. If the Appraisal values the Subject Property at greater than $8,900,000, Buyer and Seller reserve the right to mutually review and revise the Purchase Price terms and fundraising capabilities for a period of thirty (30) days after receipt of the Appraisal. If Buyer and Seller cannot agree on the revised terms by the end of such thirty (30) day period, Seller or Buyer may terminate this Agreement with notice to the other and Seller will promptly refund all Option Consideration paid by Buyer together with 50% of the actual cost of the Appraisal up to $7,500.

    b. <u>Method of Payment</u>. The Purchase Price shall be payable at Closing (as hereinafter defined) as follows:

        (i) Five Thousand Dollars ($5,000.00) by crediting the Option Consideration paid upon execution of this Agreement to the Purchase Price;

        (ii) Fifty Thousand ($50,000.00) by crediting additional Option Consideration paid on or before April 30, 2000;

4