(iii) Fifty Thousand ($50,000.00) by crediting Extension Consideration paid on or before April 30, 2001 (if this Agreement is extended); and

    (iv) The balance of the Purchase Price in bank or certified checks at Closing.

  5. <u>Date and Place of Closing</u>. Final settlement of the obligations of the parties hereto at closing ("Closing") shall occur at such date, place and time as Buyer designates in its notice of exercise of the Option; provided, however, said date shall occur within thirty (30) days after the date on which Buyer exercised its Option or as otherwise agreed to by the parties, at such date, place and time as the parties shall mutually agree. The parties agree that Buyer may arrange a simultaneous closing with a public agency and Seller will cooperate in coordinating such a simultaneous closing.

  6. <u>Title</u>. Seller shall convey to Buyer (or its nominee designated in writing five (5) days prior to closing) by a warranty deed of good and clear record and marketable title to the Subject Property, free and clear of all encumbrances and encroachments except:

    (a) Provisions of existing building and zoning laws, provided the Subject Property is not in violation of such laws;

    (b) Such taxes for the then current year as are not due and payable on the date of delivery of the Deed; and

    (c) Any municipal assessment levied after the time of Closing, Seller agreeing to discharge in full any assessments against the Subject Property levied at or before the Closing, whether or not due and payable at the Closing.

  This Agreement is entered into without the benefit of a current title report or survey of the Subject Property. Buyer shall order such a report from a title insurance company authorized to do business in Connecticut, together with copies of all of the documents referred to therein as exceptions. On or before fifteen (15) business days after the date of this Agreement, Seller shall provide Buyer with a copy of the survey and survey report prepared by Ahneman and Partners dated February 1998 (the "Survey"). On or before one hundred twenty (120) days after the date hereof (the "Due Diligence Period"), Buyer shall advise Seller of any exceptions in the title report or as shown on the Survey, in addition to the standard exceptions, which Buyer will require to be removed on or before Closing. Thereafter, Seller shall use its best efforts to assure the removal of any such objectionable exceptions by Closing. In the event Seller is unable to remove any such exceptions to which Buyer has objected Buyer may elect to either (1) terminate this Agreement, in which case Buyer shall have no obligation to purchase the Subject Property, or (2) proceed with the purchase of the Subject Property and accept a policy of title insurance insuring over the exceptions to which Buyer objected or (3) extend the Closing for up to thirty (30) days to permit Seller additional time to cure title

objections. If at the end of the extended period, Seller has not cured the title objections, Buyer may elect either (1) or (2) above. In any event, Seller shall satisfy and discharge all monetary liens and encumbrances (except any statutory liens for nondelinquent real property taxes) affecting the Subject Property. To enable Seller to make conveyance as herein provided Seller may, at the time of recording of the deed, use the purchase money or any portion thereof to clear the title and Seller shall furnish whatever documents or evidence will be required by the title insurance company in order to delete the standard exceptions and monetary liens or encumbrances on or before Closing.

If the deed refers to a plan necessary to be recorded therewith, Seller shall deliver such plan with the deed in form adequate for recording.

7. <u>Title Insurance</u>. Buyer may, at Buyer's sole cost and expense, purchase an ALTA owner's policy of title insurance (Owner's Form B-1970) in the full amount of the Purchase Price insuring that title to the Subject Property is vested in Buyer at Closing subject only to the exceptions noted in Section 6.

8. <u>Seller's Covenants</u>.

Seller covenants that, from and after the date hereof until the Closing, Seller will not:

(a) make or suffer to be made any leases, contracts, options or agreements whatsoever affecting the Subject Property, nor shall Seller cause or permit any lien, encumbrance, mortgage, deed of trust, right, restriction or easement to be placed upon or created with respect to the Subject Property, except with the written consent of Buyer;

(b) remove or permit the removal of any vegetation, soil or minerals from the Subject Property or disturb or suffer the disturbance of the existing contour and/or other natural features of the land in any way whatsoever;

(c) cause or permit any dumping or depositing of any materials on the Subject Property, including, without limitation, garbage, construction debris or solid or liquid wastes of any kind; or,

(d) cause or permit any default beyond the applicable cure period under any mortgage or deed of trust covering the Subject Property, or cause or permit the foreclosure of any other lien affecting the Subject Property.

Seller shall promptly cure, at Seller's sole cost and expense, each and every breach or default of any covenant set forth in this paragraph upon receipt of notice thereof by Buyer. Buyer shall have the right, but no obligation, to cure or cause to be cured any such breach or default, at Seller's sole cost and expense if, in Buyer's reasonable judgment, Seller has failed to promptly or completely cure the same or if such action on Buyer's part is reasonably

6

necessary to preserve and protect the natural, scenic or other open space values of the Subject Property. The reasonable costs of such cure attempted or effected by Buyer may, at Buyer's election, be credited against the balance of the purchase price due and payable at Closing.

9. <u>Seller's Representations and Warranties</u>. Seller makes the following representations and warranties:

a. Seller has full power and authority to enter into this Agreement (and the persons signing this Agreement for Seller if Seller is not an individual have full power and authority to sign for Seller and to bind it to this Agreement) and to sell, transfer and convey all right, title and interest in and to the Subject Property and will deliver appropriate certificates of vote and incumbency at Closing to evidence such authority.

b. The Subject Property consists of a separately mapped and assessed tax lot. The Subject Property is an independent unit which does not now rely, and at the Closing will not rely, on any facilities (other than the facilities of public utility and water companies) located on any property not included in the Subject Property (i) to fulfill any zoning, building code or other municipal or governmental requirement, or (ii) for structural support or the furnishing to the building of any essential building systems or utilities. It is understood that the Subject Property has a mainland access area from the town dock but does not possess any other particular access appurtenant to the Subject Property.

c. No one other than Seller will be in possession of or own any portion of the Subject Property.

d. There is no suit, action, arbitration, or legal, administrative or other proceeding or injury pending or threatened against the Subject Property or any portion thereof or pending or threatened against Seller which could affect Seller's title to the Subject Property or any portion thereof, affect the value of the Subject Property, or any portion thereof, or subject an owner of the Subject Property, or any portion thereof to liability.

e. Except as otherwise disclosed in writing to the Buyer, there are no:

(i) Intended public improvements or private rights which will result in the creation of any lien upon the Subject Property or any portion thereof;

(ii) Uncured notices which have been served upon Seller by any governmental agency notifying Seller of any violations of law, ordinance, rule or regulation which would affect the Subject Property or any portion thereof;

(iii) Actual or impending mechanics' liens against the Subject Property or any portion thereof;

7

(iv) Notices or other information giving Seller reason to believe that any conditions existing on the Subject Property or in the vicinity of the Subject Property or in ground or surface waters associated with the Subject Property may have a material effect on the value of the Subject Property or subject the owner of the Subject Property to potential liabilities under Environmental Laws, as herein defined;

(v) There are no taxes or betterment assessments other than ordinary real estate taxes pending or payable against the Subject Property and there are no contingencies existing under which any assessment for real estate taxes may be retroactively filed against the Subject Property, and there are no taxes or levies, permit fees or connection fees which must be paid respecting existing curb cuts, sewer hook-ups, water-main hook-ups or services of a like nature.

(vi) There is no pending or threatened condemnation or eminent domain proceeding with respect to the Subject Property.

g.  There are no leases, licenses, permits, options, rights of first refusal or other agreements, oral or written, which affect the Subject Property or any portion thereof.

h.  Seller has no knowledge, nor does Seller have reason to know, of any condition at, on, under or related to the Subject Property presently or potentially posing a significant hazard to human health or the environment (whether or not such condition constitutes a violation of Environmental Laws, as hereinafter defined). Seller has no knowledge, nor does Seller have reason to know, of any production, use, treatment, storage, transportation, or disposal of any Hazardous Substance (as hereinafter defined) on the Subject Property, nor has there been any release or threatened release of any Hazardous Substance, pollutant or contaminant into, upon or over the Subject Property or into or upon ground or surface water at the Subject Property or within 2000 feet of the boundaries hereof. Seller has no knowledge, nor does Seller have any reason to know that any Hazardous Substance is now or ever has been stored on the Subject Property in underground tanks, pits or surface impoundments. Seller has no knowledge, nor does Seller have reason to know that any asbestos-containing materials are incorporated into the buildings or interior improvements or equipment which are part of the Subject Property, if any, nor is there any electrical transformer, fluorescent light fixture with ballasts or other PCB item (as defined at 40 CFR § 761.3) on the Subject Property. As used herein, "Hazardous Substance(s)" means any substance which is (i) defined as a hazardous substance, hazardous material, hazardous waste, pollutant or contaminant under any Environmental Law, (ii) a petroleum hydrocarbon, including crude oil or any fraction thereof, (iii) hazardous, toxic, corrosive flammable, explosive, infectious, radioactive, carcinogenic, or reproductive toxicant, (iv) regulated pursuant to any Environmental Law, or (v) any pesticide regulated under state or federal law. As used herein, the term "Environmental Law(s)" means each and every federal, state, and

8

local law, statute, ordinance, regulation, rule, judicial or administrative order or decree, permit, license, approval, authorization or similar requirement of each and every federal, state and local governmental agency or other governmental authority pertaining to the protection of human health and safety or the environment. Seller is in compliance with all laws and regulations in connection with any handling, use, storage or disposal of Hazardous Substances including the maintenance of all required permits and approvals.

  i. Neither the grant nor the exercise of the Option will constitute a breach or default under any agreement to which Seller is bound and/or to which the Subject Property is subject.

  j. Seller has provided Buyer with copies of all contracts, permits, leases and other agreements affecting the Subject Property.

  k. Seller is in compliance with all applicable laws, statutes, orders, rules, regulations and requirements promulgated by governmental or other authorities relating to the Subject Property. Seller has not received any notice of any sort of alleged violation of any such statute, order, rule, regulation or requirement.

  Each of the above representations is material and is relied upon by Buyer. Except insofar as Seller has advised Buyer in writing to the contrary, each of the above representations shall be deemed to have been made as of Closing but shall not survive Closing.

  If before the Closing Seller discovers any information or facts that would materially change the foregoing warranties and representations, Seller shall immediately give notice to Buyer of those facts and information. If any of the foregoing representations and warranties cease to be true before the Closing, Seller shall be obligated either to remedy the problem before the Closing or to credit to Buyer at Closing the amount reasonably required to remedy the problem. If the problem is not remedied before Closing and cannot be remedied by payment of money, Buyer may elect to either (a) terminate this Agreement in which case Buyer shall have no obligation to purchase the Subject Property or (b) defer the Closing until such problem has been remedied. Buyer's election in this regard shall not constitute a waiver of Buyer's rights in regard to any loss or liability suffered as a result of a representation or warranty not being true nor shall it constitute a waiver of any other remedies provided in this Agreement or by law or equity.

  10. <u>Deposits and Remedies upon Default</u>. All deposits made hereunder shall be held by Seller as earnest money for the proper performance of this Option on the part of Buyer subject to the terms of this Agreement and shall be duly accounted for at Closing. In the event Seller defaults in the performance of any of Seller's obligations under this Agreement, Buyer shall, in addition to any and all other remedies provided in this Agreement or at law or in equity, have the right of specific performance against Seller. The parties acknowledge that, if Buyer exercises the Option hereunder, Seller has no adequate remedy at law in the event of

9