Buyer's failure to fulfill its obligations hereunder to purchase the Subject Property because it is impossible to compute exactly the damages that would accrue to Seller in such event. The parties have therefore taken these facts into account in setting the amounts of the payments of Option Consideration and hereby agree that: (i) such Option Consideration is the best pre-estimate of such damages which would accrue to Seller; (ii) said Option Consideration represents damages and not any penalty against Buyer; and (iii) if Buyer shall fail to fulfill Buyer's obligations hereunder, said Option Consideration paid hereunder by Buyer shall be retained by Seller as its full and liquidated damages in lieu of all other rights and remedies which Seller may have against Buyer at law or in equity for such failure.

11. **Environmental and Building Assessment.** Buyer's obligation to purchase the Subject Property pursuant to this Agreement shall be contingent upon a determination by Buyer that the environmental and building conditions at the Subject Property are acceptable to Buyer.

   a. On or before the end of the Due Diligence Period, Buyer, through its employees and agents, may enter upon the Subject Property for the purpose of accomplishing an environmental assessment of the soils, water, buildings and other improvements on the Subject Property ("Environmental and Building Assessment") at Buyer's immediate cost and expense. Should Buyer determine, in its sole discretion, based on its investigations of the Subject Property, that the environmental conditions at the Subject Property or adjacent property are unacceptable or that the structural or environmental conditions of the buildings on the Subject Property are unacceptable on or before the end of the Due Diligence Period, Buyer shall so notify Seller, and Seller shall use its best efforts to remove such unacceptable condition by Closing. In the event Seller is unable to remove any such unacceptable condition by the date set for the Closing, Buyer may elect to either (i) terminate this Agreement, in which case Buyer shall have no obligation to purchase the Subject Property, and all Option Consideration paid under the terms of this Agreement shall promptly be refunded or (ii) defer the date of Closing for a reasonable period of time to allow Seller to address any remediation of the issues identified in the Environmental and Building Assessment.

   b. No later than five (5) days after the execution of this Agreement, Seller shall provide Buyer with copies of any data or documents within Seller's possession or control pertaining to the following:

   (i) any Hazardous Substances (as such term is defined in Section 9 of this Agreement) handled, used, stored, treated or otherwise applied on the Subject Property;

   (ii) any disposal practices in connection with such Hazardous Substances;

   (iii) any investigation undertaken in connection with the physical or environmental conditions of the Subject Property;

10

    (iv) any governmental notices regarding conditions at the Subject Property; and

    (v) copy of survey and report prepared by Ahneman and Partners dated February 1998.

  11A. **Fundraising Assessment.** During the Due Diligence Period, Buyer will evaluate the fundraising potential for the acquisition of the Subject Property on the terms of this Agreement. During the Due Diligence Period, Buyer will (1) meet with its fundraising partners (ie. Seller, Greenwich Land Trust and National Audubon) to develop a fundraising strategy, draft a Memorandum of Understanding that outlines each partner's fundraising responsibilities and time frames and (2) meet with several prospective donors to secure pledges. If, at the end of the Due Diligence Period, Buyer determines, in its sole and reasonable discretion that the fundraising capacity and potential are inadequate, Buyer will give notice to Seller to terminate this Agreement and Seller will promptly return the Option Consideration paid by Buyer.

  12. **Risk of Loss.** All risk of loss shall remain with Seller until Closing. In the event the Subject Property is destroyed or damaged prior to Closing, Buyer shall have the right at its option to terminate this Agreement by written notice to Seller, and thereupon Seller shall refund to Buyer the full amount of the Option Consideration. If the Subject Property contains improvements, Seller agrees that upon the date of Closing, such improvements shall be in the same order and condition as on the date of this Agreement, except for reasonable wear and tear. If the Subject Property contains improvements, Seller shall maintain in full force a policy of all-risk hazard insurance, insuring against loss of or damage to the improvements. Seller shall notify Buyer in writing of any damage to or destruction of the Subject Property within five (5) days after Seller learns of such damage or destruction.

  13. **Condemnation.** In the event of the taking of all or any part of the Subject Property by eminent domain proceedings, or the commencement of such proceedings prior to Closing, Buyer shall have the right, at its option, to terminate this Agreement by written notice to Seller, in which case Seller shall promptly refund to Buyer the Option Consideration. If Buyer does not so terminate the Agreement, then Buyer may, at its option, either (i) proceed to Closing with the Purchase Price reduced by the total of any awards or other proceeds received or to be received by Seller as a result of such proceedings, or (ii) proceed to Closing with an assignment by Seller of all Seller's right, title and interest in and to any and all such awards and proceeds. Seller shall notify Buyer in writing of any eminent domain proceedings affecting the Subject Property within five (5) days after Seller learns of such proceedings.

  14. **Prorations and Fees.** Current real property taxes on the Subject Property shall be prorated as of the date of Closing based upon the latest available tax bill. If the Closing shall occur before the tax rate is fixed for the then current year, subsequent to Closing, when the tax rate is fixed for the year in which the Closing occurs, Seller and Buyer agree to adjust

the proration of taxes and, if necessary, to refund or pay (as the case may be such sums as shall be necessary to effect such adjustment. If the amounts of said taxes has not been determined at the time of Closing, they shall be apportioned on the basis of the taxes assessed for the preceding year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement less the reasonable cost of obtaining same, shall be apportioned between the parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless otherwise agreed. If such proceedings are commenced, the party commencing the same shall give the other party notice thereof and shall prosecute such proceeding and not discontinue the same without first giving the other notice of its intention to do so and reasonable opportunity to be substituted in such proceedings; and the other party agrees to cooperate in such proceedings without being obligated to incur any expense in connection therewith. It is understood that the term "cooperate" is used in the last preceding sentence shall in the case of Seller include the signing of any and all applications or petitions for such proceedings which are required to be brought in the name of Seller. All levied and pending special assessments against the Subject Property shall be paid in full by Seller. Any documentary tax or real property transfer tax or gains tax arising out of the conveyance of the Subject Property shall be paid by Seller. Seller shall be responsible for paying any additional taxes, penalties and interest, including but not limited to compensatory or roll back taxes, on the Subject Property arising from the termination of a preferential tax classification of the Subject Property payable as a result of the conveyance to Buyer or as a result of Buyer's conveyance to a public agency as contemplated by the parties to this Agreement. Other fees and charges shall be allocated in accordance with the customary practice of the county in which the Subject Property is located.

15.   Notices. All notices pertaining to this Agreement shall be in writing delivered to the parties personally, by fax, commercial express courier service, or by first class United States mail, postage prepaid, addressed to the parties at the addresses set forth in Recital A. All notices given personally, by fax or by commercial express courier service shall be deemed given when received. All notices given by mail shall be deemed given when deposited in the mail, first class postage prepaid, addressed to the party to be notified. The parties may, by notice as provided above, designate a different address to which notice shall be given.

16.   Attorneys' Fees. If any legal action is brought by either party to enforce any provisions of this Agreement, the prevailing party shall be entitled to recover from the other party reasonable attorneys' fees and court costs in such amounts as shall be allowed by the court.

17.   No Broker's Commission. Each party represents to the other that it has not used a real estate broker in connection with this Agreement or the transaction contemplated by this Agreement. In the event any person asserts a claim for a broker's commission or finder's fee against one of the parties to this Agreement, the party on account of whose actions the claim is asserted will indemnify and hold the other party harmless from and against said claim

12

and the provisions of this Section 17 shall survive Closing or any earlier termination of this Agreement.

18. **Binding on Successors.** This Agreement shall be deemed a covenant running with the land and shall be binding upon the parties and also upon their heirs, personal representatives, assigns, and other successors in interest.

19. **Memorandum of Option.** Concurrently with the signing of this Agreement, the parties shall sign a Memorandum of Option in recordable form in the form of Exhibit B, which is attached to this Agreement and incorporated herein by this reference. Buyer shall cause the Memorandum of Option to be recorded. In the event Buyer does not exercise the Option within the term of this Agreement, Buyer shall, if requested to do so by Seller, deliver upon demand a quitclaim deed or release of option in a form suitable for recordation covering the Subject Property so as to eliminate any cloud on Seller's title to the Subject Property.

20. **Additional Documents.** Seller and Buyer agree to execute affidavits customarily required for the issuing of title insurance protecting against mechanics' liens and parties in possession and such additional documents as may be reasonable and necessary to carry out the provisions of this Agreement.

21. **Non-Foreign Certificate.** Concurrently with the execution of this Agreement, Seller shall execute a Non-Foreign Certificate pursuant to Section 1445 of the Internal Revenue Code of 1986, as amended, and shall deliver such certificate to Buyer. Seller acknowledges that if Seller is unable to certify that it is not a "foreign person," Buyer may be required to withhold a portion of the Purchase Price at Closing for federal income tax purposes.

22. **Entire Agreement; Modification; Waiver.** This Agreement constitutes the entire agreement between Buyer and Seller pertaining to the subject matter contained in it and supersedes all prior and contemporaneous agreements, representations, and understandings. This Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing this Agreement to be drafted. No supplement, modification, waiver or amendment of this Agreement shall be binding unless specific and in writing executed by the party against whom such supplement, modification, waiver or amendment is sought to be enforced. No delay, forbearance or neglect in the enforcement of any of the conditions of this Agreement or any rights or remedies hereunder shall constitute or be construed as a waiver thereof. No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

23. **Assignment of Buyer's Interest.** The parties hereto agree that the Buyer may assign its interest in this Agreement to a federal agency, municipality or to an organization or entity that is a qualified organization at the time of transfer under Section 170(h) of the

13

Internal Revenue Code of 1986, as amended, and the applicable regulations promulgated thereunder. Upon any such assignment the assignee shall have all the rights and obligations of the Buyer hereunder and Buyer shall thereupon, automatically and without the execution of further instruments or documents, be relieved and released of and from all of the obligations hereunder. Buyer also may designate a nominee to take title to the Subject Property at the Closing.

24. **Counterparts**. This Agreement may be executed in counterparts, each of which shall be deemed an original and which together shall constitute one and the same agreement.

25. **Severability**. Each provision of this Agreement is severable from any and all other provisions of this Agreement. Should any provision(s) of this Agreement be for any reason unenforceable, the balance shall nonetheless be of full force and effect.

26. **Governing Law**. This Agreement shall be governed by and construed in accordance with the laws of the state in which the Subject Property is located.

27. **Possession**. Possession of the Subject Property shall be delivered on the date of Closing in the same condition as it is on the date hereof, ordinary wear and tear excepted, free and clear of the rights or claims of any other party.

28. **Seller's Promise to Remove Personal Property**. On or before the expiration of the Due Diligence Period, Buyer will inspect the Subject Property and provide a written list to Seller of the personal property, trash, rubbish or other unsightly or offensive materials including but not limited to any Hazardous Substance in tanks, barrels, equipment, pipelines or other containers on the Subject Property, that Buyer will require to be removed from the Subject Property prior to Closing. Prior to Closing, Seller promises to remove or cause to be removed from the Subject Property at Seller's expense the items set forth on the written list provided by Buyer. Satisfaction of the promises contained herein shall be subject to Buyer's inspection and approval of the physical condition of the Subject Property. If, on or before the date set for Closing, Seller has not satisfied the promises contained herein, Buyer may elect to either (a) defer the Closing until Seller has satisfied said promises or (b) remove or cause to be removed said personal property and/or trash, rubbish, or other offensive materials as described above in which case Buyer shall be credited at Closing with the amount expended by Buyer in this regard in order to satisfy Seller's promises contained herein.

29. **No Merger**. The obligations contained in this Agreement, except for those specifically discharged at Closing (such as conveyance of title to the Subject Property, placing any mortgage on the Subject Property and delivery of money and documents), shall not merge with transfer of title but shall remain in effect until fulfilled.

14