UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

THE CALF ISLAND COMMUNITY     :
TRUST, INC. & MARILYN TSAI     :
                              :
     v.                       :     CIVIL NO. 3:02CV462(AHN)
                              :
YOUNG MENS CHRISTIAN ASSOC.     :
OF GREENWICH, ET AL.          :


UNITED STATES OF AMERICA      :
                              :
     v.                       :     CIVIL NO. 3:03CV275(AHN)
                              :
28.8 ACRES OF LAND, MORE OR     :
LESS LOCATED OFF THE COAST     :
OF GREENWICH, SITUATED IN THE :
COUNTY OF FAIRFIELD, STATE OF :
CONNECTICUT, ET AL.           :


RULING ON YMCA'S MOTION FOR SUMMARY JUDGMENT AND
GOVERNMENT'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS

     These consolidated cases involve the transfer of ownership

of a parcel of property known as Calf Island, a/k/a Calves

Island, ("Calf Island") from the Young Mens Christian Association

of Greenwich ("YMCA") to the United States Department of

Interior.  In the first action, a neighboring landowner, Marilyn

Tsai("Tsai"), and an entity known as the Calf Island Community

Trust, Inc. (the "Trust") challenge the transfer on the grounds

that the proposed use of the property would violate restrictive

covenants, interfere with a prescriptive easement, and breach an

alleged promise by the YMCA to preserve public access and use of

Calf Island.  Tsai also alleges that the deed conveying Calf

Island to the YMCA is invalid.  The second case is an in rem

action in which the United States exercises its power of eminent domain to take fee simple title to Calf Island.

Presently pending before the court are the YMCA's motion for summary judgment in the first action, and the government's motion for partial judgment on the pleadings in the condemnation action. The YMCA seeks a judgment dismissing the complaint filed by Tsai and the Trust on the grounds that, among other reasons, their action is moot in light of the government's condemnation action. The government seeks partial judgment on the pleadings on the defendants' objections to the taking and release of funds.

For the following reasons, the YMCA's motion for summary judgment [doc. # 47] and the government's motion for partial judgment on the pleadings [doc. # 45] are both GRANTED.

I.    The Condemnation Action

In the complaint for condemnation the government exercises its power of eminent domain to obtain fee simple title to Calf Island[1] and seeks judicial determination of, and an award of just compensation to the property owner, the YMCA, and others having a compensable interest in the property.  In compliance with Fed. R. Civ. P. 71A,[2] the government asserts that it has authority for

---

[1]A taking in fee simple establishes a new title and extinguishes all existing possessory and ownership interest not specifically excepted.  See A.W. Duckett & Co. v. United States, 266 U.S. 149, 151 (1924).

[2]Fed. R. Civ. P. 71A governs the procedure for the condemnation of real and personal property under the power of eminent domain.  The rule requires a condemnation complaint to

2

the taking pursuant to the Declaration of Taking Act ("DTA"), 40 U.S.C. §§ 3113 and 3114, the Land and Water Conservation Fund Act of 1965, as amended, 16 U.S.C. § 4601-4, the Fish and Wildlife Act of 1956, as amended, 16 U.S.C. § 742f, the Endangered Species Act of 1973, as amended, 16 U.S.C. § 1534, and the Department of the Interior and Related Agencies Appropriation Acts, 1996 and 1997, Pub. L. No. 104-134 and Pub. L. No. 104-208.

The government further asserts that the public uses for which the property is taken are to properly develop and manage the Stewart B. McKinney National Wildlife Refuge (the "McKinney Refuge"), including protection, conservation, restoration, and management of the land; to protect and enhance populations of heron, egrets, terns and other shore and wading birds in the McKinney Refuge, and to provide opportunities for scientific research, environmental education, and fish and wildlife oriented recreation.

In compliance with Rule 71A(c)(2), the complaint describes the property taken, asserts an amount of estimated just compensation of $6,000,000, asserts that the estate taken is the full fee simple title, lists the YMCA as the purported owner, and identifies other parties who may have or claim an interest in the

---

contain a short and plain statement of the authority for the taking, the use for which the property is to be taken, a sufficient description of the property, the interest to be taken, and a designation of the defendants who have been joined as owners of the property or of some interest therein.  <u>See</u> Fed. R. Civ. P. 71A(c)(2).

property pursuant to deed restrictions.

Tsai and the Trust filed an answer and objections to the condemnation complaint in which they assert that the government failed to comply with the requirements of 40 U.S.C. § 3114 and Rule 71A and that the government: (1) does not have authority to condemn the property for the public purposes stated in the complaint; (2) failed to name the Trust as a party even though it claims an interest in the property; (3) improperly requested distribution of the amount of estimated just compensation; (4) does not have authority to expand the McKinney Refuge by condemning Calf Island; (5) does not have authority to use the power of eminent domain to purchase Calf Island; and (6) did not comply with the National Environmental Policy Act ("NEPA") and Fish and Wildlife Service regulations.  Additionally, in their memorandum in opposition to the government's motion for judgment on the pleadings, Tsai and the Trust assert two other grounds to set aside the taking: (1) irregularities and improprieties in the determination of the amount of estimated just compensation, and (2) the government's failure to comply with the congressional delegation of eminent domain authority and agency policies and programs.

A.   Discussion

The government maintains that Tsai and the Trust have not presented any valid objection to the taking.  According to the government, it obtained title in fee simple to Calf Island

4

immediately upon the filing of the declaration of taking and that the only question the court may consider in a challenge to the taking is a narrow, focused inquiry into whether there is a congressionally authorized public purpose for which the land is being taken.  See Berman v. Parker, 348 U.S. 26, 32-33 (1954) (holding that once the public purpose is determined to be within the authority of Congress, "it is for Congress and Congress alone to determine the means of executing the project."); see also Hawaii Hous. Auth. v. Midkiff, 467 U.S. 229, 241 (1984) ("Where the exercise of eminent domain power is rationally related to a conceivable public purpose, the Court has never held a compensated taking to be proscribed by the Public Use Clause."). The government maintains that it is exercising its eminent domain power as authorized by Congress and that none of the objections of the defendants have any merit.

       1.   Role of the Court

At the outset, the court notes that it has a very narrow and limited role in takings challenges.  Indeed, based on extensive, well-settled precedent, it appears that the only question this court may properly consider is whether there is a congressionally authorized public purpose for which the property is being taken. See, e.g., Hawaii Hous. Auth., 467 U.S. at 241; Berman v. Parker, 348 U.S. at 26.  The court's role is merely to determine whether the asserted statutory authority authorizes the taking of the property for the asserted purpose.  See United States v. Welch,

327 U.S. 546, 552 (1946).[3]

    2.   <u>Authority and Public Purpose</u>

As authority for the taking of Calf Island, the government relies on the general condemnation authority granted by the DTA, 40 U.S.C. § 3114, and three other statutes that give the Secretary of the Interior the authority to purchase land: (1) the Land and Water Conservation Fund Act, 16 U.S.C. § 4601-4 (providing "funds for the Federal acquisition and development of certain lands and areas" for outdoor recreation resources); (2) the Fish and Wildlife Act, 16 U.S.C. § 742f(a)(4) (authorizing the Secretary to take steps "for the development, advancement, management, conservation and protection of fish and wildlife resources including . . . acquisition by purchase or exchange of land and water, or interest therein"); and (3) 16 U.S.C. § 1534(a)(2) (authorizing the Secretary to acquire by purchase "lands, waters, or interest therein, . . . in addition to any other land acquisition authority."). The government further relies on a provision of the DTA that gives any agency having congressional authority to purchase land the power to also condemn the land. <u>See</u> 40 U.S.C. § 3113. Lastly, the government relies on 16 U.S.C. §§ 668dd(a)(1) and 742(f)(4), which give the Fish and Wildlife Service authority to administer the National

---

[3]For purposes of this Rule 12(c) morion for judgment on the pleadings, the court accepts as true the factual allegations in the defendants' answer and objections.

Wildlife Refuge System.

With regard to its specific authority to acquire Calf Island for inclusion in the McKinney Refuge, the government relies on Pub. L. No. 98-548, §§ 201-306 (1984) and Pub. L. No. 101-443, § 2 (1990). Public Law 98-548 established the Connecticut Coastal National Wildlife Refuge, which was later renamed the Stewart B. McKinney National Wildlife Refuge. See Pub. L. No. 100-38, 101 Stat. 306 (May 13, 1987). The stated purposes for which the McKinney Refuge was established are:

> (1) to enhance the populations of heron, egrets, terns, and other shore and wading birds within the refuge;
> (2) to encourage natural diversity of fish and wildlife species within the refuge;
> (3) to provide for the conservation and management of all fish and wildlife, within the refuge;
> (4) to fulfill the international treaty obligations of the United States respecting fish and wildlife; and
> (5) to provide opportunities for scientific research, environmental education, and fish and wildlife-oriented recreation.

Pub. L. No. 98-548, § 201(b).

This law designated the initial boundaries of the Refuge and directed the Secretary to "acquire (by donation, purchase with donated or appropriated funds, or exchange) lands, waters, or interests therein within the [designated] boundaries . . . ." The act was later amended to, inter alia, expand the boundaries of the Refuge by authorizing the Secretary to acquire specific parcels of land,[4] and to provide for future expansion by giving

---

[4]Specifically: (1) 690 acres of land and water known as the Great Meadows Marsh, in Stratford, Connecticut; approximately 230

the Secretary authority to "acquire such additional lands . . . as the Secretary considers appropriate" and to "adjust the boundaries of the refuge accordingly." See Pub. L. No. 101-443, § 2 (1990).

These public laws confer on the Secretary of the Interior the discretionary authority to expand the Refuge by acquiring Calf Island for the stated purpose of properly developing and managing the McKinney Refuge, including protecting, conserving, restoring, and managing the land; protecting and enhancing populations of heron, egrets, terns and other shore and wading birds in the Refuge, and providing opportunities for scientific research, environmental education, and fish and wildlife oriented recreation in the Refuge. Moreover, the Secretary asserts that it is acquiring Calf Island for the McKinney Refuge specifically because of its value as an underdeveloped wildlife habitat. It is not the role of the court to second guess the Secretary's discretion to add Calf Island to the McKinney Refuge for the asserted purposes. See United States v. Welch, 327 U.S. 546, 552 (1946) (noting that the role of the court is merely to determine whether the statutes authorize the taking of property for the asserted purpose); Berman v. Parker, 348 U.S. at 35 ("Once the

---

acres of land and water at the Menunketesuck River Marsh and Menunketesuck Island, in Westbrook, Connecticut; and approximately 80 acres of land and water in the vicinity of Norwalk Harbor, Connecticut. See Pub. L. No. 101-443, § 2 (1990).

question of the public purpose has been decided, the amount and
character of land to be taken for the project and the need for a
particular tract to complete the integrated plan rests in the
discretion of the legislative branch."). There is no question
that the statutes creating and expanding the Refuge authorize the
taking of Calf Island for the asserted purposes and that the
acquisition of Calf Island is rationally related to the asserted
purposes for the taking.

Contrary to the claims of Tsai and the Trust, it is
irrelevant that Calf Island is not among the properties
specifically listed in the statutes that established the Refuge.
As noted, the statutes give the Secretary the discretion to
acquire additional land and to adjust the boundaries of the
Refuge accordingly. See Pub. L. No. 101-443, § 2. This provides
sufficient authority to take Calf Island for inclusion in the
McKinney Refuge.

There is also no merit to the defendants' claim that the
Secretary has no right to use the power of eminent domain to
acquire Calf Island because § 203 of the initial act establishing
the Refuge only states that the Secretary may acquire land for
the Refuge through "[donation], purchase with donated or
appropriated funds, or exchange." Pub. L. No. 98-458, § 203(b).
Any perceived restrictions on the Secretary's ability to acquire
property for the Refuge by eminent domain that may have been
implied by this statutory language was eliminated by a subsequent

enactment.  Specifically, Pub. L. No. 101-443, § 2 expressly
states "[a]ny such acquisition [for future expansion of the
Refuge] shall be carried out in accordance with all applicable
laws and without regard to section 203 of this Act."  Thus, these
statutes, as well as 40 U.S.C. § 3113, 15 U.S.C. § 742F(a)(4),
and 16 U.S.C. § 1534(a)(2), give the Secretary the authority to
acquire Calf Island by eminent domain for inclusion in the
McKinney Refuge.

   3.   Failure to Comply with NEPA

There is also no merit to the claim of Tsai and the Trust
that the Fish & Wildlife Service did not comply with its policy
requiring a statement that the project is in compliance with the
National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321,
4331-4335, and that the project is not in compliance with NEPA.

As a matter of law, compliance with NEPA is not a
prerequisite to condemnation of property or a valid objection to
a taking.  See United States v. 0.95 Acres of Land, 994 F.2d 696,
698 (9th Cir. 1993) (holding that NEPA cannot be used as a
defense to a condemnation action); United States v. 255.25 Acres
of Land, 553 F.2d 571, 572 n.2 (8th Cir. 1977) ("The landowners
complaint as to the Secretary's noncompliance with NEPA and other
environmental statutes has no merit. . . ."); United States v.
178.15 Acres of Land More or Less, 543 F.2d 1391 (4th Cir. 1976)
(holding that the government may exercise its right of eminent
domain despite failures to file a NEPA environmental impact

10

statement); <u>City of Oak Creek v. Milwaukee Metro. Sewage Dist.</u>,
576 F. Supp. 482, 490 (E.D. Wisc. 1983) (same); <u>United States v.
27.09 Acres of Land</u>, 737 F. Supp. 277 (S.D.N.Y. 1990) (same).
<u>See also</u> <u>United States v. 162.20 Acres of Land</u>, 639 F.2d 299 (5th
Cir. 1981) (holding that noncompliance with provisions of the
National Historic Preservation Act is not a defense to a taking).
Compliance with NEPA, if applicable, is only required before the
regular operations of a federal project are begun. <u>See</u> <u>Chemical
Weapons Working Group, Inc. v. United States Dept. of Army</u>, 935
F. Supp. 1206, 1216 (D. Utah 1996), <u>aff'd</u>, 111 F.3d 1485 (10th
Cir. 1997). The rationale underlying these decisions is that the
role of the district court in condemnation actions under 40
U.S.C. § 3114 is limited to consideration of the legal authority
for the taking. <u>See</u> <u>162.20 Acres of Land</u>, 639 F.2d at 304;
<u>United States v. Cobb</u>, 328 F.2d 115, 116 (9th Cir. 1964).

This is also the case with regard to the defendants'
challenges based on the government's alleged failure to obtain
congressional approval for use of Land and Water Conservation
Funds and to comply with Fish and Wildlife appraisal
requirements. <u>See</u> <u>27.09 Acres of Land</u>, 737 F. Supp. at 277;
<u>Tennessee Gas Pipeline Co. v. New England Power</u>, 6 F. Supp.2d
102, 104-05 (D. Mass. 1998).

Similarly baseless is the defendants' claim that the taking
is defective because the government did not comply with the
acquiring agency's policy manuals. <u>See</u> <u>27.09 Acres of Land</u>, 737

F. Supp. at 277.  Agency manuals such as the Fish and Wildlife
Service Manual merely set forth the Agency's internal policies
and procedures for condemnations.  Moreover, the taking complaint
is not defective because it does not contain a list of
prerequisite approvals required by Fish and Wildlife Service
policy statements.  The only items that the government must
include in the declaration of taking pursuant to 40 U.S.C.
§ 3114(a) are: (1) a statement of the authority under which, and
the public use for which, the land is being taken, (2) a
sufficient description identifying the land taken, (3) a
statement of the estate or interest in the land taken, (4) a plan
showing the land taken, and (4) a statement of the amount of
money estimated by the acquiring authority to be just
compensation for the land taken.  The taking complaint in this
action contains all of the required items.

### 4.  Failure to Name the Trust as a Party

The defendants' claim that the taking is defective because
the Trust was not initially named as a party is moot because the
Trust has now been added.  Moreover, Rule 71A(c)(2) provides that
when the action is commenced, the condemnor is only required to
join persons who are known to have or claim an interest.  The
rule further provides that before any hearing is held regarding
the amount of compensation to be paid for the property, the
condemnor shall add as defendants "all persons having or claiming
an interest in that property whose names can be ascertained by a

12

reasonably diligent search of the records, . . ."  According to

the government, the reasons the Trust was not named at the time

the action was commenced are that the title report on the

property did not show that the Trust had any interest in Calf

Island, and the government had no other way of knowing that the

Trust claimed a compensable interest.  Moreover, because this

proceeding is in rem, the failure to join the Trust would not

defeat the government's title to the condemned property.  <u>See</u>

<u>United States v. 194.08 Acres of Land</u>,  135 F.3d 1025, 1031 (5th

Cir. 1998) (holding that lack of notice to a party having an

interest in the property being taken does not invalidate the

taking).

        The Trust has not suffered any prejudice, it has now been

added as a party and, assuming it has standing[5] and a compensable

_____

        [5]The court notes that the Trust has never provided any
information or evidence showing that it has a cognizable or
compensable interest in Calf Island.  <u>See</u> Fed. R. Civ. P. 71A(e)
(requiring defendants to "identify the property in which [it]
claims and interest [and] state the nature and extent of the
interest claimed....").  <u>See</u> <u>also</u> <u>United States v. Certain Land</u>
<u>Situated in the City of Detroit</u>, 361 F.3d 305, 308 (6th Cir.
2004) (holding that Rule 71A(e) "evidences that a district court
only has jurisdiction to entertain defenses and objections from
parties who could assert property interests in the condemned
land.").  The Trust asserts that it "is an entity formed solely
for preserving [the] tradition of public access and uses [of Calf
Island]" and that it is acting in a representative capacity of
other, unidentified entities who would otherwise have standing to
sue in their own right.  These allegations do not satisfy the
requirements of Rule 71A(e).
        Moreover, as the government and the YMCA note, it does not
appear that either the Trust or Tsai have a personal stake (as
opposed to a generalized grievance) in this matter which is
required for both taxpayer and citizen standing.  <u>See</u> <u>Steel Co.</u>

interest, can present its claim for compensation at the
compensation hearing.

        5.    Distribution of Estimated Just compensation

        The defendants' objections based on the government's
calculation of the amount of estimated just compensation and the
distribution of estimated just compensation are also baseless and
are not a valid defense to the taking.

        Under 40 U.S.C. § 3114, Congress delegated authority to
governmental agencies to make an estimate of just compensation

_____

v. Citizens for a Better Env't, 523 U.S. 83, 103-04 (1998)
(setting forth the three requirements an individual or entity
must allege and prove to have citizen standing: (1) an injury in
fact -- a concrete, actual and imminent harm, as opposed to harm
that is conjectural or hypothetical; (2) causation -- a traceable
connection between the injury and the conduct causing the injury;
and (3) redressability -- a likelihood that the requested relief
will address the alleged injury). Rather, Tsai and the Trust
merely allege an injury that is held in common by all members of
the public in general and such a generalized grievance is not
sufficient for citizen standing. Similarly, neither Tsai nor the
Trust have shown that they have federal taxpayer standing to
assert a generalized grievance. See Schlesinger v. Reservists'
Comm. to Stop the War, 418 U.S. 208, 227-28 (1974) (holding that
a taxpayer may have standing in limited circumstances where he
challenges the exercise of "congressional power under the taxing
and spending clause of Art. I, § 8 . . ." and "the challenged
enactment exceed[ed] specific constitutional limitations imposed
upon the exercise of the congressional taxing and spending
power."). Neither Tsai nor the Trust challenge the exercise of
congressional power under the taxing and spending clause of Art
I, § 8 or claim that appropriated funds for the taking are being
spent in violation of a specific constitutional limitation on the
taxing and spending power.
        Unless Tsai and the Trust can establish that they have
either citizen or taxpayer standing, their objections to the
amount of just compensation paid by the government to the YMCA
and to the pre-taking negotiations among the parties will not be
entertained by the court.

and courts are not permitted to inquire into the sufficiency of the amount estimated in good faith.  See <u>United States v. Cobb</u>, 328 F.2d 115, 116 (9th Cir. 1964).  The disbursement of the estimated just compensation at the time the government takes title to the condemned land is intended as a provisional payment to the landowner.  See <u>United States v. Miller</u>, 317 U.S. 369, 381 (1943); <u>Evans v. 2,187.43 Acres of Land</u>, 326 F.2d 827(8th Cir. 1964).  Disbursement of the estimated just compensation does not affect the rights of parties to challenge the taking or claim just compensation.  See 40 U.S.C. § 3114; Fed. R. Civ. P. 71A(j). Any claimant with a compensable interest in the condemned property may present evidence at the compensation hearing as to the value of its interest and share in the proceeds.  See <u>United States v. 58.16 Acres of Land</u>, 478 F.2d 1055, 1059 (7th Cir. 1973).  Further, pursuant to Rule 71A(I), at the end of the case the court may adjust the amount of compensation that was distributed.  See Fed. R. Civ. P. 71A(I) ("If the compensation finally awarded to any defendant exceeds the amount which has been paid to that defendant on distribution of the deposit, the court shall enter judgment against the plaintiff and in favor of that defendant for the deficiency. . . .").

While the Second Circuit has assumed, but never decided, that a court may inquire into the sufficiency of the deposit of estimated just compensation, the Court noted that it would only be proper to do so where the estimated value of the condemned

15

property was made by the government in bad faith. <u>See</u> <u>United States v. 44.00 Acres of Land</u>, 234 F.2d 410, 415 (2d Cir. 1956). The defendants here do not allege that the government acted in bad faith in determining the amount of estimated just compensation. Although the defendants make unsubstantiated, conclusory claims of impropriety in connection with the pre-taking negotiations and dealings between the government and the YMCA, their complaints are not sufficient to raise bad faith as a defense.[6] <u>See</u> <u>United States v. 416.81 Acres of Land</u>, 514 F.2d 627, 632 (7th Cir. 1975) ("To allege bad faith a party must charge facts, rather than conclusions, and such facts must suggest actual malevolence by the officer toward the complaining party.").

      6.  <u>Other Objections</u>

The court has considered the defendants' other grounds pertaining to title to the property and the restrictive covenants and finds that they do not provide valid defenses to the taking. The court also does not find that the defendants have been denied the right to have their claims heard. When they were given the opportunity to present their claims at the hearing on disbursement of the estimated just compensation, the defendants did not appear. Nonetheless, they will have an opportunity to

---

[6]Even if there was merit to this claim, it is unlikely that Tsai or the Trust would have standing to assert it. <u>See</u> <u>supra</u> at n.4.

present evidence supporting their individual claims of entitlement to compensation at the hearing to determine just compensation.

     B.   Conclusion

In sum, the government has authority to condemn Calf Island for the public purpose stated in the declaration of taking and none of the objections asserted by Tsai and the Trust are valid defenses to the taking. The court is satisfied that the defendants cannot state any set of facts that would entitle them to relief and thus judgment on the pleadings is appropriate. See Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001). Accordingly, the government's motion for partial judgment on the pleadings is GRANTED.

II.  The Civil Action Brought by TSAI and The Trust

In the civil action filed before the condemnation action, Tsai and the Trust assert four claims: (1) in count one, Tsai asserts that the transfer of ownership of Calf Island to the government would violate a restrictive covenant in the YMCA's deed providing that Calf Island "shall never be used for any purpose other than residential purposes;" (2) in count two, Tsai alleges that there are deficiencies in the YMCA's deed to Calf Island; (3) in count three, the Trust alleges that the sale of Calf Island to the government would constitute a breach of the YMCA's promise to members of the Trust that it would protect the long established tradition of public access and use of Calf

17

Island; and (4) in count four, the Trust alleges that the transfer of Calf Island to the government would constitute a breach of a prescriptive easement held by its members.

The YMCA has moved for summary judgment on all counts of the complaint.  It asserts that the claims of Tsai and the Trust are without merit, that neither Tsai nor the Trust have standing to assert the claims, and more significant, that the government's taking of Calf Island renders their claims moot.  The court agrees.

A.  <u>Mootness</u>

"A case is moot when the issues presented are no longer live." <u>City of Erie v. Pap's A.M.</u>, 529 U.S. 277, 287 (2000).  In that event, it is impossible for a court to grant any effectual relief whatever to the prevailing party, and any opinion as to the legality of the challenged action would be merely advisory. <u>See</u> <u>id.</u> (citations omitted).

When the government filed the declaration of taking and deposited the estimated just compensation with the Court, fee simple title to Calf Island vested immediately in the United States and all previous rights to the land were extinguished. <u>See</u> <u>A. W. Duckett & Co. v. United States</u>, 266 U.S. 149, 151 (1924).  Among the rights extinguished by the taking were any and all rights to the restrictive covenants in the YMCA's deed, any right of access held by the public by virtue of any prescriptive easement, and any right to enforce an alleged promise of the YMCA

18

to protect the tradition of public access to Calf Island.  See
United States v. Payne, 368 F.2d 74 (4th Cir. 1966) (noting that
access rights can be destroyed through eminent domain); United
States v. Certain Land in the City of Augusta, 220 F. Supp. 696,
699 (D. Me. 1963) (same).  Because the claims asserted in the
complaint filed by Tsai and the Trust are, after the taking, no
longer live, the court is unable to grant any relief and any
opinion it would render as to the legality of the challenged
action would be merely advisory.  Accordingly, their action is no
longer justiciable.

    B.  Standing

    Even if the two claims asserted by Tsai and the two claims
asserted by the Trust were not moot and had merit, neither Tsai
nor the Trust would have standing to assert them.  Tsai does not
have the personal stake in the litigation that is required for
standing, see Fetto v. Sergi, 181 F. Supp.2d 53, 67 (D. Conn.
2001), and because the Trust does not have any members, it does
not have associational standing, nor does it have standing to sue
on its own behalf because it does not allege a personal injury.
See Warth v. Seldin, 422 U.S. 490, 511 (1975).

    1.  Tsai's Claims

    Tsai claims that the transfer of Calf Island to the
government for use as a wildlife refuge would violate a
restrictive covenant in the YMCA's deed that the land would never

be used for any purpose other than residential.  Not only is this
claim baseless, it evinces a fundamental misunderstanding of the
law relating to restrictive covenants.  It is well settled that
residential use covenants do not affirmatively require
residential development of the burdened property.  Rather, such a
covenant prescribes use of the property for business purposes.
See Bickell v. Moraio, 117 Conn. 176, 181 (1933) (noting that the
creation of an area restricted to residential purposes
contemplates the exclusion of businesses); Mellitz v. Sunfield
Co., 103 Conn 177, 185-86 (1925) (interpreting a residential use
covenant as permitting any use consistent with residential
purposes and not requiring the erection of a dwelling).  Even if
the transfer of Calf Island to the United States did not
extinguish that restrictive covenant in the YMCA's deed, it is
apparent that the covenant would not be violated by the
government's proposed use of the property as a wildlife refuge.

Tsai's claim with respect to the alleged technical defects[7]
in the YMCA's deed to Calf Island are similarly baseless.  Even
if the alleged defects were present in the YMCA's deed and

---

[7]Tsai alleges that the 1955 deed conveying Calf Island to
the YMCA is invalid because it was not properly acknowledged,
contains a legally insufficient description of the property, and
was improperly executed by the YMCA.  Each of these alleged
defects are without foundation or substance in law.  See 1997
Conn. Spec. Acts 97-6 (validating deeds recorded prior to April
18, 1997 that contain certain defects, omissions or
irregularities).  See also Hollywyle Assoc., Inc. v. Hollister,
164 Conn. 389, 394 (1973).

rendered it invalid, the grantors' interest in Calf Island would revert to the grantors or their heirs, not, as Tsai claims, to her as successor in title to property once owned by one of the grantors.

> 2. The Trust's Claims

The Trust, in counts three and four, asserts, on behalf of its "members," that (1) the YMCA is estopped from transferring ownership of Calf Island to the government because the transfer would violate the YMCA's alleged promise to preserve public access and use of the property for camping, education, and recreation and (2) the conveyance of Calf Island to the government would violate a prescriptive easement held by the Trust's members.

Both of these claims are baseless. As noted, any alleged rights of public access and use of Calf Island were extinguished by the taking. Moreover, the Trust has no standing to assert such claims. In the complaint, the Trust asserts that it is acting in a representative capacity on behalf of its "members." However, according to both the Trust's Certificate of Incorporation and a document filed in this action [see doc. # 10, Disclosure Statement], the Trust has no members.

It is well settled that "[a]n organization may have standing to sue on its own behalf to vindicate whatever rights and immunities the association itself may enjoy or under proper

conditions, to sue on behalf of its members asserting the members' individual rights." New York State NOW v. Pataki, 261 F.3d 156, 162 (2d Cir. 2001), cert. denied, 534 U.S. 1128 (2002) (quoting Common Cause v. FEC, 108 F.3d 413, 417 (D.C. Cir. 1997)) (internal quotations and citations omitted).  The Trust does not have organizational standing to sue on its own behalf because it does not allege that it is suing to vindicate any individual rights of its own.  Because the Trust does not have any members, a fortiori, it does not have standing to invoke the court's remedial powers on behalf of others.  Thus, in the absence of a legally cognizable injury, the Trust does not have standing to assert the claims in count three and four of the complaint.  See Common Cause v. FEC, 108 F.3d 413, 419 (D.C. Cir. 1997).

     C.   Conclusion

The civil action filed by Tsai and the Trust was rendered moot by the government's condemnation action.  Moreover, even if the claims raised in the complaint were meritorious, neither Tsai nor the Trust would have standing to assert them.  For these reasons, and because there are no relevant and material factual issues in dispute, summary judgment may enter as a matter of law in favor of the YMCA.

<u>CONCLUSION</u>

For the foregoing reasons, the YMCA's motion for summary judgment [doc. # 47] is GRANTED.  The government's motion for partial judgment on the pleadings [doc. # 45] is GRANTED.

SO ORDERED this 26th day of January, 2005, at Bridgeport, Connecticut.


/s/_____
        Alan H. Nevas
United States District Judge