UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

2005 DEC 27 A 9: 19



| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | |
| | : | cv |
| v. | : | CASE NO. 3:02-~~CR~~-00462 (AHN) |
| | : | |
| 28.8 ACRES OF LAND, ET AL., | : | |
| | : | |
| Defendants. | : | DECEMBER 23, 2005 |

**MEMORANDUM OF SUSANNE P. WAHBA
IN SUPPORT OF
<u>MOTION FOR AWARD OF COMPENSATION</u>**

**<u>INTRODUCTION</u>:**

Susanne P. Wahba is a claimant in this condemnation proceeding brought by plaintiff United States of America. Mrs. Wahba contends that she had a property interest in Calf Island, the property that was condemned, arising from deed restrictions on the Island's use specifically intended to benefit her nearby property. Mrs. Wahba seeks just compensation, pursuant to Rule 71A of the Federal Rules of Civil Procedure, from plaintiff for the extinguishment of the deed restrictions as a result of the condemnation.

Mrs. Wahba has now moved for an award of compensation.[1] The parties have agreed, with the Court's approval, to adjudicate Mrs. Wahba's potential claim in two stages: first, determining whether, as a matter of law, she had a compensable interest in Calf Island; and second, if so, proceeding to a determination of the value of her interest.

Mrs. Wahba submits this Memorandum and the annexed Affidavits of Susanne P. Wahba dated December 23, 2005 ("S.Wahba Aff.") and Mahmoud A. Wahba dated December 23, 2005 ("M.Wahba Aff.) in support of her claim of a compensable interest in Calf Island. While Mrs.

---

[1] Mrs. Wahba does not challenge or seek to overturn the condemnation.

Wahba believes that the facts entitling her to an award are undisputed, to the extent that the plaintiff (or any other party) disputes Mrs. Wahba's factual contentions, she respectfully requests an evidentiary hearing on her eligibility for an award.

**STATEMENT OF FACTS:**

Claimant Susanne P. Wahba is the present owner of shoreline property at 111 Byram Shore Road in Greenwich, Connecticut. [S.Wahba Aff. at ¶ 3]. Mrs. Wahba's property was owned at one time by Rowena Lee Teagle, who also owned land on Calf Island (also known as Calves Island) ["Island"]. [Id.]. [2] Mrs. Wahba's property is located on Long Island Sound and directly faces Calf Island, which is approximately 2,000 feet off shore. Mrs. Wahba's property has a panoramic view of the Sound and the Island. [Id. at ¶ 3 & Exhibit B (photographs of the view of Calf Island and the Sound from Mrs. Wahba's property)].

In 1955, Rowena Lee Teagle and three other persons[3] [hereinafter "Grantors"], who together were the owners of Calf Island, gifted the Island by deed to the Young Men's Christian Association of Greenwich ["YMCA"]. [Id. at ¶ 5]. The deed (attached to Mrs. Wahba's Affidavit as Exhibit C) contains several covenants restricting future use of the property and states that "the [YMCA], **for itself, its successors and assigns**, does hereby covenant and agree with

---

[2] The deeds which show chain of title from Rowena Teagle to Mrs. Wahba are attached to Mrs. Wahba's Affidavit as Exhibits A1-A11 (and are summarized at Exhibit A). In summary, the Wahba property came to Mrs. Wahba as follows: Estate of Rowena Lee Teagle to George P. Smith to Monica A. Smith to Mahmoud A. Wahba to Susanne P. Wahba. Susanne P. Wahba is currently the sole owner of the property.

[3] C. Redington Barrett, John D. Barrett, Jr., and Jeremiah Milbank.

2

the Releasors [Grantors] **and their respective heirs, legal representatives and assigns"** to abide by the restrictive covenants. [Ex. C at 2 (emphasis added)].

The deed restricts the use of the Island to recreational and educational purposes while the Island remains in the hands of the YMCA.[4] [Id.] It also restricts the use of the Island, once it is no longer owned by the YMCA, to "residential purposes" with certain building height and lot size restrictions.[5] [Id., First, Second and Third Covenants]. The deed further prohibits for all time all construction on the northwest side of the Island, the side that is within the sight line of Mrs. Wahba's property on Byram Shore Road:

> [T]hat no building or structure shall ever be erected or maintained on that portion of the above-described land lying northwesterly of the broken line shown on the plan of said Calves Island hereto attached. [Id., Second Covenant and Plan of Island].

The deed makes clear that the restrictive covenants run with the land, so as to benefit lands that were still in the hands of the Grantors at the time the Island was gifted. The last covenant states:

> That the foregoing covenants **shall be deemed and construed as real covenants running with the land** and **shall inure to the benefit of other lands of the Releasors [Grantors]**. [Id., Fifth Covenant (emphasis added)].

---

[4] The covenant states in pertinent part: "[S]o long as title to the above-described land is vested in the Releasee or its successors by merger, the above-described land shall be used solely for the purpose of promoting the educational and recreational program of said Young Men's Christian Association of Greenwich, Connecticut, for character development, citizenship training and physical fitness, and for no other purposes whatsoever ...."

[5] In pertinent part, the deed states: "That no building or other structure shall ever be erected or maintained on the above-described land which is more than one story or which is more than twenty-five feet in height...."

3

The effect of the deed's restrictions on construction on the northwest side of the Island and of the building height restrictions on other portions of the Island was to prevent any construction visible from Rowena Teagle's (and the other Grantors') other properties (including the property then-owned by Rowena Teagle that is now owned by Mrs. Wahba). [S.Wahba Aff. at ¶ 5].

As consideration for the gift of the Island, the YMCA's agreement with the Grantors to abide by the restrictive covenants extended to the Grantors' "heirs, legal representatives and assigns" [id., Ex. C at 2], which includes Mrs. Wahba through her chain of title from Rowena Lee Teagle. Since the restrictive covenants ran with the land, and since Mrs. Wahba is in the chain of title from Rowena Lee Teagle, Mrs. Wahba had the right to enforce the restrictive covenants up to the time the property was condemned by the United States. Town of Stamford v. Vuono, 108 Conn. 359, 363-69 (1928); Grady v. Schmitz, 16 Conn. App. 292, 295-98 (1988).

The view of the Sound and Calf Island was a material and substantial factor in Mr. and Mrs. Wahba's decision to purchase this particular parcel of land, on which they would be building their home. [S.Wahba Aff. at ¶ 3; M.Wahba Aff. at ¶ 4]. The house that the Wahbas built on the property was specifically designed to capture the view of Calf Island from most rooms in the house, and includes a glass wall on the ground level facing the water. [S.Wahba Aff. ¶4; M.Wahba Aff. ¶5].

At the time they purchased the property, Mr. and Mrs. Wahba were aware that Calf Island was owned by the YMCA and of the deed covenants restricting use and construction on the Island that protected the property's view of the Island and Long Island Sound. [S.Wahba Aff. ¶ 4;

4

y

M.Wahba Aff. ¶ 5]. The Wahbas relied on the existence of the deed restrictions in valuing the property and deciding to purchase the property. [S.Wahba Aff. ¶¶ 3-4; M.Wahba Aff. ¶¶ 4-5].

Mrs. Wahba's property has a value, with a protected view, of over $9 million. The property's panoramic view of the Island and Long Island is a material aspect of its value, and it is unlikely that a potential purchaser would be willing to pay $9 million for the property if the view were not protected. [S.Wahba. Aff. at ¶ 15].

On or about February 13, 2003, the United States obtained fee simple title to the Island through its powers of eminent domain pursuant to the Declaration of Taking Act, 40 U.S.C. §§ 3113 and 3114. As a result of the taking, the restrictive covenants were extinguished by law. A.W. Duckett & Co. v. United States, 266 U.S. 149, 151 (1924); The Calf Island Community Trust, Inc. v. Young Men's Christian Assoc. of Greenwich, 392 F.Supp.2d 241, 245 n. 1 (D. Conn. 2005); Hartford National Bank & Trust Co. v. Redevelopment Agency of Bristol, 164 Conn. 337, 340 (1973).

While the United States has stated its intention to incorporate the Island into the Stewart B. McKinney National Wildlife Refuge, the government has no obligation to keep the Island as a natural wildlife habitat. The government has the right to sell the Island, which would pass without the restrictive covenants formerly on the property; The Calf Island Community Trust, 392 F.Supp.2d at 245 n.1; or could use it in a variety of ways that would negatively impact the Wahbas' sight line. The government is not restricted from putting structures on the northwest side of the Island, directly in the sight line of the Wahba property, or from building structures of unlimited height on other portions of the Island that also would affect the Wahbas' view.

The uncertainty over the government's future use of the Island, together with its unfettered right to construct any type and size of structure on the Island that would interfere with Mrs. Wahba's property's view, has impacted and depreciated the market value of Mrs. Wahba's property. [S.Wahba Aff. at ¶¶ 5, 12, 14,15].

## ARGUMENT

A.  **MRS. WAHBA HAS A COMPENSABLE PROPERTY INTEREST THROUGH HER CHAIN OF TITLE FROM ROWENA LEE TEAGLE, AND IS ENTITLED TO BE COMPENSATED FOR THE LOSS IN THE VALUE OF HER PROPERTY.**

Under Connecticut law, restrictive covenants which run with the land for the benefit of adjoining landowners create property rights entitling the adjacent landowners and subsequent purchasers to compensation if the deed restrictions are extinguished by a governmental acquisition of the underlying property. Town of Stamford v. Vuono, 108 Conn. 359 (1928).

Town of Stamford v. Vuono addresses this issue directly. In Vuono, the Connecticut Supreme Court considered the City of Stamford's acquisition of three parcels of land for use as a public high school. The City acquired two of the lots from Thamer and Metcalf, both of whom had purchased their parcels from Betts. Betts had placed covenants in the deeds of Thamer and Metcalf restricting construction on their properties to residential use and to a single residence. Id. at 363. Betts' deeds to Thamer and Metcalf expressly recited that these restrictions "shall run with the land and be binding upon the grantee, his heirs and assigns forever." Id.

Vuono was an adjoining landowner who had purchased his parcel from Betts subsequent to Thamer and Metcalf, and sought to enforce the deed restrictions on Thamer's and Metcalf's use of their lots or obtain compensation for the decreased value of his property resulting from the

violation of the residential use restrictions). The City of Stamford contended that since Vuono's deed made no reference to the restrictions on Thamer's and Metcalf's property, Vuono had no enforceable property right to enforce the restrictions (and thus no compensable property interest in the acquired property). The Connecticut Supreme Court rejected the City's contention.

The court explained that where an original grantor imposes restrictions for the benefit of land he retains, a subsequent purchaser of some or all of the retained land has the right to enforce the restrictions:

> [T]he original grantor (the owner of the property benefited) and his assigns may enforce [the restrictions] against subsequent purchasers of the property burdened. If the restrictive covenant is for the benefit of the remaining land of the grantor, it is an easement running with the land and may be enforced by a subsequent purchaser of the remaining land against the prior grantee and his successors in title upon the principle which prevents one having knowledge of the just rights of others from defeating such rights. [Id. at 365].

Thus, the Court held that

> [Vuono], as a subsequent purchaser of a portion of the remaining land, acquired as an easement running with the land the right to enforce the restrictions upon these two tracts not only against Thamer and Metcalf but against the plaintiff [City], their successor in title with knowledge of the existence of the restrictions. **Her right to enforce them does not depend upon whether the lots were sold in pursuance of a general scheme of improvement, nor upon the existence of any reciprocal covenants in her own deed from Betts.** [Id. at 365-66 (emphasis added)].

Accord Bauby v. Krasow, 107 Conn. 109 (1927); Baker v. Lunde, 96 Conn. 530, 537 (1921); Grady v. Schmitz, 16 Conn. App. 292 (1988); Cannavaro v. Washington Community Housing, 2005 WL 1433790 at *3-5 (Conn. Super. Ct. 2005) (restrictive covenants, imposed two years after plaintiffs purchased their adjoining property, benefitted plaintiffs' property and thus, as

third party beneficiaries, they could enforce the covenants); see 20 Am.Jur.2d, Covenants, Conditions, and Restrictions §§ 39, 40 ("Generally, covenants that run with the land bind not only the immediate grantee but any subsequent grantees in the chain of title. The assignee of land is entitled to all the benefits of a covenant which runs with the land and may, if it is breached during his ownership of the premises, sue for the damages sustained thereby"); 9 R. Powell, Real Property (2005 rev.) §60.04[5], p. 60-72 ("Each successive owner of the benefitted land has an enforceable right applicable to the breaches occurring in his or her period of ownership").

In Vuono, the court ruled that where, in furtherance of a public purpose, a governmental entity extinguishes deed restrictions benefitting an adjacent landowner, the landowner is entitled to be compensated:

> There is, of course, a clear distinction between the rights of the private owner of land which is subject to a restrictive easement and those of a governmental entity which requires for public purposes the use of the land in violation of the restriction. The private owner may not violate the restriction; if he attempts to do so he may be restrained by injunction. The governmental agency may not be restrained from making such use of the property as the public purpose for which it is acquired may require, **but if that involves the taking of private property it must make compensation for the same.** ....
>
> The rule that private property may not be taken for public purposes without just compensation applies to all kinds of property and every kind of right or interest in property which has a market value.

Vuono, 108 Conn. at 367-68 (emphasis added); accord 9 R. Powell, Real Property (2005 rev.) §60.10[4], pp. 60-139, 60-140 ( "A majority of jurisdictions reason that the benefit of a covenant is a property right, and, hence, the benefit's owner is entitled to compensation."); see also

Daniels v. Area Plan Comm'n of Allen County, 306 F.3d 445, 459 (7th Cir. 2002) (dispossession of right to enforce restrictive covenant to prevent commercial development constitutes property right taken by state action).

To determine whether a restrictive covenant "runs with the land," the court looks to the language in the grantee's deed and to the surrounding circumstances. Castonguay v. Plourde, 46 Conn. App. 251, 256-58, cert. denied, 243 Conn. 931 (1997); Grady v. Schmitz, 16 Conn. App. at 295-96. If the restrictive covenants enhance the value of the benefitted land and diminish the value of the burdened land, the covenants clearly run with the land. 9 R. Powell, Real Property (2005 rev.) § 60.04[3][a], pp. 60-42 to 60-44. Moreover, words of succession in the deed create a presumption that the restrictive covenants were intended to run with the land. Castonguay, 46 Conn. App. at 258.

The original deed to the YMCA here clearly indicates by its language that the intention of the Grantors was that the restrictive covenants should run with the land and bind all subsequent purchasers of the Island. Indeed, the language of the Grantors conclusively states that the restrictions shall run with the land and inure to the benefit of their adjoining lands:

> That the foregoing covenants shall be deemed and construed as real covenants running with the land and shall inure to the benefit of other lands of the Releasors [Grantors]." [Id., Fifth Covenant, Exh. B].

See Moore v. Serafin, 163 Conn. 1, 10 (1972) (where language in a deed has but one interpretation, the only question is whether the intent expressed therein has been given effect).

It is also clear from the plan of the Island appended to the Deed, and the restrictions set forth in the Second Covenant, that the Grantors wished to preserve for themselves and their heirs and assigns a view of the northwest side of the Island without buildings or structures on it.

A covenant restricting construction on a grantee's land so as to protect the view or sight line of the grantor's land is a common use of restrictive covenants that run with the land. In Castonguay, for example, the court held that plaintiff lot owners (in a subdivision) were entitled to enforce provisions of a declaration of restrictions and covenants recorded on the land records, which preserved for all lot owners a panoramic view of the countryside, because the restrictions and covenants were "of significant value to the land now owned by the plaintiffs" and clearly ran with the land. Id. at 260; see Vuono, 108 Conn. at 369 (discussing value of landowner's view).

Mrs. Wahba is an assign of one of the original Grantors to the YMCA of Calf Island and, as such, has a property interest in the restrictive covenants which ran with the land and directly benefitted her property. Mrs. Wahba had the right to enforce the covenants against the YMCA or subsequent purchasers of the Island. Vuono, 108 Conn. at 365-66; 9 R. Powell, Real Property (2005 rev.) §60.04[5], p. 60-72.

Now that the Island has been taken by eminent domain, the deed restrictions benefitting Mrs. Wahba's property have been extinguished, A.W. Duckett & Co. v. United States, 266 U.S. at 151; The Calf Island Community Trust, Inc. v. Young Men's Christian Assoc. of Greenwich, 392 F.Supp.2d 241 (D.Conn. 2005); Hartford National Bank & Trust Co. v. Redevelopment Agency of Bristol, 164 Conn. at 340, and "the owner of the property for whose benefit the restriction is imposed is entitled to compensation" by the governmental entity. Vuono, 108 Conn. at 367.

10

The measure of damages when a restrictive covenant is extinguished is the actual depreciation in the market value of the property that has lost the benefit of the covenants. Vuono, 108 Conn. at 369-70. "This is shown by the difference in the fair market value of the property before and after the taking." Id.; see also Bauby v. Krasow, 107 Conn. at 116 (where injunction not appropriate, plaintiff entitled to damages for depreciation in value of his property caused by violation of restrictive covenant).

In sum, Claimant Susanne P. Wahba is entitled to be compensated for any loss suffered as the result of the extinguishment of the restrictive covenants in connection with the plaintiff's taking of the Island. She claims compensation in an amount equal to the difference in the market value of her property at 111 Byram Shore Road, Greenwich, Connecticut, before and after the condemnation.

### B. MRS. WAHBA HAS NOT WAIVED HER RIGHT TO RECEIVE COMPENSATION FOR THE EXTINGUISHMENT OF THE DEED RESTRICTIONS.

The YMCA apparently takes the position that Mrs. Wahba has waived her right to receive compensation for the extinguishment of the deed restrictions by signing a document in October 2001 agreeing that Calf Island could be used as a wild-life refuge. Mrs. Wahba submits that the document (I) did not address and does not affect her property rights to limit construction on the Island and to protect her view; and (ii) is, in any event, void for lack of consideration.

#### 1. Circumstances Under Which the Wahbas Signed the Document

In their Affidavits, Mr. and Mrs Wahba explain the circumstances under which they were presented with and asked to sign the October 2, 2001 document (attached as Exhibit D to Mrs. Wahba's Affidavit). [See S.Wahba Aff. At ¶¶ 6-14; M.Wahba Aff. at ¶¶ 7-11].

11

When it became public knowledge that the YMCA was looking for a buyer for the Island, the Wahbas received numerous phone calls and mailings from different groups with varying ideas about what should be done with the Island. One of the persons who contacted the Wahbas was Marilyn Hess, a former neighbor, who – it later turned out – was a member of the YMCA's Board of Directors.

Ms. Hess called Mrs. Wahba on several occasions to discuss preserving the Island as a wildlife conservancy. Ms. Hess was concerned about construction on the Island should it be sold to a private party, and stated repeatedly that numerous homes could be built on the Island. Ms. Hess, along with Bruce Reynolds, a representative of the Trust for Public Lands,[6] subsequently approached the Wahbas and asked them to sign a document approving use of the Island as a wild-life preserve. The Wahbas were told that by signing the document they would enable the YMCA to sell the property for such use, thus facilitating the preservation of Calf Island as a wildlife preserve, and, at the same time, limiting other development of the Island. Based on these representations, the Wahbas agreed to sign the document.

The document, although entitled "Agreement," is signed only by Mr. and Mrs. Wahba. The document states, in relevant part:

> For mutual benefit received, the undersigned, for ourselves, our successors and assigns, heirs and legal representatives, hereby:
>
> 1. Agree that the phrase "residential purposes" contained in paragraph number 1 of said Deed includes the creation, use and maintenance of a

---

[6] The Wahbas did not fully understand what function the Trust for Public Lands served, but believed it to be a charitable organization which worked toward preserving land for the public. They now understand that the Trust for Public Lands was paid a large commission for brokering a deal between the YMCA and the United States, but that fact was not disclosed to the Wahbas at the time.

wildlife refuge and related facilities and/or open space administered by a governmental agency;

2. Agree that any restrictions in paragraph number 4 of said Deed on cutting and clearing of trees and shrubs shall not prevent cutting and clearing to promote migratory bird nesting and breeding habitat;

3. Agree that all other provisions of the Agreement shall be interpreted in a manner consistent with the permitted use of the island as a wildlife refuge and/or open space.

The document does not address, and does not purport to affect, the deed restrictions dealing with the Wahbas' view from their property – i.e., the deed's prohibitions on construction on the northwest portion of the Island or limitations on the height of construction elsewhere on the Island.[7]

It was the Wahbas' understanding that by signing the document, the YMCA would be better able to sell the Island for use as a wildlife conservancy. At no time did they understand that by signing the document, they were giving up any of their rights with respect to the deed restrictions, other than permitting use of the Island as a wild-life conservancy. The Wahbas believed that they were, in fact, furthering the goals of the original Grantors that the Island remain pristine and without buildings on it.

The Wahbas were not told when they were asked to sign the document that the federal government was contemplating condemning the Island and that, should the government do so, the Wahba would lose all of their rights to enforce the deed restrictions, including their right to

---

[7] Indeed, on November 1, 2001, when Ms. Hess and Mr. Reynolds arrived at her home to receive the signed document, Mrs. Wahba specifically made clear her interest in preserving her view of the Sound and the Island. Mrs. Wahba took Ms. Hess and Mr. Reynolds outdoors so that they could view for themselves the beautiful panorama she wished to preserve. S.Wahba Aff. at [S.Wahba Aff. at ¶ 9].

seek to protect their view from prohibited construction. They did not intend to give up any such rights. [S.Wahba Aff. at ¶¶ 11-12; M.Wahba Aff. at ¶ 11].

> 2. If, by Signing the Document, the Wahbas Waived Certain Covenants, They Retained an Interest in Those Relevant to View.

By signing the "Agreement," the Wahbas approved the use of the Island for a wildlife refuge and for the nesting and breeding of migratory birds. If the Agreement is deemed to constitute a waiver of any of the Wahbas' rights, the waiver is limited to the deed requirements that the Island be used only for residential purposes once it left the hands of the YMCA, and that no trees or shrubs be cut.

If, instead of condemnation, the Island had been sold to a private developer and the developer commenced construction on the northwest side of the Island, Mrs. Wahba would plainly have had the right, notwithstanding the "Agreement," to seek an injunction in court. There is no doubt that she would have pursued this legal remedy. The "Agreement" does not implicate those covenants which restrict the types of buildings on the Island, should it be sold for residential purposes, or those that prohibit all building on the northwest side of the Island.

The law is clear that a waiver or release of one or some of the restrictive covenants does not thereby constitute a waiver or release of all of them. Hackett v. Roosevelt School, 145 Conn. 119, 123 (1958) (waiver of one deed restriction does not waive other deed restrictions); Aniello v. Fish, 1998 WL 795121 at *5 (Conn. Sup. Ct. 1998); 9 R. Powell, Real Property (2005 rev.) §60-10[1], pp. 60-125 and 60-126.

"Persons entitled to the benefit of building restrictions may enforce one or more of them without enforcing others, especially where ... [previous] violations [of the covenants] were trivial

or remote from the plaintiff's land or differed widely in character from the violations sought to be restrained." 20 Am.Jur.2d, Covenants etc. §251, p. 674. Thus, where a breach of a restrictive covenant "result[s] in genuine damage to the plaintiff's interests," prior acquiescence in other violations does not preclude enforcement of the offending covenant. 9 R. Powell, Real Property (2005 rev.) §60-10[1], pp. 60-125 and 60-126. See Hackett, supra, and Aniello, supra.

What the Wahbas thought they were signing, and what the document reflects, is their approval that the Island could be used as a wildlife refuge or open space and to permit the cutting of trees and shrubs to promote migratory bird nesting and breeding. This is consistent with their desire that no building occur on the Island and that the Island be retained in its natural state.

### 3. The "Agreement" Is Not Legally Binding Because the Wahbas Received No Consideration for Signing the Document.

Mrs. Wahba further disputes that the "Agreement" is legally binding on her because she received no consideration for signing it. Had the government not condemned the property, and, instead, purchased the Island with the restrictive covenants in place and maintained the Island as a wild-life refuge, plaintiff could argue that the preservation of the Island as a wildlife refuge (instead of a residential development) constituted a benefit to the Wahbas.

Any consideration to the Wahbas was undercut and destroyed when the government, with the blessing of the YMCA and the Trust for Public Land, condemned the Island and extinguished all of the use restrictions that benefitted Mrs. Wahba. The plaintiff is not constrained from selling the Island, or from using it for purposes other than a wildlife refuge. Nor is the plaintiff obligated to take into consideration Mrs. Wahba's view in making decisions about construction on the Island.

An agreement that is not supported by valid consideration is unenforceable and void, even if the agreement states therein that consideration was tendered. TIE Communications, Inc. v. Kopp, 218 Conn. 281, 291-92 (1991). Since there was failure of consideration, the Claimant is not bound by the "Agreement." Id.

## CONCLUSION

For the reasons discussed above, Claimant, Susanne P. Wahba, submits that she is entitled to be compensated for the taking by the plaintiff United States of her property interests in the deed restrictions on use of Calf Island.

CLAIMANT SUSANNE P. WAHBA,

BY: _____
DAVID S. GOLUB ct00145
MARILYN J. RAMOS ct11433
SILVER, GOLUB & TEITELL LLP
184 ATLANTIC STREET
P. O. BOX 389
STAMFORD, CT 06905
203-325-4491

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, postage prepaid, this 23rd day of December, 2005 to:

Philip H. Bartels, Esq.
John C. Fusco, Esq.
Shipman & Goodwin
289 Greenwich Avenue
Greenwich, CT 06830

John B. Hughes, Esq.
U.S. Attorney's Office
157 Church Street, 23rd Floor
P.O. Box 1824
New Haven, CT 06510

John V. A. Murray, Esq.
Diserio, Martin, O'Connor & Castiglioni
One Atlantic Street, Suite 500
Stamford, CT 06901

Mary Sommer, Esq.
Sandak Hennessey & Greco
707 Summer Street
Stamford, CT 06901-1026

_____
MARILYN J. RAMOS ct11433