UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

FILED

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | 2005 DEC 27  A 9: 19 |
| Plaintiff, | : | |
| | : | **CV** U.S. DISTRICT COURT |
| v. | : | CASE NO.  3:02-~~CR~~-00462 (AHN) |
| | : | |
| 28.8 ACRES OF LAND, ET AL., | : | |
| | : | |
| Defendants. | : | DECEMBER 23, 2005 |

AFFIDAVIT OF MAHMOUD A. WAHBA

County of Fairfield     )
                                  ) ss:  Stamford
State of Connecticut   )

I, Mahmoud A. Wahba, of Greenwich, Connecticut, being duly sworn, do depose and

state:

1.      I am over 18 years of age and understand the meaning of the oath.

2.      I submit this Affidavit in support of the Motion for Award of Compensation

which is being filed by my wife, Susanne P. Wahba, in the above-entitled action.  The statements

I make herein are based on my personal knowledge.

3.      I presently reside at 111 Byram Shore Road in Greenwich, Connecticut (the

"property").  I purchased the property on April 2, 1975 from Monica Smith and later transferred

the property to my wife.  [Deeds establishing chain of title from Monica A. Smith to Susanne P.

Wahba are attached as Exhibit A1-A7].  In October 2001, I was a 50% owner of the property and

my wife owned the other 50%.  [See Deed dated July 14, 1976, Exh. A2].  Susanne P. Wahba is

now the sole owner of the property.

4.      The property is located on Long Island Sound and has a panoramic view of the Sound and a chain of islands, including Calf Island which directly faces the property.  My wife and I fell in love with the view and it was the reason we wanted to purchase the property. [Photographs of views of the Island from the property are attached as Exhibit B].

5.      During the negotiations leading up to the purchase of the property, I was told by George Smith, husband of Monica Smith, that the Island had been owned by the same person from whom he and his wife originally took the property (Ms. Teagle), and that Ms. Teagle had covenants placed on the YMCA's deed that protected the view of the Island.  The fact that there were protective covenants on the Island was taken into consideration in valuing the property and was a determining factor in my wife's and my decision to purchase the land.  The house that we built on the property was designed to maximize the water view, and includes a glass wall the entire height of the house on the side facing the water.

6.      At no time have I ever agreed to give up the protections in the YMCA's deed against construction on the Island that would affect our property's sight line.

7.      At some time prior to October 2001, the YMCA publicly indicated it was considering selling the Island.  There were many rumors about what could happen to the Island, including such things as the construction of a casino and a boat dock for ferries to New York.

8.      In 2001, my wife was contacted by Marilyn Hess to discuss preserving the Island for environmental purposes.  At some point, I became aware that Ms. Hess was working with an entity known as the Trust for Public Land to try to arrange to have the Island placed in conservancy for the public.  I did not know that Ms. Hess was a member of the YMCA Board of Directors, nor was I provided that information, and I was never told that the Trust for Public Land was to receive money for brokering a deal for the YMCA.  I believed that Ms. Hess and the

Trust for Public Land were environmentalists working to help preserve the Island in its natural state. Had I known that Ms. Hess or the Trust for Public Land had a financial interest in the transfer of the YMCA, I would not have signed the document.

9.      During the fall of 2001, my wife and I were asked to sign a document, entitled "Agreement," that Marilyn Hess told us would help preserve the Island in its natural state. We were told that the only purpose in asking for our signatures was to enable the YMCA to sell the Island for use as a wildlife conservancy. My wife and I agreed to sign the document, and did so on October 2, 2001. At the time I signed the document, I was not told that the Island might be transferred to the federal government through condemnation proceedings and that such a condemnation would have the effect of extinguishing the deed restrictions on use of the Island. Had I been told those things, I would not have signed the document. My wife and I did not receive any remuneration in exchange for signing the document.

10.      At no time was I told, nor did I understand, that by signing the document, I was in any way waiving or agreeing to give up any of the protections my wife and I had with respect to maintaining our property's sight line. Indeed, to the contrary, the whole basis on which we were asked to sign the document was that the deed restrictions were valid and that my wife's and my signature were needed because the deed restrictions might be interpreted to preclude the Island's use as a wildlife refuge, thus impeding transfer to the conservancy.

11.      I would not have signed the document had I been told that it would be argued that the document constituted an abandonment or waiver of all of our rights under the existing deed restrictions, and I do not believe that the document constitutes such a waiver. In signing the document, I did not intend to alter or limit in any way any of the rights my wife and I possessed to enforce the deed restrictions on the location or size of any construction on the Island, including

restrictions on construction on the northwest portion of the Island (or height restrictions on other

portions of the Island), necessary to preserve our view.

_____
MAHMOUD A. WAHBA

Subscribed and sworn before me this 23rd day of December, 2005.

_____
NOTARY PUBLIC

ELIZABETH A. REIS
A NOTARY PUBLIC OF CONNECTICUT
MY COMMISSION EXPIRES MARCH 31, 2010

## CERTIFICATION

This is to certify that a copy of the foregoing is being mailed, postage prepaid, this

23rd day of December, 2005 to:

Philip H. Bartels, Esq.
John C. Fusco, Esq.
Shipman & Goodwin
289 Greenwich Avenue
Greenwich, CT 06830

John B. Hughes, Esq.
U.S. Attorney's Office
157 Church Street, 23rd Floor
P.O. Box 1824
New Haven, CT 06510

John V. A. Murray, Esq.
Diserio, Martin, O'Connor & Castiglioni
One Atlantic Street, Suite 500
Stamford, CT 06901

Mary Sommer, Esq.
Sandak Hennessey & Greco
707 Summer Street
Stamford, CT 06901-1026

MARILYN J. RAMOS ct11433