UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(at Bridgeport)

| | | |
|---|---|---|
| THE CALF ISLAND COMMUNITY<br>TRUST, INC., and MARLYN TSAI<br><br>v.<br><br>YOUNG MEN'S CHRISTIAN ASSOCIATION<br>OF GREENWICH, a/k/a, YMCA OF GREENWICH,<br>THE TRUST FOR PUBLIC LAND, d/b/a,<br>THE TRUST FOR PUBLIC LAND (INC.) | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 3-02-CV-462 (AHN) |
| UNITED STATES OF AMERICA<br><br>v.<br><br>28.8 ACRES OF LAND, MORE OR LESS,<br>LOCATED OFF THE COAST OF GREENWICH,<br>SITUATED IN THE COUNTY OF FAIRFIELD,<br>STATE OF CONNECTICUT, YOUNG MEN'S<br>CHRISTIAN ASSOCIATION OF GREENWICH,<br>CONNECTICUT (YMCA), AND UNKNOWN<br>OWNERS, ET AL. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CIVIL NO. 3-03-CV-275 (AHN)<br><br><br><br><br><br><br><br><br>January 30, 2006 |

## THE YMCA'S MEMORANDUM IN
## OPPOSITION TO THE MOTION BY SUSANNE P. WAHBA

*Subject Motion:*   Mrs. Wahba's Motion for Award of Compensation, dated 12/23/05

---

In connection with the above–referenced 12/23/05 Motion, the **Young Men's Christian Association of Greenwich, Connecticut** (the "YMCA") hereby respectfully files this Memorandum in Opposition, as follows:

Case 3:02-cv-00462-AHN    Document 92    Filed 01/31/2006    Page 2 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (*Member Case*)
(United States District Court, at Bridgeport, CT)

•*Opposition Memorandum by the YMCA*

1. **Four of the Core Interpretive Principles in the Connecticut Common Law regarding Restrictive Covenants.**

    (a)    First, a real estate restrictive covenant (a "R/C") constitutes a restraint against the free and unrestricted alienation of property. Thus, Connecticut has a "strong public policy against restrictions on the free alienability of property", which is based on "'[t]he rule against direct restraints on alienation [that] is an old one, going back to the fifteenth century or perhaps even earlier'". Gangemi v. Zoning Board of Appeals, 255 Conn. 143, 150-51, 763 A.2d 1011, 1015 (2001) (Cit. omitted).

    (b)    Second: "A restrictive covenant must be narrowly construed". Morgenbesser v. Aquarion Water Co., 276 Conn. 825, 829, ___ A.2d ___ (2006) (Cit. and Internal Quotation Marks omitted). *Accord*: Saphir v. Neustadt, 177 Conn. 191, 204, 413 A.2d 843, 851 (1979) (Cits. omitted).

    (c)    Third, "if the covenant's language is ambiguous, it will be construed against rather than in favor of the covenant". Morgenbesser, 276 Conn. at 829, ___ A.2d at ___ (Cit. and Internal Quotation Marks omitted). *Accord*: Hooker v. Alexander, 129 Conn. 433, 436, 29 A.2d 308, 310 (1942) (Cits. omitted); 5011 Community Organization v. Harris, 16 Conn. App. 537, 541, 548 A.2d 9, 11 (1988).

    (d)    Fourth, and finally, an R/C "ought not to be extended by implication". Morgenbesser, 276 Conn. at 829, ___ A.2d at ___ (Cit. and Internal Quotation Marks omitted). *Accord*: Hooker, 129 Conn. at 436, 29 A.2d at 310. As stated in more detail in Pulver v. Mascolo, 155 Conn. 644, 649, 237 A.2d 97, 99 (1967): "Restrictive covenants, being in derogation of the common-law right to use land for all lawful purposes which go with title and possession, are not to be extended by implication …[because of] the rule of

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 3 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Opposition Memorandum by
the YMCA

strict construction against a restraint on the free use of land". (Cits. and Internal Quotation Marks omitted).

2. **The 6/21/55 Deed's Restrictive Covenants and its Reservation Clause**.

(a) **The 6/21/55 Deed**. At issue in connection with the 12/23/05 Motion is the effect of a certain restrictive covenants reservation clause in a 1955 deed, which is Paragraph 5 (the "6/21/55 Reservation Clause") of the 6/21/55 Quitclaim Deed (the "6/21/55 Deed") from Rowena Lee Teagle ("Teagle") and three other grantors (the four grantors are collectively, the "6/21/55 Grantors"). (The 6/21/55 Deed is YMCA Exhibit "L", attached hereto.) It was pursuant to the 6/21/55 Deed that Calves Island (the "Island") was conveyed to the YMCA; and, with regard to the various R/Cs in Paragraphs 1-4 of the 6/21/55 Deed (the "6/21/55 R/Cs"), and although not directly pertinent herein, this Court has previously decided in its 1/26/05 Ruling herein, 392 F.Supp. 2d 241, 253 (D.Conn. 2005), the now–prior issue regarding the meaning and import of the "residential purposes" R/C in Paragraph 1 of the 6/21/55 Deed (*viz.*, "that the above–described land shall never be used for any purpose other than residential purposes").

(b) **The two separate subclauses in the 6/21/55 Reservation Clause**. The 6/21/55 Reservation Clause is stated in its entirety as follows:

> 5. That the foregoing covenants *shall* be deemed and construed as real covenants running with the land     **and** *shall* inure to the benefit of other lands of the Releasors. (*Space and Emphasis added*).

As can be seen, there are two distinct subclauses to the 6/21/55 Reservation Clause (as noted above), which subclauses: (i) are physically separated by the conjunctive "and"; (ii) are grammatically separated by the purposefully multiple use of the verb "shall"; and (iii) most importantly, are substantively separated by the different subject matters stated in each

- 3 -

Case 3:02-cv-00462-AHN    Document 92    Filed 01/31/2006    Page 4 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)                              •Opposition Memorandum by
                                                                                the YMCA

subclause. More particularly, the 6/21/55 Reservation Clause has the two customary parts of a R/C reservation clause, as follows: (i) the "Running with the Land" Subclause; and (ii) the Benefited Parties Subclause (*i.e.*: are the R/Cs to the benefit of, and thus can be enforced only by, the initial grantors of the deed; or, are they also to the benefit of, and can be enforced by, the heirs and assigns of the initial grantors?).

(i) **The 6/21/55 First Subclause**. The first subclause of the 6/21/55 Reservation Clause (the "6/21/55 First Subclause")—"That the foregoing covenants shall be deemed and construed as real covenants running with the land"—is unusual because it contains only the first of the two parts of a typical "running with the land" reservation subclause, which two parts are often stated as follows: "the covenants herein **[i]** shall run with the land and **[ii]** shall be binding upon the grantee, and his heirs and assigns [or, in the event the grantee is an entity: ...and shall be binding upon the grantee, and its successors and assigns]". Another illustration of the two parts of the typical language employed in a "running with the land" R/C reservation subclause, which is to ensure that the R/Cs will be binding upon the successive owners of a burdened parcel (or, the "servient estate"), and not just the R/C deed's initial grantee, was in Castonguay v. Plourde, 46 Conn. App. 251, 699 A.2d 226, *cert. den.* 243 Conn. 931, 701 A.2d 660 (1997). Therein, the language in the running with the land reservation subclause was the following: "Lornik [Inc.–the grantor] does declare that the property ... is held and shall be conveyed subject to the restrictions and covenants hereafter set forth and which *shall run with the land* and be binding upon the said Lornik, Inc., its *successors and assigns* [*i.e.*, binding upon the purchasers from the subdivider/developer, Lornik, Inc., and binding upon such purchasers' heirs and assigns]". *Id.*, 46 Conn. App. at 258 n.5, 699 A.2d at 232 n. 5 (Emphasis and Ellipses in the original; Underscoring added; Internal Quotation Marks omitted).

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 5 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Opposition Memorandum by
the YMCA

As a result of the completeness of said language in the Lornik reservation subclause, the Appellate Court held, 46 Conn. App. at 258, 699 A.2d at 232, that the subject R/Cs were binding upon the successive owners of the burdened land. As a final example, and one that is in Mrs. Wahba's own Chain of Title, is the George P. Smith 11/25/69 Deed (YMCA Exhibit "C"), at p. 1, in which there is a correctly and fully–stated R/C reservation clause, as follows: "Said [easement] right shall run with the land hereby conveyed and be binding upon the Releasee, her heirs, executors, administrators, and assign forever". In sharp contrast herein, because the 6/21/55 First Subclause only contains the solitary phrase "runs with the land", without more, its meaning is simply that the restrictions in Paragraphs 1-4 of the 6/21/55 Deed are real property restrictions but lacking in any temporal framework or any other framework. (The ramifications arising from the failure to include the second part of the standard running with the land reservation subclause in the 6/21/55 Reservation Clause, *e.g.*, "and shall be binding upon the grantee, and his heirs and assigns", which in turn causes the 6/21/55 R/Cs to be personal covenants only for the benefit of the 6/21/55 Grantors, are discussed below in Paragraph 4.)

    (ii) **The 6/21/55 Second Subclause**. In contrast to the 6/21/55 First Subclause, the second subclause of the 6/21/55 Reservation Clause (the "6/21/55 Second Subclause")—"and shall inure to the benefit of other lands of the Releasors"— identifies the benefited parties who can thus enforce the 6/21/55 R/Cs, which benefited parties (as discussed in Paragraph 4 below) are only the 6/21/55 Grantors themselves.

  3. **Easements in Gross are to be distinguished from Easements Appurtenant**.

    (a) **An R/C is an Easement**. First, as confirmed in 25 Am. Jur. 2d, Easements and Licenses, §§4 and 6, pp. 500 and 503 (2004), a restrictive covenant with

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 6 of 20

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*
*(United States District Court, at Bridgeport, CT)*

•*Opposition Memorandum by the YMCA*

regard to land use constitutes an easement. Thus, the Connecticut common law with respect to easements is applicable to interpreting the 6/21/55 R/Cs and the 6/21/55 Reservation Clause.

    (b)    **The two types of Easements**. As confirmed in Stiefel v. Lindemann, 33 Conn. App. 799, 805 n.4, 638 A.2d 642, 647 n.4, *cert. den.* 229 Conn. 914, 642 A.2d 1211 (1994):

> An easement in gross belongs to the owner of it apart from his ownership or possession of any specific land and, in contrast to an easement appurtenant, its ownership is personal to its owners. (Cit. and Internal Quotation Marks omitted).

An easement appurtenant, on the other hand, is in perpetuity against the servient estate not only for the benefit of the grantor who created the R/C but importantly also for his successor owners of the benefited property (or, the "dominant" estate). *Id.,* 33 Conn. App. at 805 n.4 and 807, 638 A.2d at 647 n.4 and 648.

    (c)    **The Test to determine the type of Easement**. As crisply stated: "The question of whether an easement is appurtenant or in gross is resolved by ascertaining the intent of the parties as expressed in the deed". *Ibid.* (Cits. omitted).

    (d)    **The two Presumptions**.

        (i)    **An Easement Appurtenant**. A presumption of an easement appurtenant is created when "words of succession" regarding the grantee (*i.e.*: the grantee, *and* his heirs and assigns—Emphasis supplied) are expressly stated in the easement document's *reservation* clause; and a rebuttable presumption is then created that the parties intended the restrictive covenant to be a permanent easement binding upon the servient estate, and correlatively for the permanent benefit of the dominant estate. *See* Kelly v. Ivler,

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 7 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)                    •Opposition Memorandum by
(United States District Court, at Bridgeport, CT)              the YMCA

187 Conn. 31, 39–40, 450 A.2d 817, 821 (1982) (Cits. omitted); Castonguay, 46 Conn. App. at 258, 699 A.2d at 232.

      (ii)  **An Easement in Gross**.  In contrast to an easement appurtenant, the converse presumption is that if the easement document's *reservation* clause does not include words of succession (or as alternatively stated, words of "inheritance") with respect to the grantee, *i.e.*, there is no mention of the grantee's "heirs and assigns", a rebuttable presumption is then created that the easement is in gross and thus is only to the personal benefit of (and therefore enforceable only by) the grantor.  *See, e.g.*, Stiefel, 33 Conn. App. at 806, 638 A.2d at 647.  Moreover, with regard to the other time–honored "expressions of an intent to create an easement appurtenant", which are the use in the reservation clause of the terms "appurtenant" and "runs with the land", the absence of such terms in the reservation clause, coupled with the lack of words of the grantee's inheritance in the reservation clause, confirms that it is an easement in gross.  *Id.*, 33 Conn. App. at 807, 638 A.2d at 648.  This result is further confirmed by the doctrine of the narrow construction to be made of R/Cs, *See, e.g.*, Morgenbesser, 276 Conn. at 829, ___ A.2d at ___, so as not to encumber property in perpetuity with an undue restraint on alienation, *See, e.g.*, Gangemi, 255 Conn. at 150-51, 763 A.2d at 1015.

    4.  **The application herein of the decision in *Stiefel*: the 6/21/55 R/Cs are only easements in gross and thus personal to the benefit only of the 6/21/55 Grantors.**

      (a)  **The *Stiefel* Deed's Reservation Clause that created an Easement in Gross**.  Because the reservation clause in the driveway easement in the 1982 Otto–Coyne Deed in Stiefel, 33 Conn. App. at 807, 638 A.2d at 648, did not use the terms, "heirs and assigns" with regard to the R/C's grantee, thus, the Appellate Court held that the easement was "presumed to be in gross".  Once the In Gross Presumption had been triggered therein,

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 8 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Opposition Memorandum by
the YMCA

the Appellate Court's focus then shifted to its review of two sets of rebuttal factors (the "Two Reviews"), in order to determine whether or not the Presumption had been rebutted, as follows: (i) <u>the First Review</u>: of the reservation clause's language regarding the presence of any other formulaic terms which could denote an easement appurtenant; and (ii) <u>the Second Review</u>: of the relevant "surrounding circumstances". *Id.*, 33 Conn. App. at 807-09, 638 A.2d at 648-49. With regard to the First Review, the Appellate Court found that the In Gross Presumption was not rebutted, but instead, was reinforced by its further review of the language of the reservation clause, as follows: (i) the 1982 Deed lacked the terms "appurtenant" and "runs with the land" in its reservation clause; and (ii) the reservation clause "used language indicating that the easement was personal" because the easement was reserved only for the "grantors *herein* (emphasis added [by the Appellate Court]), which indicates that the reservation was in favor [only] of the particular grantors of the conveyance". 33 Conn. App. at 807-08, 638 A.2d at 648 (Cit. and Footnote omitted).

With regard to the Second Review in <u>Stiefel</u>, in connection with surrounding circumstances that could have rebutted the In Gross Presumption, the Appellate Court found that while the easement did have value to the (grantor's) estate to be benefited at the time of the reservation, it was only a "limited value". *Id.*, 33 Conn. App. at 808-09, 638 A.2d at 648. In addition, a second surrounding circumstance that also could have rebutted the In Gross Presumption was whether the owner of the burdened property (*i.e.*, the servient estate) ever "recognized that the *subsequent* owners of the estate to be benefited [*i.e.*, the dominant estate] would have the right to exercise the easement", of which factor the Appellate Court found there was "no evidence". *Id.*, 33 Conn. App. at 809, 638 A.2d at 648-49 (Emphasis in the original; Cit. omitted). Thus, the Appellate Court concluded, 33 Conn. App. at 809, 638 A.2d at 649:

Case 3:02-cv-00462-AHN    Document 92    Filed 01/31/2006    Page 9 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (*Member Case*)
(United States District Court, at Bridgeport, CT)                    •*Opposition Memorandum by the YMCA*

> After reviewing the relevant [surrounding circumstances] factors, we conclude that the presumption that the reservation creating an easement without mention of heirs and assigns was intended to be in gross has *not* been rebutted. A presumption is equivalent to prima facie proof of its validity. Because the presumption was not rebutted, we hold that the defendants do not have an easement over the plaintiff Grossman's land. (Cit. omitted; Emphasis supplied).

(b) **_Similarly_ herein: the set of 6/21/55 R/Cs constitute only an Easement in Gross**. In an overview, the language of the 6/21/55 Reservation Clause is almost exactly the same as the language in the *Stiefel* easement's reservation clause that was held to create only an easement in gross because herein there is a total absence of any words of the grantee's succession in the language of the 6/21/55 Reservation Clause, which absence in turn triggers the In Gross Presumption herein. (While there are words in another portion of the 6/21/55 Deed regarding the grantee's succession, for example, in the introductory clause to the 6/21/55 R/Cs, 6/21/55 Deed, p. 2, nonetheless, the case law requires that the words of the grantee's succession be a part of the easement document's reservation clause, which herein is 6/21/55 Deed Paragraph 5 and not said introductory clause.) Because the In Gross Presumption has been triggered herein as a result of the omission of any grantee succession language in the 6/21/55 Reservation Clause, the focus then shifts to whether or not the Presumption has been negated by any of the *Stiefel* rebuttal factors, as follows:

(i) **The First *Stiefel* Review Re: the other language of 6/21/55 Reservation Clause**. In connection with the first of the Two Reviews herein, the In Gross Presumption has not been rebutted, but instead as in Stiefel, it is in fact reinforced for three reasons by a careful review of the other language of the 6/21/55 Reservation Clause. First, it is undeniable that the 6/21/55 Second Clause's use of the vague term, "the *other* lands of the Releasors [*i.e.*, the 6/21/55 Grantors]" (Emphasis supplied) to identify the dominant estates,

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 10 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Opposition Memorandum by
the YMCA

is ambiguous as follows: (i) are said words a reference only to unspecified properties of the 6/21/55 Grantors in Greenwich; or (ii) is it a reference to the various and unspecified properties of the 6/21/55 Grantors wherever located? As a result, said ambiguity is subject to the previously-cited interpretive principle in Morgenbesser, 276 Conn. at 829, ___ A.2d at ___: "If the covenant's language is ambiguous, it will be construed against rather than in favor of the covenant". (Cit. and Internal Quotation Marks omitted). Because it is wholly uncertain as to what exactly are the dominant estates herein, viz., the "other lands", thus, there is no dominant estate in connection with the 6/21/55 R/Cs. Accordingly, the 6/21/55 R/Cs can only be easements in gross for the personal benefit of the 6/21/55 Grantors and not easements appurtenant to their shoreline properties (or to any of their other properties), particularly in view of the "strong public policy against restrictions on the free alienability of property", Cangemi, 255 Conn. at 150-51, 763 A.2d at 1015.

The second and third reasons that the In Gross Presumption has not been rebutted by a review of the other language of the 6/21/55 Reservation Clause are, as follows: (i) the absence in the 6/21/55 Reservation Clause of the formulaic term, "appurtenant"; and (ii) the fact that the 6/21/55 Reservation Clause uses only the term "Releasors" without any words of the grantors' succession, which is the functional equivalent of the *Stiefel* Deed's use only of the "grantors herein" language (without more) in its reservation clause that was a surrounding circumstance which had confirmed the "easement was personal", Stiefel, 33 Conn. App. at 807, 638 A.2d at 648. However, it is true that the 6/21/55 First Subclause does include the first half of a "running with the land" reservation subclause. Nonetheless, the 6/21/55 Grantors well knew how to use words of grantee succession in their 6/21/55 Deed, as follows: (i) elsewhere in the 6/21/55 Deed, they referred three times to the YMCA as the "Releasee, its successors and assigns", but not once in the 6/21/55 First Subclause; and (ii)

- 10 -

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 11 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (*Member Case*)
(United States District Court, at Bridgeport, CT)
•*Opposition Memorandum by the YMCA*

they even referred to the YMCA's successors by merger seven times, but used no words of any type of grantee succession in the 6/21/55 First Subclause. Thus, total absence in the 6/21/55 Reservation Clause of any words regarding the grantee or regarding the grantee's "succession" (*i.e.*, the second part) of the running with the land reservation subclause (*i.e.*: and shall be binding upon the grantee, and its successors and assigns), when the 6/21/55 Grantors at the same time had effortlessly used words regarding the grantee and the grantee's succession ten times elsewhere in the 6/21/55 Deed, but not once in 6/21/55 Reservation Clause, can only be viewed as having been an intentional omission on the part of the 6/21/55 Grantors.

Similarly, in order to ensure that the 6/21/55 R/Cs were an appurtenant interest to the ownership by the successive owners of the shorefront properties of the 6/21/55 Grantors, the 6/21/55 Grantors could have easily inserted the various well-known and standardly-used terms of an easement appurtenant into the 6/21/55 Second Subclause (*i.e.*: the grantors, and their heirs and assigns; and appurtenant), for example: "and *the foregoing restrictive covenants* shall inure to the benefit of *the Releasors, and their heirs and assigns, and shall be appurtenant to the* other lands of the Releasors *on Byram Shore Road and Harbor Drive in Greenwich*". (Emphasis supplied with regard to the language added to the 6/21/55 Second Subclause). They did not, even though they had elsewhere used words of the 6/21/55 Grantors' succession, *viz.*, in the introductory clause near the top of Page 2 of the 6/21/55 Deed.

As a result of the foregoing failures to insert such standard language of an easement appurtenant into the 6/21/55 Reservation Clause, the decision in <u>Southbury Land Trust, Inc. v. Andricovich</u>, 59 Conn. App. 785, 757 A.2d 1263 (2000), is directly applicable herein. In said case, at issue was the interpretation of an R/C in a conservation easement document. In

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 12 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Opposition Memorandum by
the YMCA

ruling against the interpretation urged by the appellant therein of having certain words judicially read into the R/C, the Appellate Court observed, 59 Conn. App. at 790, 757 A.2d at 1266:

> We find further support for our conclusion in the absence of certain language from the easement. If the drafters had intended to restrict new construction such that any new dwelling unit would have to be built as part of an already existing structure, they easily could have accomplished this by adding certain language to the restriction. For instance, the exception in §2(c) **could have stated** that the additional dwelling unit for one family be "in an *existing* dwelling or another *existing* building." The language chosen by the drafters, however, does **not** require that any new dwelling unit be built as part of an existing building. On the basis of the language chosen by the drafters, we conclude that the drafters' intent was to allow the construction of a detached dwelling. (Bold type added; Italics in the original).

See also Katsoff v. Lucertini, 141 Conn. 74, 78, 103 A.2d 812, 814 (1954) ("[I]f the parties to the covenant had intended to debar the possibility of the erection of a structure of any character on the one-story building, it would have been relatively simple to find appropriate and meaningful language to express their purpose"). Fatally, because the 6/21/55 Grantors did not insert the formulaic language into the 6/21/55 Reservation Clause which they could so easily have done, thus, the R/C principle of strict construction, See, e.g., Pulver, 155 Conn. at 649, 237 A. 2d at 99, now precludes any possible result that the 6/21/55 R/Cs would be easements appurtenant accruing to the benefit of any of the successors-in-title to the 6/21/55 Grantors, including Mrs. Wahba.

    (ii)    **The Second *Stiefel* Review Re: the Surrounding Circumstances**. In connection with the Second Review, the *Stiefel* result also applies herein as a result of an analysis of the following surrounding circumstances that were identified as rebuttal factors in *Stiefel* that could negate the In Gross Presumption. First, with regard to the value that may accrue herein to the purportedly dominant estates as a result of the 6/21/55

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 13 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Opposition Memorandum by
the YMCA

R/Cs, while the "residential purposes" R/C in Paragraph 1 of the 6/21/55 Deed and the other 6/21/55 R/Cs in the 6/21/55 Deed (at Paragraphs 2-4 thereof) would presumably lend a "panoramic view" value to the 6/21/55 Grantors' properties along the shore, nonetheless, because the Island is more than a half mile from the Wahba Lot at 111 Byram Shore Road (*See* the 10/1/04 Town Geographic Information System Maps, with certain identification notes thereon—the "10/1/04 GIS Maps"—, at p.1, Re: the 2,880 feet, or more than a half mile, of intervening distance between the Island and the Wahba Lot—YMCA Exhibit "Q", p. 1), thus, the 6/21/55 R/Cs would obviously be, similar to the easement in <u>Stiefel</u>, of "limited value", 33 Conn. App. at 808-09, 638 A.2d at 648, to the Wahba Lot.  (Moreover, the other shoreline lots of the 6/21/55 Grantors are likewise more than a half mile distant from the Island—*See* YMCA Exhibit "Q", at pp. 1 and 3.)  Instead, the island that truly impacts the Wahba Lot's panoramic view is Shell Island, which is only 1,417 feet in distance from the Wahba Lot (*See* the GIS Map, at YMCA Exhibit "Q", p. 1), and thus is less than half the 2,880 foot distance from the Wahba Lot to Calves Island.  Furthermore, this conclusion about the "limited value" of the 6/21/55 R/Cs is reinforced by Mrs. Wahba's only 12/23/05 picture (in Exhibit "B" to the Wahba's 12/23/05 Affidavit) that was not taken with a zoom lens (<u>viz.</u>, the picture that was taken while standing on the dock), which shows (Calves) Island in the far distance, but which more importantly shows Shell Island in the foreground in front of the Wahba Lot; and therefore, it is Shell Island that is obviously significantly more important to the Wahba Lot's panoramic view.

    With regard to the second <u>Stiefel</u> surrounding circumstance, there is no evidence whatsoever herein (and not even in any of the total of 26 paragraphs in the two Wahba 12/23/05 Affidavits) that, at any time during the YMCA's 48 years of ownership of the Island (1955-2003), the YMCA ever recognized that the 6/21/55 Grantors or any successor

- 13 -

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 14 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (*Member Case*)
(United States District Court, at Bridgeport, CT)

•*Opposition Memorandum by the YMCA*

owner to any of the 6/21/55 Grantors' shoreline properties had any right to exercise any of the 6/21/55 R/Cs. Therefore, as in Stiefel, 33 Conn. App. at 809, 638 A.2d at 648-49, the In Gross Presumption has not been rebutted by said factor.

    (iii) **Similarly, other customary In Gross rebuttal surrounding circumstances, from *Kelly v. Ivler* and which would be relevant herein, have not been met**. The In Gross Presumption herein has not been negated by other customary surrounding circumstances rebuttal factors that were applied in Kelly, *supra*. Therein, although the In Gross Presumption had been triggered because the 1953 deed's reservation clause lacked the words of the grantee's succession, nevertheless, the Supreme Court had found that the Presumption had been rebutted by certain surrounding circumstances. *Id.*, 187 Conn. at 40, 450 A.2d at 821. Therein, there were three prominent surrounding circumstances, each of which importantly is not present herein. First, the subject right of way easement in Kelly was essential to the use of the two benefited lots therein because the lots otherwise had "no direct access to Long Island Sound without the easement", 187 Conn. at 43, 450 A.2d at 822; but herein, in contrast, the Wahbas do not contend, nor would it be credible for them to contend, that the 6/21/55 R/Cs are essential to the use of their property. A second surrounding circumstance in Kelly, similar to one in Steifel, was the rebutting factor that, in a recognition of the rights of the dominant estates, the servient estates' predecessors in title for 19 consecutive years (and with only two interruptions) had not prevented the dominant estates' use of the easement, *Id.*, 187 Conn. at 43-44, 450 A.2d at 822-23; but herein, in contrast, there is no evidence (as discussed in the paragraph next above) of any such recognition by the YMCA of any rights of the alleged dominant estates at any time during the YMCA's 48 years of ownership.

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 15 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Opposition Memorandum by
the YMCA

The third (and particularly important herein) surrounding circumstance in Kelly was the fact that a successor owner of one of the two dominant estates had testified at trial that the easement had such value to his lot that he would not have purchased the property if he did not have the subject easement for his lot's appurtenant benefit. *Id.*, 187 Conn. at 43, 450 A.2d at 822. Herein, with regard to said third factor, in the sharpest of contrasts to Kelly, *supra,* and negating Mrs. Wahba's claim that the 6/21/55 R/Cs are easements appurtenant to the Wahba Lot, there is no credible evidence herein that Mr. Wahba, at the time when he purchased the Wahba Lot via a 4/2/75 Warranty Deed (YMCA Exhibit "E"), would not have purchased the Wahba Lot without having the appurtenant benefit of the 6/21/55 R/Cs to the Wahba Lot.

It is true Mrs. Wahba has now submitted a 12/23/05 Supporting Affidavit in which Mr. Wahba claims (at Paragraph 5) (and Mrs. Wahba repeats the same claim in her 12/23/05 Affidavit, at Paragraph 4) that he was told prior to his 1975 purchase of the Wahba Lot by Mr. George Smith, the Husband of the 4/2/75 Warranty Deed's grantor, Mrs. Monica A. Smith—*See* YMCA Exhibit "E"), that there were covenants "placed on the YMCA's [6/21/55] deed that protected the view of the Island", and as a result that such covenants were "a determining factor in my wife's and my decision to purchase the land". (Mr. Wahba's 12/23/05 Affidavit, at Paragraph 5). However, if said asservations were in fact correct (and putting aside the fact that Mr. Smith's alleged statements are excludable hearsay pursuant to Rule 802 of the Federal Rules of Evidence—the "FRE"), surely Mr. Wahba would have made certain that the 4/2/75 Warranty Deed into him (YMCA Exhibit "E") from Mrs. Smith *did* contain a clause that such 6/21/55 R/Cs were indeed appurtenant incidents to the Wahba Lot (for example: "The foregoing [Wahba Lot] Premises are conveyed *together with* the appurtenant benefit of the restrictive covenants that are set forth in a certain deed, dated June

- 15 -

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 16 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Opposition Memorandum by
the YMCA

21, 1955, which was recorded in Book 538, at Page 93, of the Greenwich Land Records"). Simply put, he did not; nor did even any of the six subsequent Wahba back–and–forth deeds (YMCA Exhibits "F" to "K") contain such a clause (as further discussed below).

Moreover, a careful reading of said 12/23/05 Affidavit Paragraphs 5 (Mr. Wahba) and 4 (Mrs. Wahba) reveals that the Wahbas do not whatsoever say George Smith had told them in 1975 that the covenants in the 6/21/55 Deed were specifically an appurtenant benefit of the Wahba Lot (and thus would be enforceable by the Wahbas). Instead, the Wahbas only say that they were told that there were panoramic view R/Cs in the 6/21/55 Deed that "protected the view of the Island" (Mr. Wahba's 12/23/05 Affidavit, at Paragraph 5), without more; and thus confirming that the 6/21/55 R/Cs were only easements in gross and thus merely personal to the 6/21/55 Grantors. In fact, there simply is no credible evidence that the Wahbas had ever known of the existence of the 6/21/55 R/Cs until on or about the 11/1/01 date when the Wahbas had executed their "Agreement" (YMCA Exhibit "M"), which is the first Wahba document (and it was executed 26 years after Mr. Wahba allegedly had his conversation with Mr. George Smith) that refers to the 6/21/55 Deed. (*See* the discussion in the section next below that not only did Mrs. Monica Smith's 4/2/75 Deed not refer in any respect to the 6/21/55 Deed, neither thereafter did any of the Wahbas' six successive deeds—YMCA Exhibits "F" to "K").

(iv) **Importantly, the surrounding circumstance of a review of the post–6/21/55 Wahba Chain of Title, and also the other post–6/21/55 Chains of Title of the 6/21/55 Grantors, does not negate the In Gross Presumption herein**. The foregoing conclusions regarding the Wahbas' pre–11/1/01 lack of knowledge of the 6/21/55 R/Cs, and the absence of any importance to them at any time (until now) with regard to the 6/21/55 R/Cs, are decisively reinforced by a review of all of the nine post–6/21/55 deeds and

Case 3:02-cv-00462-AHN    Document 92    Filed 01/31/2006    Page 17 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)                    •Opposition Memorandum by
(United States District Court, at Bridgeport, CT)                    the YMCA

the one certificate of devise in the Wahba Chain of Title (YMCA Exhibits "A" to "C", and "E" to "K"—collectively, the "Ten Wahba Deeds"), which Chain of Title review is a relevant surrounding circumstance to determine "whether there was an intent as expressed in the [dominant and servient estates'] chains of title to establish the easements". *See, e.g.,* Mandes v. Godiksen, 57 Conn. App. 79, 83, 747 A.2d 47, 50, *cert. den.* 253 Conn. 915, 754 A.2d 164 (2000). Therefore, it is very significant that in neither Mrs. Monica Smith's 4/2/75 Warranty Deed into Mr. Wahba (YMCA Exhibit "E"), nor in the 7/14/76 *Warranty* Deed from Mr. Wahba to Mrs. Wahba (YMCA Exhibit "F"), nor even in the preceding first three documents in the post–6/21/55 Wahba Chain of Title, *viz.*, the two pre–4/2/75 deeds and the certificate of devise (YMCA Exhibits "A" to "C"), was there ever any mention whatsoever of the 6/21/55 R/Cs (as an appurtenance or otherwise with respect to the Wahba Lot), or even any reference regarding any other matter relating to the 6/21/55 Deed or to the Island. *See* the far right Column on the attached List of YMCA Exhibits, wherein in response to the stated question, "Any Reference in the Deed to the 6/21/55 Deed's Covenants *or* even to the Island?", the answer is a unanimous *"no"* with regard to each of the Ten Wahba Deeds; and as discussed below, importantly the same uniformly negative response is also given with regard to the other post–6/21/55 Chains of Title of the 6/21/55 Grantors. (*See* YMCA Exhibits "N" to "II").

Moreover, in another of the Wahbas' direct confirmations that the 6/21/55 R/Cs would have little value to the Wahba Lot is that in the series of the five 2002-2004 back-and-forth deeds between Mr. and Mrs. Wahba (YMCA Exhibits "G"–"K"), which were executed *after* the Wahbas had signed the 11/1/01 Agreement and in which they discussed at some length various details of the 6/21/55 R/Cs, nonetheless, there was absolutely no mention of the 6/21/55 R/Cs in these five post–11/1/01 Deeds. In conclusion, it is quite

Case 3:02-cv-00462-AHN    Document 92    Filed 01/31/2006    Page 18 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)                    •Opposition Memorandum by
(United States District Court, at Bridgeport, CT)              the YMCA

obvious that the Wahbas never believed that the 6/21/55 R/Cs were real property interests appurtenant to the Wahba Lot until just a couple of months ago starting with Mrs. Wahba's appearance at the 10/18/05 Compensation Hearing. Thus, Mrs. Wahba's attempt now to rebut the In Gross Presumption, which she and her Husband had not disputed for 30 years since the first deed into one of them (YMCA Exhibit "E", dated 4/2/75), is without merit.

Furthermore, the total absence of any reference to the 6/21/55 R/Cs in Wahba Chain of Title is the same as the total absence of any such reference in: (i) the Rowena Lee Teagle's second chain of title, *viz.*, from her Estate to Mr. Tsai and then to Mrs. Tsai (and now to Mrs. Tsai's 10/05 purchaser); *and* (ii) also in the post–6/21/55 Chains of Title of the other three 6/21/55 Grantors. More specifically, as with the Wahba Chain of Title, the Tsai Chain of Title likewise arises from the Estate of Rowena Lee Teagle; and it involves a second portion of Mrs. Teagle's property. (Copies of the three post–6/21/55 Tsai Chain of Title deeds are YMCA Exhibits "N", "O" and "P", which "second portion" of the Teagle property was now–formerly owned by Marlyn Tsai, who is a plaintiff in the "State Court" Action and a defendant in this Condemnation Proceeding. Also, said YMCA Exhibit "P" is the 10/11/05 Deed by means of which Mrs. Tsai sold her property at 109 Byram Shore Road for $17.5M.) In brief, there is no reference in the Tsai Chain of Title to the 6/21/55 R/Cs, to the 6/21/55 Deed or to the Island.

Similarly, there is the same total absence throughout the post–6/21/55 Chains of Title of the other three 6/21/55 Grantors. Because each of these other 6/21/55 Grantors or their assigns had subdivided their shorefront estates after 6/21/55 (as was done to Rowena Lee Teagle's shorefront property), therefore, a representative post–6/21/55 Chain of Title of one of the subdivision shorefront lots for each of the other three 6/21/55 Grantors has been selected, as follows: (i) the Jeremiah Milbank Chain of Title (Re: Lot No. 4) (*See* YMCA

Case 3:02-cv-00462-AHN   Document 92   Filed 01/31/2006   Page 19 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Opposition Memorandum by
the YMCA

Exhibits "R" to "Y"); (ii) the C. Redington Barrett Chain of Title (Re: Lot B) (*See* YMCA Exhibits "Z" to "DD"); and (iii) the John D. Barrett, Jr. Chain of Title (Re: Lot A) (*See* YMCA Exhibits "EE" to "II"). In sum, in none of the numerous deeds in said three representative post–6/21/55 chains of title is there any reference to the 6/21/55 R/Cs, the 6/21/55 Deed or the Island. Thus, as a result of said total absence, the "intent as expressed in the [dominant estates'] chains of title", Mandes, 57 Conn. App. at 83, 747 A.2d at 50, is without exception that the 6/21/55 R/Cs were easements in gross and not whatsoever appurtenant incidents to any of the shorefront properties of the 6/21/55 Grantors.

Furthermore, this lack of belief by any grantor (including the 6/21/55 Grantors themselves, or their executors, as the case may be) in these post–6/21/55 chains of title that the 6/21/55 R/Cs were easements appurtenant to the benefit of their respective shoreline properties is confirmed by two additional set of facts. First, in one or more deeds in the post–6/21/55 Chains of Title of each of the 6/21/55 Grantors there was an explicit "together with" reference to one or more appurtenant incidents to the title of each of the shorefront properties of the 6/21/55 Grantors. More particularly, said inclusions in one or more deeds in each of the post–6/21/55 Chains of Title regarding the appurtenant incidents to the shoreline properties' titles are as follows: (i) the Wahba Lot—YMCA Exhibits "C", "E" and "F" (two "together with" appurtenant incidents in each deed—for example, in YMCA Exhibit "C": "The premises are conveyed *together with* all riparian rights *appurtenant* to said tract") (Emphasis supplied); (ii) the Tsai Lot—YMCA Exhibits "N", "O" and "P" (two "together with" appurtenant incidents); (iii) the Jeremiah Milbank Lot No. 4—YMCA Exhibit "R" (one "together with" appurtenant incident) and YMCA Exhibits "T", "U", "V" and "W" (two "together with" appurtenant incidents), YMCA Exhibits "X" and "Y" (three "together with" appurtenant incidents); (iv) the C. Redington Barrett Lot B—YMCA Exhibit "DD" (two

Case 3:02-cv-00462-AHN    Document 92    Filed 01/31/2006    Page 20 of 20

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)
(United States District Court, at Bridgeport, CT)

•Opposition Memorandum by
the YMCA

"together with" appurtenant incidents); and (v) the John D. Barrett, Jr. Lot A—YMCA Exhibits "HH" and "II" (three "together with" appurtenant incidents). In the sharpest of contrasts, not one of these many deeds spoke a single word about the 6/21/55 R/Cs as constituting a "together with" appurtenant incident to a shorefront property.

There is a second set of additional facts that confirms none of the grantors in the post–6/21/55 Chains of Title believed that the 6/21/55 R/Cs were easements appurtenant to their properties. First, not one of the grantors of the Ten Wahba Deeds ever attempted to correct what Mrs. Wahba in effect claims today was but a mere oversight/scrivener's error in each of the Ten Wahba Deeds to include a reference therein that the 6/21/55 R/Cs were an appurtenant incident to the Wahba Lot and thus for the benefit of the Rowena Lee Teagle and her heirs and assigns. But, the undeniable fact is that none of the grantors (including the Wahbas) ever attempted to reform any of the Ten Wahba Deeds to include a deed provision that the 6/21/55 R/Cs were an appurtenant incident to the Wahba Lot, which corrective conduct could have been easily undertaken in three different and time–honored ways: (i) via a re–filed "corrective" deed; (ii) via the inclusion of corrective language in a subsequent grantor's deed; or (iii) via the filing a reformation of deed lawsuit in equity, See, e.g., Cole v. Steinlauf, 144 Conn. 629, 632, 136 A.2d 744, 746 (1957) (the judicial reformation of a deed was permitted 12 years later to add the word, "heirs", after "grantee").

Among the various grantors of the Ten Wahba Deeds, particular note should be made of the failure of the Executors of Rowena Lee Teagle's Estate to *post facto* reform the two 7/69 instruments (YMCA Exhibits "A" and "B") to insert language that the title to the Wahba Lot included the 6/21/55 R/Cs as an appurtenant incident thereto. Or, as stated another way, if the Executors of Rowena Lee Teagle's Estate (acting in effect as the alter ego of Mrs. Teagle) had truly believed that the 6/21/55 R/Cs were appurtenances to the Teagle