shoreline properties (including what eventually became the Wahba Lot) via the 6/21/55

Reservation Clause, and not just a mere personal right (or, an easement in gross) held during

her lifetime by Mrs. Teagle, surely they would have corrected the matter, particularly if the

6/21/55 R/Cs had any substantive value to the Wahba Lot.  Importantly, they did not, nor did

any of their multiple successors–in–title in the Wahba Chain of Title.  Likewise, none of the

grantors in the Tsai Chain of Title (YMCA Exhibits "N" to "P"), including the Executors of

the Estate of Teagle as grantors (YMCA Exhibit "N"), ever reformed any of the Tsai Chain

of Title Deeds; nor did the grantors in the Milbank Chain of Title ever reform any of their

deeds (YMCA Exhibits "R", and "T" to "Y").  However, each of the Barrett Brothers

(Redington and John) did know how to correct deed errors, which they did with considerable

precision in their respective 9/29/70 corrective deeds to each other (YMCA Exhibits "AA"

and "FF"); but tellingly, they did not correct their deeds to also include a reference to the

6/21/55 R/Cs as constituting easements appurtenant to their respective shoreline properties.

<span style="padding-left:2em"></span>(v)   **The  final  relevant  surrounding  circumstance  is  the
language of uncertainty in the Wahbas' 11/1/01 Document, which does not negate the In
Gross Presumption**.  On 11/1/01, the Wahbas executed a certain document (the "11/1/01

Document"—YMCA Exhibit "M") in connection with the 6/21/55 R/Cs.  In one of the

critical clauses of the 11/1/01 Document, at the second unnumbered paragraph thereof on

page 1, the Wahbas failed to definitively confirm, as one would indeed have expected from

the position that they have been vigorously asserting herein starting at the 11/18/05

Compensation Hearing, that the 6/21/55 R/Cs were easements appurtenant to their Lot.  More

specifically, what they did not say in said 11/1/01 paragraph was: "The undersigned, is the

owner of property located in Greenwich, Fairfield County, Connecticut that *has* the benefit of

said [YMCA Deed] restrictions".  Instead, what they did say was that they were unsure as to

Case 3:02-cv-00462-AHN    Document 92-2    Filed 01/31/2006    Page 2 of 23

No. 3-02-CV-462 (AHN) *(Master Docket)*
No. 3-03-CV-275 (AHN) *(Member Case)*                    •*Opposition Memorandum by*
*(United States District Court, at Bridgeport, CT)*              *the YMCA*

whether or not the Wahba Lot did have the benefit of the 6/21/55 R/Cs, as shown by their following language of uncertainty: "The undersigned, is the owner of property ...that *may have* the benefit of said restrictions". (11/1/01 Document, p. 1—Emphasis supplied). Directly stated, as a result of the common law that R/Cs are to be "narrowly construed", Morgenbesser, 276 Conn. at 829, ___ A.2d at ___, there simply is no room in an important document relating to property (such as the 11/1/01 Document) for any equivocation by an owner of a purported dominant estate about whether or not an R/C (or a set of R/Cs) constitutes an appurtenant incident to his property. Thus, as a result of the Wahbas' own words of uncertainty in said 11/1/01 paragraph, the In Gross Presumption has not been rebutted by the 11/1/01 Document but in fact has thereby been reinforced.

(c) **Conclusion**. Mrs. Wahba, because she is only a successor owner to one of the 6/21/55 Grantors, has no interest in connection with the easement in gross that was created via the 6/21/55 Reservation Clause and that was held by her predecessor in title, Rowena Lee Teagle, and which personal easement has terminated long ago upon Mrs. Teagle's death that had occurred in 1969 shortly before the Greenwich Probate Court's 7/31/69 Certificate of Devise (YMCA Exhibit "B").

5. **The Preclusive Effect on Mrs. Wahba's Claim resulting from the two sets of Admissions made by Predecessors–in–Title in the Wahba Chain of Title**.

(a) **The subject Principle of Law: the Preclusive Effect arising from an Admission made by a Real Property Predecessor–in–Title**. As a doctrinal corollary to the "admissions-by-privies" principle, the declarations against property interest of a real property predecessor-in-title (that were made during his time of ownership) constitute admissions that are binding upon each of his successor-in-title's interest in the subject parcel of real property. 29A Am. Jur. 2d, Evidence, §§824-825, pp. 211-12 (1994). This principle

**Case 3:02-cv-00462-AHN    Document 92-2    Filed 01/31/2006    Page 3 of 23**

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*                    *•Opposition Memorandum by*
*(United States District Court, at Bridgeport, CT)*            *the YMCA*

was long ago first stated in Connecticut in a series of five early decisions culminating in

<u>Young v. Williams</u>, 17 Conn. 393, 400 (1845), in which the Connecticut Supreme Court

adopted this principle in Connecticut:

> Upon recurring, however, to the authorities, the rule seems to be
> perfectly well settled in this state, that the declarations made by the
> owner of real estate, adverse to his title, are admissible in evidence,
> not only against him, but all others claiming title to the same lands
> under him. (Cits. omitted).

Because an easement is "an interest in land [and] [t]hus is real property", <u>Kelly v. Thomas</u>,

66 Conn. App. 146, 153, 783 A.2d 1226, 1235 (2001) (Cit. omitted), and because an

easement is a real property interest that cannot be severed from the property that it benefits,

*viz.*, the dominant estate, *See, e.g.,* <u>Harkins v. Girouard Estates, Inc.</u>, 31 Conn. App. 485, 495,

625 A.2d 1388, 1393, *cert. den.* 227 Conn. 906, 632 A.2d 691 (1993), thus, an easement is

inextricably connected to and is an integral incident to the title of the dominant estate.

Against this backdrop, herein there have been two sets of preclusive admissions that have

been made by predecessors–in–title against Mrs. Wahba's claim herein of an appurtenant

incident to her title in the Wahba Lot.

    (b)    ***First: the Unbroken Chain of Admissions in the Ten Wahba***

**Deeds**.  The first set of preclusive admissions has been made "in the negative", as follows:

none of Mrs. Wahba's predecessors-in-title (*i.e.*, the post–6/21/55 Wahba Lot title owners,

including herself, in the Ten Wahba Deeds, and inclusive of the most–recent Wahba Lot

conveyance only a year and a half ago via Mr. Wahba's 7/6/04 Deed—YMCA Exhibit "K")

ever stated in their respective deeds that the title to the Wahba Lot also included any

appurtenant interest (or otherwise) with respect to the 6/21/55 R/Cs.  Said unbroken chain of

admissions, over the subject 35-year period of time of the Ten Wahba Deeds (1969-2004), is

prominently reinforced by the repeated and preclusive admissions made by Mrs. Wahba

herself in the two Wahba Lot deeds that she had personally executed, *viz.,* YMCA Exhibits

"H" and "J", and in which she made absolutely no reference to the 6/21/55 Deed or its R/Cs,

or even to the Island. Said admissions in the Wahba Chain of Title are reinforced by a

similar total absence in the Tsai Chain of Title Deeds and also in the chains of title of the

other 6/21/55 Grantors with regard to any reference to the 6/21/55 R/Cs, the 6/21/55 Deed or

even the Island. Moreover, as a final matter that confirms these preclusive admissions by her

predecessors-in-title (including herself) that the 6/21/55 R/Cs are not appurtenant incidents to

the Wahba Lot, Mrs. Wahba's own conduct of uniformly accepting (and her prompt

subsequent recording thereof) of the six deeds into her (YMCA Exhibits "F" to "K")

unequivocally precludes her, particularly now more than twenty–nine years later after the

7/14/76 first deed to her (YMCA Exhibit "F"), from arguing that the 6/21/55 R/Cs constitute

an appurtenant incident to the Wahba Lot.

　　　　　(c)　　　**_Second_: the "full fair market value" set of Admissions; and the**

**resulting Applicability herein of _Stefanoni_.** "[I]t is fundamental that a grantor *cannot*

effectively convey a greater title than he possesses". <u>Stefanoni v. Duncan</u>, 92 Conn. App.

172, 179 n.6, 883 A.2d 1271, 1278 n.6 (2005) (Cit. and Internal Quotation Marks omitted;

Emphasis supplied). *Accord:* <u>Kosnik v. Barton</u>, 93 Conn. App. 244, 252, ___ A.2d ___

(2006). In this context: (i) there is no evidence, in the "arms length" executors' deed and the

warranty deed in the first part of the Wahba Chain of Title (*viz.,* YMCA Exhibits "A" and

"E", respectively), that any of the grantees/purchasers paid anything but the full fair market

value for the property that was conveyed to them via said two deeds, which lack of evidence

of anything but full fair market value paid is reinforced by the (common sense and common

law) presumption that a deed necessarily is supported by "good consideration" paid, 23 <u>Am</u>.

<u>Jur</u>. 2d, Deeds, §80, at pp. 128-29 (2002); (ii) under <u>Stefanoni</u>, *supra,* a grantor can convey

Case 3:02-cv-00462-AHN     Document 92-2     Filed 01/31/2006     Page 5 of 23

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)                    •Opposition Memorandum by
(United States District Court, at Bridgeport, CT)          the YMCA

only what he owns; (iii) as discussed in the paragraph next above, none of the Ten Wahba Deeds states that the 6/21/55 R/Cs are an appurtenant incident of the Wahba Lot; and (iv) the distillation of the foregoing law and facts is that each of the grantees via said two deeds (which were uniformly silent about the 6/21/55 R/Cs) got exactly what he paid for, *i.e.,* the Wahba Lot *without* any appurtenant interest in the 6/21/55 R/Cs.  Thus, these two arms–length deeds constitute the second set of preclusive admissions by predecessors–in–title in the Wahba Chain of Title that the Wahba Lot did not have an appurtenant interest in connection with the 6/21/55 R/Cs.

(d)     **Conclusion**.  In sum, said two sets of admissions in the Wahba Chain of Title is an important surrounding circumstance, *See, e.g.,* Mandes,  57 Conn. App. at 83, 747 A.2d at 50; and they wholly negate Mrs. Wahba's assertion herein that the Wahba Lot is one of the dominant estates in connection with the 6/21/55 R/Cs.

6.     **The Waiver by the Wahbas via their 11/1/01 Document**.

(a)     **The Wahbas' 11/1/01 Document constitutes a classic Waiver**.  The 11/1/01 Document (YMCA Exhibit "M") was executed by Mrs. Wahba and her Husband, Mahmoud A. Wahba, at a point in time when Mrs. Wahba held title to the Wahba Lot jointly with Mr. Wahba.   Although it is entitled, "Agreement", it is obviously not an agreement because: (i) it is signed by only one party, and there is not even a signature block for a second party; and (ii) there is no bilateral exchange of consideration, *i.e.,* no benefit and detriment to a first party and a corresponding benefit and detriment to a second party.  This essential requirement of a bilateral exchange of consideration to form and constitute a contract was reconfirmed in Ubysz v. DiPietro, 185 Conn. 47, 51, 440 A.2d 830, 833 (1981): "[I]n order to form a contract, generally there must be a bargain in which there is a manifestation of

Case 3:02-cv-00462-AHN     Document 92-2     Filed 01/31/2006     Page 6 of 23

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)                    •Opposition Memorandum by
(United States District Court, at Bridgeport, CT)           the YMCA

*mutual* assent to the exchange between *two* or more parties". (Cits. omitted; Emphasis supplied).

Instead, the 11/1/01 Document is a unilateral instrument that constitutes a waiver because it sets forth each of the two elements that are required for a valid waiver by the seminal decision of <u>Johnson v. Zerbst</u>, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938), *viz.*, (i) the intentional relinquishment of (ii) a known right. *See also* <u>Fenn v. Yale University</u>, 283 F.Supp. 2d 615, 634 (D.Conn. 2003) (CFD) (Re: the same two elements, per Connecticut common law). First, there is the Wahbas' clearly-stated acknowledgment in the 11/1/01 Document, at p.1, with regard to a known right that they believed they may have possessed, *viz.*, that they "may have the benefit of said [6/21/55 Deed's] restrictions", which they had detailed in the first (unnumbered) paragraph and in Paragraph Nos. 1 and 2, on page 1 of the 11/1/01 Document. Second, there is an intentional relinquishment by them of that asserted "right" in Paragraph Nos. 1-3 of the 11/1/01 Document, as follows: (i) they agreed that certain definitive and pro-wildlife refuge interpretations of the 6/21/55 Deed's restrictions shall be made, and as a result, they waived their ability to thereafter make any claim (as others after 11/1/01 have in fact claimed, such as Marlyn Tsai did in the State Court Action in her artful pleading of Paragraph 2 of her 2/13/02 State Court Complaint herein) that the use of the Island as a wildlife refuge by a "governmental agency" would be in violation of the 6/21/55 Deed; and (ii) once said pro–wildlife refuge interpretations were thereafter "implemented" as a result of the U.S. Fish and Wildlife Services' (the "FWS") subsequent takeover of the Island via the 2/13/03 DTA Condemnation herein, and now with the FWS's nearly three years (2/03–1/06) of management of the Island as such a (governmental agency) wildlife refuge, thus, any conditional aspects to the waiver in the 11/1/01 Document have been terminated.

The import of the 11/1/01 Waiver is that, *arguendo*, even if prior to the 2/13/03 DTA Condemnation the Wahbas could have enforced the 6/21/55 R/Cs as an appurtenant incident to the Wahba Lot, and thus the Wahbas would thereby have had a valid FRCP 71A(j) claim for a compensable interest in the $6.0M of just compensation, nevertheless, Mrs. Wahba's claim today has been rendered moot as a result of the Wahbas' execution of the 11/1/01 Document. More particularly: (i) the Island has become "a wildlife refuge and related facilities and/or open space administered by a governmental agency" (11/1/01 Document, Paragraph No. 1) specifically pursuant to the Government's 2/13/03 DTA Condemnation Complaint; (ii) via the 11/1/01 Document, the Wahbas declared that it was acceptable to them that said governmental use could be made of the Island despite the 6/21/55 R/Cs; and (iii) the effect of said 11/1/01 declaration of acceptability was that, after the 2/13/03 DTA Taking herein, the Wahbas have no complaint about such governmental use of the Island by the FWS, and therefore they have no claim for any loss suffered by them.

      (b)    **Consideration is not required for a waiver, including the 11/1/01 Document**. With regard to the issue regarding the necessity of any consideration for the 11/1/01 Document, which consideration Mrs. Wahba argues (12/23/05 Motion, pp. 15-16) is absent therefrom and therefore invalidates the 11/1/01 Document, the Wahbas did confirm in their recital of consideration in page one of the 11/1/01 Document that there *was* consideration for the waiver ("For mutual benefit received ..."). Moreover, the YMCA is unable to find any Connecticut case involving waivers that requires, or even discusses, that consideration must be received by a waiving party in order to make his waiver valid. In fact, the only reference that has been found by the undersigned in the case law or in the statutes to any possible requirement for consideration to be given in the context of a waiver is in the UCC, at §1-107, C.G.S. §42a–1-107, which states that no consideration (in the context of a

commercial contract) need be given in exchange for a waiver. As explained in the §1-107

UCC Comment:

> This section makes consideration *unnecessary* to the effective renunciation or waiver of rights or claims arising out of an alleged breach of a commercial contract where such renunciation is in writing and signed and delivered by the aggrieved party. (Emphasis supplied).

The reason that a waiver (in commercial contract law or in any other context) does not require any consideration is clear: (i) a waiver is unilateral in nature, in that it involves the act and conduct of only one party, in contrast (for example) to the bilateralness of a contract or even in contrast to the closely related doctrine of equitable estoppel (which necessarily must involve the conduct of two parties, *i.e.,* the misleading conduct by one party which results in prejudice to the other party—*See, e.g.,* Ridgefield v. Eppoliti Realty Co., 71 Conn. App. 321, 337, 801 A.2d 902, 914, *cert. den.* 261 Conn. 933, 806 A.2d 1070 (2002)); and (ii) thus, "the waiver need not be supported by a consideration or estoppel", 28 Am. Jur. 2d, Estoppel and Waiver, §207, p. 611 (2000). In sum, because no consideration is required to be received by a party in exchange for his waiver: (i) the recital of consideration in the 11/1/01 Document was unnecessary, and thus mere surplusage; and (ii) therefore, the continuing validity of 11/1/01 Document, as a waiver by the Wahbas, is not impacted by any issue of consideration.

      (c)      **Finally, the 11/1/01 Document is clear and unambiguous**. In their 12/23/05 Affidavits, Mrs. Wahba (Paragraphs 6-14) and Mr. Wahba (Paragraphs 6-11) discuss at considerable length the 11/1/01 Document (and include in said Paragraphs a significant amount of non–admissible hearsay statements—*See* FRE 802). However, what is more important are the things that they do *not* say, *viz.*: (i) that they did not understand any of the words in the 11/1/01 Document; (ii) that any of the words or phrases in the 11/1/01

Case 3:02-cv-00462-AHN    Document 92-2    Filed 01/31/2006    Page 9 of 23

No. 3-02-CV-462 (AHN) (Master Docket)
No. 3-03-CV-275 (AHN) (Member Case)                    •Opposition Memorandum by
(United States District Court, at Bridgeport, CT)              the YMCA

Document are ambiguous; and (iii) that their execution thereof was anything other than, as attested to in the clearly–stated words in the Notary Public's 11/1/01 acknowledgment, "their free act and deed". Thus, the 11/1/01 Document is to be interpreted, not based on the Wahbas' post–execution subjective perception today as to the meaning and import of their words, but instead, because when "the language of the [instrument] is clear and unambiguous, the [instrument] is [therefore] to be given effect according to its terms". Alaimo v. Beacon Industries, Inc., 89 Conn. App. 363, 365, 873 A.2d 1015, 1017 (2005) (Cit. and Internal Quotation Marks omitted). Accordingly, by their clear and unambiguous language throughout the 11/1/01 Document, the Wahbas have waived any interest they may have had in the 6/21/55 R/Cs as a result of their prescient approval of today's governmental agency wildlife refuge use of the Island.

(d)    **Conclusion**.  The net result of the foregoing matters in connection with the 11/1/01 Document is that, by virtue of her own written words therein, and now in the context of the FWS's use and development of the Island, Mrs. Wahba has waived any right that she had believed she may have had with regard to the Island.

7.    **Finally, Mrs. Wahba's reliance upon "Retained Land" Doctrine is unsupportable**.  Mrs. Wahba seeks to avoid the preclusive effect against her claim of an easement appurtenant, which result arises from the Connecticut common law principles regarding R/Cs that are discussed above in Paragraphs 1 – 4, by now relying on the presumption of an easement appurtenant that is created by the Retained Land Doctrine (the "R/L Doctrine").  (12/23/05 Motion, pp. 6-7).  However, in an overview, the R/L Doctrine does not apply herein to the 6/21/55 R/Cs and the Wahba Lot because: (i) the core requirement of the R/L Doctrine, which is that the two subject parcels (*herein*: the Island and the Wahba Lot) must be *contiguous* parcels, has not been met because of the intervening

- 29 -

property that is more than a half mile wide between said two parcels and which has always been owned by an unrelated third party, _viz._, the State; and (ii) even if the R/L Doctrine (which is a rebuttable presumption) were to be triggered herein, nonetheless, each of the R/L Doctrine's two principal rebuttal factors negate the Presumption. More specifically:

(a)    **The R/L Doctrine and its Seminal Requirement of Contiguity between the two subject Parcels**.    As the R/L Doctrine was named and described in Contegni v. Payne, 18 Conn. App. 47, 64, 557 A.2d 122, 130, _cert. den._ 211 Conn. 806, 559 A.2d 1140 (1989): the "retained land theory requires that the grantor exact 'covenants from his grantee ... for the benefit and protection [in perpetuity] of his _adjoining_ land which he retains'. Stamford v. Vuono [108 Conn. 359, 364, 143 A. 255 (1928)]". (Ellipses in the original; Emphasis supplied); and the R/L Doctrine constitutes a presumption, _Id.,_ 18 Conn. App. at 63-64, 557 A.2d at 130 (Cit. omitted), which is subject to certain rebuttal factors, _Id.,_ 18 Conn. App. at 65-67, 557 A.2d at 131-32. The cases which have applied the R/L Doctrine have thus confined it to circumstances wherein: (i) a grantor has carved out a new parcel from his existing land, or where he owns two existing contiguous parcels; and (ii) then, when he conveys away one of the two parcels, he places in the deed of conveyance an R/C which burdens the conveyed parcel.

Against this background, it has been the unbending requirement, starting with the early cases in which the R/L Doctrine was first adopted in Connecticut, that the grantor's retained parcel was "adjoining" land to his conveyed parcel. _See, e.g.,_ Vuono, 108 Conn. at 364; Bauby v. Krasow, 107 Conn. 109, 114, 139 A. 508 (1927); Baker v. Lunde, 96 Conn. 530, 537, 114 A. 673 (1921). This "adjoining" property requirement of contiguity of the two parcels has also been characterized as the requirement of being "abutting" parcels, and thus, the R/L Doctrine is to be applied: "Where the owner of two adjacent parcels conveys one

- 30 -

with a restrictive covenant and retains the other", which conveyed parcel is an "*abutting*

parcel". Marion Road Association v. Harlow, 1 Conn. App. 329, 335, 472 A.2d 785, 789

(1984) (Emphasis supplied).

Therefore, the seminal predicate to the R/L Doctrine's applicability is the spatial

requirement that the two subject parcels must physically touch each other because, as

confirmed in *Black's Law Dictionary,* 8th Ed. (2004): (i) "adjoining" means: "Touching;

sharing a common boundary; *contiguous*" (Emphasis supplied); and (ii) the meaning of the

term, "abut", is the same: "to share a common boundary with". Hence, the Connecticut cases

up through and including the most recent appellate decision of Dasilva v. Barone, 83 Conn.

App. 365, 372, 849 A.2d 902, 907, *cert. den.* 271 Conn. 908, 859 A.2d 560 (2004), uniformly

*limit* the application of the R/L Doctrine, in order to make a grantor's R/C an easement

appurtenant to the grantor's remaining and contiguous parcel and not merely an easement in

gross to the grantor, only when the R/C is "for the benefit and protection of his *adjoining*

land which he retains". *Ibid.* (Cit. and Internal Quotation Marks omitted; Emphasis

supplied).

    (b)    **Simply stated, the R/L Doctrine is not applicable herein because**

**the Island and the Wahba Lot have never been contiguous parcels**. As clearly shown on

page 1 of the 10/1/04 GIS Maps (YMCA Exhibit "Q"), the Island is separated from the

Wahba Lot by more than a half mile of the coastal waters of Long Island Sound. First, the

coastal waters are owned by the sovereign: "The title to the soil under the waters of Shaw's

Cove [in the New London Harbor] below low–water mark was in the State as trustee for the

public". New York, N.H. & H.R. Co. v. Richards, 92 Conn. 349, 355, 102 A. 791 (1917)

(Cit. omitted). Said State ownership of the coastal waters is confirmed in the General

Statutes, *for example,* in the Connecticut Coastal Structures and Dredging Act, C.G.S. §§22a-

Case 3:02-cv-00462-AHN    Document 92-2    Filed 01/31/2006    Page 12 of 23

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*                    *•Opposition Memorandum by*
*(United States District Court, at Bridgeport, CT)*              *the YMCA*

359, *et seq.*, as follows: "the tidal, coastal or navigable waters *of the state* waterward of the high tide line". C.G.S. §§22a-359(a) and 22a-361(a) (Emphasis supplied). Moreover, even the tidal beach abutting the Wahba Lot is owned by the State: "Title to the land between the high and low–water marks is in the state". <u>Mandes</u>, 57 Conn. App. at 87, 747 A.2d at 52. Therefore, when looking from the Greenwich shore towards the Island (*See,* for example, Mrs. Wahba's three color photographs—Exhibit "B" to Mr. Wahba's 12/23/05 Affidavit), the contiguous land at the southern/shoreline boundary of the Wahba Lot is not the Island, but rather it more than a half mile of the State's abutting and intervening tidal beach and coastal waters. As result of this fatal flaw herein of non–contiguity, the R/L Doctrine cannot be triggered because the servient estate (the Island) was never a parcel that has at any time been contiguous with the alleged dominant estate (the Wahba Lot). Thus, Mrs. Wahba's assertion that the R/L Doctrine is applicable herein is without merit.

   (c)   <u>**The two Rebuttal Factors regarding the Presumption of the**</u> <u>**R/L Doctrine**</u>. As one would expect, similar to the principal rebuttal factors that can negate an easement in gross (*See* Paragraph 4(b) above), the two principal factors that can rebut the presumption of the R/L Doctrine are, as follows: (i) the specific language of the deed's reservation clause; and (ii) the relevant surrounding circumstances. *See, e.g.,* <u>Contegni</u>, 18 Conn. App. at 63 and 65, 557 A.2d at 130-31; and <u>Grady v. Schmitz</u>, 16 Conn. App. 292, 297, 547 A.2d 563, 566, *cert. den.* 209 Conn. 822, 551 A.2d 755 (1988). For example with regard to the first R/L Doctrine rebuttal factor, the language of the reservation clauses in the deeds in <u>Contegni</u> and <u>Grady</u> explicitly and respectively stated that the subject covenants shall be binding upon the "grantee's successor and her assigns" and the "grantee, his heirs, executors, administrators and assigns", and thus the presumption of the R/L Doctrine was not rebutted. *See, e.g.,* <u>Contegni</u>, 18 Conn. App. at 64, 557 A.2d at 130; <u>Grady</u>, 16 Conn. App. at

- 32 -

294 and 297, 547 A.2d at 565 and 566. With regard to the second factor, the courts will for example carefully review the surrounding circumstances relating to the grantor's retention of one parcel while at the same time conveying a contiguous parcel with an R/C that the grantor had inserted into his deed of conveyance. *Ibid.*

> (d)      **Herein, each of the two principal Rebuttal Factors regarding the Presumption of the R/L Doctrine is present, and they negate the Presumption**. Even if *arguendo* the presumption of the R/L Doctrine were to be triggered herein, nonetheless, each of the two principal rebuttal factors negates the Presumption, as follows:

> (i)      *First:* **The Language of the 6/21/55 Reservation Clause**.

Critically, the 6/21/55 Reservation Clause completely lacks either of the formulaic sets of words which would confirm the applicability of the R/L Doctrine herein. First, in the sharpest of contrasts to the reservation clauses in <u>Contegni</u> and <u>Grady</u>, *supra,* there are no words of grantee (or even grantor) succession whatsoever stated in either of the 6/21/55 Subclauses (as discussed above in Paragraph 4(b)). Second, instead of stating in the 6/21/55 Second Subclause that the 6/21/55 R/Cs would "inure to the benefit of the *adjoining* lands of the Releasors", the 6/21/55 Grantors acknowledged the inapplicability of the "remaining lands" contiguity concept herein by stating: "shall inure to the benefit of the *other* lands of the Releasors". (Emphasis supplied). Third, as discussed above in Paragraph 4(b)(i), the unquestionably ambiguous identification of the dominant estates in the 6/21/55 Second Subclause runs afoul of the requirement of non–ambiguity in <u>Morgenbesser</u>, 276 Conn. at 829, ___ A.2d at ___; and thus, the interpretation of the 6/21/55 Reservation Clause is to be made "against rather than in favor of the covenant", *Ibid.* Accordingly, the 6/21/55 R/Cs constitute only easements in gross which in turn causes the Wahba Lot not to be a dominant estate under the R/L Doctrine. In sum, each of the foregoing three levels of review of the

Case 3:02-cv-00462-AHN    Document 92-2    Filed 01/31/2006    Page 14 of 23

No. 3-02-CV-462 (AHN) *(Master Docket)*
No. 3-03-CV-275 (AHN) *(Member Case)*                    •*Opposition Memorandum by*
*(United States District Court, at Bridgeport, CT)*                    *the YMCA*

"language of the reservation clause" rebuttal factor negates any possible presumption herein of the R/L Doctrine.

(ii)    ***Second*: The Relevant Surrounding Circumstances**.    A classic illustration of the "carve–out" situation which triggers the R/L Doctrine is the set of surrounding circumstances in Vuono, 108 Conn. at 365, 143 A. at 248, which is the most–cited originating case of the R/L Doctrine.  In Vuono, a residential purposes "use" R/C was placed by the grantor (Betts) in his deeds conveying the two subject lots (to: Thamer; and Metcalf), which were carved out from Betts' ten–acre parcel; and, as a result, the Supreme Court held that the R/Cs in the Thamer and Metcalf Deeds were "obviously for the benefit of the remainder of the ten–acre tact of land then retained by [Betts]", and were therefore enforceable by the successor owners of Betts' lots that had been carved out from the Bett's grantor–retained and contiguous land, *viz.*, the "remainder of the ten–acre tract". *Ibid.*

Herein, the relevant surrounding circumstances are indeed the polar opposite of such a carve-out situation.  More specifically, and in an unusual move, the 6/21/55 Grantors explicitly recounted the Island's relevant chain of title history on the first two pages of the 6/21/55 Deed (*See* Exhibit "L"), as follows: (i) The Island Corporation ("TIC") had acquired the Island on 2/23/21; (ii) TIC conveyed the Island on 6/17/55 to the 6/21/55 Grantors and to three other persons; (iii) then via a combination of two other 6/17/55 Deeds, the three "other" persons conveyed their interests in the Island to the 6/21/55 Grantors; and (iv) the three 6/17/55 Deeds were recorded simultaneously with the 6/21/55 Deed.  In sum, it was pursuant to a very carefully orchestrated series of back–to–back conveyances in these three 6/17/55 Deeds that the 6/21/55 Grantors were able to cobble together their interests in the Island, which they then promptly donated the Island to the YMCA just four days later.  Simply stated, the 6/21/55 Deed was not whatsoever a carve-out by any of the 6/21/55 Grantors from

- 34 -

any of their existing lots on the shoreline in order to create a new parcel therefrom, *i.e.,* the Island. Thus, in this deed–acknowledged total absence of a carve–out situation by the 6/21/55 Grantors, who had created the subject 6/21/55 R/Cs, this surrounding circumstance/rebuttal factor negates any possible presumption herein of the R/L Doctrine.

      (e)    **Conclusion**. In sum, Mrs. Wahba's assertion that the R/L Doctrine is applicable herein is without merit not only because of the failure of the Island to be a contiguous parcel with the Wahba Lot, but also because the two presumption rebuttal factors have been met herein and thus negate any possible presumption of the R/L Doctrine.

      **WHEREFORE**, the YMCA respectfully requests that the Court deny Mrs. Wahba's 12/23/05 Motion.

*     *     *

      •**Dated** January 30, 2006 at Greenwich, Connecticut.

                **DEFENDANT**
                Young Men's Christian Association
                of Greenwich, Connecticut (YMCA), *a/k/a*

    By:      *Philip H. Bartels* (signature)
                Philip H. Bartels
    For:     Shipman & Goodwin LLP
                Its Attorneys
                289 Greenwich Avenue
                Greenwich, CT 06830-6595
                (203) 869-5600 * (Fax) 869-4648
                (Federal Bar No. ct06836)

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*                    •*Opposition Memorandum by*
*(United States District Court, at Bridgeport, CT)*              *the YMCA*

## CERTIFICATION OF SERVICE

THIS IS TO CERTIFY that a copy of the foregoing shall be mailed this day, postage prepaid, or via e-mail, to all formal and informal Counsel of Record on January 30, 2006:

John Hughes, Esq.
Civil Chief
United States Attorneys' Office
Box 1824
New Haven, CT 06508
Ben Franklin Station
Washington, DC 20044

Joy Ryan, Esq.
United States Department of Justice
Environment and Natural Resources Division
Land Acquisition Section
P.O. Box 561

Dorothy Nelson Stookey, Esq.
New England Regional Counsel
The Trust for Public Land (Inc.)
33 Union Street
Boston, MA 02108

John Van Allen Murray, Esq.
Diserio Martin O'Connor & Castiglioni, LLP
One Atlantic Street
Stamford, CT 06901

Mary E. Sommer, Esq.
Sandak, Hennessey & Greco, LLP
707 Summer Street – #3
Stamford, CT  06901–1026

David S. Golub, Esq.
Silver, Golub & Teitell LLP
184 Atlantic Street
P.O. Box 389
Stamford, CT  06904-0389

Philip H. Bartels

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(at Bridgeport)

| | | |
|---|---|---|
| THE CALF ISLAND COMMUNITY<br>TRUST, INC., and MARLYN TSAI | )<br>)<br>) | CIVIL NO. 3-02-CV-462 (AHN) |
| v. | )<br>) | |
| YOUNG MEN'S CHRISTIAN ASSOCIATION<br>OF GREENWICH, a/k/a, YMCA OF GREENWICH,<br>THE TRUST FOR PUBLIC LAND, d/b/a,<br>THE TRUST FOR PUBLIC LAND (INC.) | )<br>)<br>)<br>)<br>)<br>) | |
| UNITED STATES OF AMERICA | )<br>) | CIVIL NO. 3-03-CV-275 (AHN) |
| v. | )<br>) | |
| 28.8 ACRES OF LAND, MORE OR LESS,<br>LOCATED OFF THE COAST OF GREENWICH,<br>SITUATED IN THE COUNTY OF FAIRFIELD,<br>STATE OF CONNECTICUT, YOUNG MEN'S<br>CHRISTIAN ASSOCIATION OF GREENWICH,<br>CONNECTICUT (YMCA), AND UNKNOWN<br>OWNERS, ET AL. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| | ) | January 30, 2006 |

## YMCA'S LIST OF EXHIBITS IN CONNNECTION WITH SUSANNE P. WAHBA

SUBJECT PREMISES:   111 Byram Shore Road (the "Wahba Lot")
Greenwich, CT 06830

CURRENT OWNER:   Susanne P. Wahba

RE:   The Chain of Title for the Wahba Lot from 6/21/55 to the date hereof
(*i.e.,* starting from Rowena Lee Teagle, one of the Grantors of the
6/21/55 Deed to the Greenwich YMCA); the 6/21/55 Deed to the
Greenwich YMCA; a certain 11/1/01 Wahba Document; the Tsai
6/21/55–to–date Chain of Title; and the post–6/21/55 chains of title
of the other three 6/21/55 Grantors

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*
*(United States District Court, at Bridgeport, CT)*

•*Opposition Memorandum by*
  *the YMCA*

| EXH. | Grantor/Grantee | Date of Document; GLR Book and Page | *Any* Reference in the Deed to the 6/21/55 Deed's Covenants *or* even to the Island? |
|------|-----------------|-------------------------------------|--------------------------------------------------------------------------------------|
| A | •THE ROWENA LEE TEAGLE CHAIN OF TITLE NO. 1 RE: SUSANNE P. WAHBA: <br><br> Frank E. Mott and Michael Pinto (as Co–Executors of the Estate of Rowena Lee Teagle) *to* George P. Smith (Re: A first portion of the Teagle property) | 7/16/69; Bk. 790, P. 222 (Executors' Deed) | No |
| B | Greenwich Probate Court Certificate of Devise from Estate of Rowena Lee Teagle *to* George P. Smith (Re: A second portion of the Teagle property) | 7/31/69; Bk. 790, P. 368 (Certificate of Devise) | No |
| C | George P. Smith *to* Monica A. Smith | 12/25/69; Bk. 795, P. 450 (Q/C Deed) | No |
| D | Survey entitled, "Property of George P. and Monica A. Smith, Greenwich, Conn." (**N.B.** – The "Wahba Lot", a shorefront lot, is Lot No. 2 on said Survey) | 7/10/69; Town Map No. 5277 | N/A |
| E | Monica A. Smith *to* Mahmoud A. Wahba (Re: said Lot No. 2) | 4/2/75; Bk. 919, P. 172 (Warranty Deed) | No |
| F | Mahmoud A. Wahba *to* Susanne P. Wahba (Re: a one–half interest in Lot No. 2) | 7/14/76; Bk. 977, P. 123 (Warranty Deed) | No |
| G | Mahmoud A. Wahba *to* Susanne P. Wahba (Re: a one–half interest in Lot No. 2) | 3/26/02; Bk. 3827, P. 349 (Q/C Deed) | No |
| H | Susanne P. Wahba *to* Mahmoud A. Wahba and Susanne P. Wahba (Re: Lot No. 2) | 3/26/02; Bk. 3828, P. 61 (Q/C Deed) | No |
| I | Mahmoud A. Wahba *to* Susanne P. Wahba (Re: Lot No. 2) | 8/29/02; Bk. 3963, P. 339 (Q/C Deed) | No |

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*                    •*Opposition Memorandum by*
*(United States District Court, at Bridgeport, CT)*              *the YMCA*

| EXH. | Grantor/Grantee | Date of Document; GLR Book and Page | *Any* Reference in the Deed to the 6/21/55 Deed's Covenants *or* even to the Island? |
|------|-----------------|-------------------------------------|------------------------------------------------------------------------------------|
| J | Susanne P. Wahba *to* Susanne P. Wahba and Mahmoud A. Wahba (Re: Lot No. 2) | 5/24/04; Bk. 4647, P. 216 (Q/C Deed) | **No** |
| K | Mahmoud A. Wahba *to* Susanne P. Wahba (Re: a one–half interest in Lot No. 2) (via this 7/6/04 Deed, Susanne P. Wahba became the *sole* and now–current owner of Lot No. 2, the Wahba Lot) | 7/6/04; Bk. 4691, P. 171 (Q/C Deed) | **No** |
| L | •**OTHER DOCUMENTS:** Rowena Lee Teagle, Jeremiah Milbank, C. Redington Barrett and John D. Barrett, Jr. *to* the Young Men's Christian Association of Greenwich, Connecticut | 6/21/55; Bk. 538, P. 93 (Q/C Deed) | N/A |
| M | Agreement by Mahmoud A. Wahba and Suzanne (*sic*) P. Wahba | 11/1/01 (*unrecorded*) | N/A |
| N | •**THE ROWENA LEE TEAGLE CHAIN OF TITLE NO. 2 RE: TSAI:** Frank E. Mott and Michael Pinto (as Co–Executors of the Estate of Rowena Lee Teagle) *to* Gerald Tsai (Re: 109 Byram Shore Road–the "Tsai Parcel"–a shorefront lot) | 11/21/69; Bk. 794, P. 294 (Executors' Deed) | **No** |
| O | Gerald Tsai *to* Marlyn Tsai (Re: the Tsai Parcel) | 6/24/86; Bk. 1588, P. 225 (Warranty Deed) | **No** |
| P | Marlyn Tsai *to* Greenwich Oceanfront Property LLC (Re: the Tsai Parcel) | 10/11/05; Bk. 5038, P. 324 (Warranty Deed) | **No** |

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*
*(United States District Court, at Bridgeport, CT)*                    •*Opposition Memorandum by*
                                                                                              *the YMCA*

| EXH. | Grantor/Grantee | Date of Document; GLR Book and Page | *Any* Reference in the Deed to the 6/21/55 Deed's Covenants *or* even to the Island? |
|---|---|---|---|
| Q | Town of Greenwich's Geographic Information System Maps:<br><br>•**Page 1**:  Showing: the Wahba and Tsai Parcels; Calves Island; and Shell Island<br><br>•**Page 2**: Showing a close–up of the Wahba and Tsai Lots at 111 and 109 Byram Shore Road, respectively<br><br>•**Page 3**:  Showing: John D. Barrett, Jr.'s Lot A; C. Redington Barrett's Parcel B; Calves Island; and Shell Island | <br><br>•**Page 1**: 10/1/04 Data (*printed*: 12/30/05)<br><br>•**Page 2**:  10/1/04 Data (*printed*: 1/6/06)<br><br>•**Page 3**:  10/1/04 Data (*printed*: 12/22/05) | N/A |
| R | •**THE JEREMIAH MILBANK CHAIN OF TITLE NO. 1 RE: LOT NO. 4**:<br><br>Daniel G. Tenney, Jr., *et al.*, as Executors of the Estate of Jeremiah Milbank *to* Carl N. Jensen (Re: A 11.483 Ac. Parcel, which 11.483 Acres was subsequently shown as a 7–Lot Jensen Subdivision on 6/26/74 Map No. 5231— Exhibit "S" hereto) | 5/30/74; Bk. 890, P. 132 (Executors' Deed) | **No** |
| S | Survey entitled,  "Property of Carl N. Jensen, Greenwich, Conn." (Re: the 11.483 Ac. Parcel conveyed to Jensen— *See* Exhibit "R") (Re: Lot No. 4, *et al.*) | 6/26/74; Town Map No. 5231 | N/A |

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*                    •*Opposition Memorandum by*
*(United States District Court, at Bridgeport, CT)*                *the YMCA*

| EXH. | Grantor/Grantee | Date of Document; GLR Book and Page | *Any* Reference in the Deed to the 6/21/55 Deed's Covenants *or* even to the Island? |
|---|---|---|---|
| T | Carl N. Jensen *to* Vladimir Petrovitch (Re: a 1.509 Ac. shorefront lot, which is Jensen Subdivision Lot No. 4, and also portions of Lot Nos. 3 and 5—collectively, "Lot 4"–*See* Map No. 5231) | 10/2/74; Bk. 903, P. 243 (Warranty Deed) | **No** |
| U | Vladimir Petrovitch *to* E. Paul Charlap (Re: Lot No. 4) | 11/16/82; Bk. 1284, P. 131 (Warranty Deed) | **No** |
| V | E. Paul Charlap *to* Thomas Daly, Trustee (Re: Lot No. 4) | 5/6/88; Bk. 1823, P. 260 (Quitclaim Deed) | **No** |
| W | Thomas Daly, Trustee *to* E. Paul Charlap (Re: Lot No. 4) | 2/27/89; Bk. 1915, P. 225 (Quitclaim Deed) | **No** |
| X | E. Paul Charlap *to* Judith Riklis (Re: Lot No. 4) | 5/14/89; Bk. 1943, P. 59 (Warranty Deed) | **No** |
| Y | Judith Riklis *to* William M. Apfelbaum (Re: Lot No. 4) | 8/1/97; Bk. 2952, P. 190 (Warranty Deed) | **No** |
| Z | •**THE C. REDINGTON BARRETT CHAIN OF TITLE NO. 1 RE: LOT B:** <br><br> John David Barrett (*f/k/a,* John D. Barrett, Jr.) *to* Clarence Redington Barrett (Re: Lot B—said Lot B, a shorefront lot, is shown on Map No. 4390, Exhibit "CC" hereto) (As a result of said conveyance, the 12/31/35 50% interest of C. Redington Barrett in Lot B increased to 100%) | 5/21/62; Bk. 669, p. 340 (Quitclaim Deed) | **No** |
| AA | John David Barrett *to* Clarence Redington Barrett (Re: Lot B) | 9/29/70; Bk. 805, p. 437 (*Corrective* Quitclaim Deed) | **No** |

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (Member Case)*                    •*Opposition Memorandum by*
*(United States District Court, at Bridgeport, CT)*              *the YMCA*

| EXH. | Grantor/Grantee | Date of Document; GLR Book and Page | *Any* Reference in the Deed to the 6/21/55 Deed's Covenants *or* even to the Island? |
|------|-----------------|-------------------------------------|------------------------------------------------------------------------------------|
| BB | Application for Probate of Will; and the Last Will and Testament of C. Redington Barrett, at Article Fourth, which devised Lot B *to* C. Redington Barrett, Jr. and John D. Barrett, II (Re: Lot B) | • 12/11/74; Bk. 510, P. 227, of the Records of the Greenwich Probate Court (Application) •4/10/73; Bk. 510, P. 229, of the Records of the Greenwich Probate Court (Will) | N/A |
| CC | Survey entitled, "John D. and Clarence R. Barrett, Greenwich, Conn." (Re: Lot B, *et al.*) | 8/10/62; Town Map No. 4390 | N/A |
| DD | C. Redington Barrett, Jr. and John D. Barrett, II *to* Bruce N. Whitman (Re: Lot B) | 11/12/79; Bk. 1155, P. 300 (Warranty Deed) | **No** |
| EE | •**THE JOHN D. BARRETT, JR. CHAIN OF TITLE RE: LOT A:** Clarence Redington Barrett *to* John David Barrett (*f/k/a*, John D. Barrett, Jr.) (Re: Lot A, a shorefront lot, on Map No. 4390–YMCA Exhibit "CC") (As a result of said conveyance, the 12/31/35 50% interest of John D. Barrett, Jr. in Lot A increased to 100%) | 5/21/62; Bk. 669, P. 342 (Quitclaim Deed) | **No** |
| FF | Clarence Redington Barrett *to* John David Barrett (Re: Lot A) | 9/29/70; Bk. 805, P. 435 (*Corrective* Quitclaim Deed) | **No** |
| GG | Estate of John David Barrett (Probate Court Certificate of Notice of the 6/27/81 date of death) | 7/9/81; Bk. 1227, P. 116 (Probate Court Notice) | N/A |
| HH | John D. Barrett, II and William R. Lynch (as Co–Executors of the Estate of John David Barrett) *to* Bruce N. Whitman, Trustee (Re: Lot A) | 11/21/83; Bk. 1350, P. 145 (Executor's Deed) | **No** |

*No. 3-02-CV-462 (AHN) (Master Docket)*
*No. 3-03-CV-275 (AHN) (__Member Case__)*                    •*Opposition Memorandum by*
*(United States District Court, at Bridgeport, CT)*                    *the YMCA*

| EXH. | Grantor/Grantee | Date of Document; GLR Book and Page | __Any__ Reference in the Deed to the 6/21/55 Deed's Covenants *or* even to the Island? |
|------|-----------------|--------------------------------------|------------------------------------------------------------------------------------------|
| II | Bruce N. Whitman, Trustee __to__ Paul E. Raether and Wendy S. Raether (Re: Lot A) | 9/20/85; Bk. 1511, P. 207 (Warranty Deed) | **No** |

**N.B.**    The originals of the Certified Copies of the above Exhibits "O" and "P" were previously submitted to the Court as Exhibits "C" and "D", respectively, to the YMCA's 2/25/04 Local Rule 56(a)(1) Statement of Material Facts in the Master Case herein.

\*      \*      \*

#2274 v1 - YMCA's Memorandum in Opposition of the Motion by Susanne P Wahba