UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE CALF ISLAND COMMUNITY TRUST, INC., and MARLYN TSAI | : : : | CASE NO. 3:02cv00462 (AHN) (LEAD CASE) |
| v. | : : | |
| YOUNG MEN'S CHRISTIAN ASSOCIATION OF GREENWICH, a/k/a, YMCA OF GREENWICH, ET AL. | : : : | |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : : | CASE NO. 3:03cv00275 (AHN) (MEMBER CASE) |
| v. | : : | |
| 28.8 ACRES OF LAND, ET AL. | : | FEBRUARY 20, 2006 |

**REPLY MEMORANDUM OF SUSANNE P. WAHBA
IN SUPPORT OF
MOTION FOR AWARD OF COMPENSATION**

Claimant Susanne P. Wahba has moved for a determination in <u>United States of America v. 28.8 Acres of Land, et al.</u> (the Member Case) that she is eligible, pursuant to Fed.R.Civ.Pro. 71A(e), to receive just compensation from plaintiff United States of America ["United States"] in connection with the loss of certain restrictive covenants as the result of plaintiff's condemnation of Calf Island in Greenwich, Connecticut.

Mrs. Wahba submits this Reply Memorandum to address issues raised by defendant Young Men's Christian Association ["YMCA"] in its opposition memorandum which were not addressed in her original memorandum.[1]

---

[1] Plaintiff United States, in a separate memorandum, adopts and joins in defendant YMCA's arguments. Claimant Wahba's Reply is submitted as to both parties.

ARGUMENT

I.   THE RESTRICTIVE COVENANTS IN THE YMCA'S DEED CLEARLY
     RUN WITH THE LAND AND DO NOT CONSTITUTE A GROSS EASEMENT

The YMCA argues that the restrictive covenants set forth in its conveyance deed from the original owners of Calf Island constitute a gross easement which does not run with the land. The implication, were this true, would be that the covenants could only be enforced by the original grantors.

The YMCA bases this wholly unsubstantiated contention on an elaborate and rather bizarre interpretation of one phrase contained in the fifth covenant of the deed, while totally ignoring the remainder of the deed language. It argues that the restrictive covenants inure only to the benefit of the grantors – and thus are personal in nature – because the fifth covenant omits language of succession.

"In construing a deed, a court must consider the language and terms of the instrument as a whole."[2] Hare v. McClellan, 234 Conn. 581, 593 (1995). When read together with the introductory sentence, the fifth covenant clearly indicates the intention of the grantors that the restrictions obligate the "successors and assigns" of the YMCA and benefit the "heirs, legal representatives and assigns" of the grantors. The deed states:

---

[2] "Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance, and that it shall, if possible, be so construed as to effectuate the intent of the parties ⋯ In arriving at the intent expressed ⋯ in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected with the transaction, and every part of the writing should be considered with the help of that evidence." Hare, 234 Conn. at 593-94 (internal citation omitted). See also Lake Garda Improvement Assn. v. Battistoni, 160 Conn. 503, 513 (1971) ("court may also consider the surrounding circumstances at the time of the conveyance, and the situation of the parties at that time").

> And the Releasee, for itself, its successors and assigns, does hereby covenant and agree with the Releasors **and their respective heirs, legal representatives and assigns**:
>
> ...
>
> 5. That the foregoing covenants shall be deemed and construed as real covenants running with the land and **shall inure to the benefit of other lands** of the Releasors.

[See Exhibit C at 2-4, appended to Wahba Memorandum of Law dated December 23, 2005 (emphasis added)]. Where, as in the present case, the restrictive covenant contains words of succession, obligating the successors and assigns of the YMCA, "a presumption is created that the parties intended the restrictive covenant to run with the land." Weeks v. Kramer, 45 Conn. App. 319, 323 (1997).

While the YMCA attempts to persuade the Court that the restrictive covenants at issue constitute a "gross easement" personal only to the original grantors, it provides no support for such a position. The law is very clear that where a restrictive covenant is intended to benefit the dominant estate, regardless of who owns the land, it is a permanent easement running with the land, rather than a gross easement. Bauby v. Krasow, 107 Conn. 109, 113 (1927); Chappell v. New York, N.H. & H.R. Co., 62 Conn. 195, 24 A. 997 (1892) and cases cited therein; CJS, Easements §11.

An "easement in gross" is defined by the Restatement of Property as a benefit "that would be more useful to the original beneficiary than it would be to a successor [in interest]...." Restatement (Third) Property: Servitudes §4.5 (2000). See also Il Giardino v. Belle Haven Land Co., 254 Conn. 502, 512 (2000) ("An easement in gross is one which does not benefit the possessor of any tract of land in his use of it as such possessor").

Comment (d) to Section 4.5 of the Restatement addresses the distinction between a benefit appurtenant (i.e., that runs with the land) and one in gross:

> The fact that the benefit serves a purpose that is only or primarily useful to the holder of a particular interest in land, which was held by the original beneficiary at the time the servitude was created, strongly suggests that the benefit is appurtenant. The fact that the benefit serves a purpose that would be more useful to a successor to an interest in land held by the original beneficiary than to the original beneficiary after having parted with that interest in land also should lead to the conclusion that the benefit is appurtenant.
>
> Conversely, the fact that the benefit is primarily useful to the original beneficiary without regard to the beneficiary's ownership or occupancy of any particular interest in land strongly suggests that the benefit is in gross.[3]

"A right to enforce a covenant will not be inferred to be personal 'when it can fairly be construed to be appurtenant to the land.'" Calabrese v. McHugh, 170 F.Supp.2d 243, 254 (D.Conn. 2001), quoting Bauby v. Krasow, supra.

The Connecticut Supreme Court in Bauby v. Krasow rejected the notion that a restrictive covenant to prevent excessive building on an adjoining lot constituted a gross easement, even where the deed in which the covenant was found contained no words of succession or other indication that the grantor intended it to run with the land. 107 Conn. at 110-15. The plaintiff in that case, who had received his lot from the estate of one Minnie Dalton upon her death, brought

---

[3] The following illustration provides an example of this rule's application:
"O, the owner of Blackacre and Whiteacre, conveyed Whiteacre to A, subject to a servitude requiring that no structure or vegetation on Whiteacre be permitted to exceed 30 feet above the level of the street abutting Whiteacre. Blackacre was located across the street and enjoyed a view across Whiteacre. Because protection of the view across Whiteacre would be more useful to a successor to Blackacre than to O after transferring Blackacre, the conclusion would be justified that the benefit is appurtenant to Blackacre." Restatement (Third) Property: Servitudes §4.5, comment (d), illustration 1.

an action to enforce a covenant contained in the deed of Minnie Dalton to one Catherine McCarthy.  The covenant limited any building on the McCarthy lot to a single family house  Id. at 110-11.  McCarthy sold her lot to the defendant Krasow, who, having actual notice of the restrictive covenant, proceeded to erect a three family house on the lot.  Id. at 111.

The trial court held that the clause in the deed did not create an easement running with the land, and, thus, did not bind the heirs and assigns of Ms. McCarthy.  Id. at 111-12.  The Supreme Court disagreed, and held that because the covenant was made for the benefit of the land that Minnie Dalton had retained, it ran with the land and the plaintiff Bauby could enforce it.  Id. at 112-15.  Despite the fact that the deed shed almost no light on whether Ms. Dalton intended the covenant to benefit her retained land, the Court concluded :

> It is difficult to see how Minnie Dalton would have any interest in restricting the use of the lot sold except as owner of the property retained by her.  The nature of the restriction indicates that it was intended for the benefit of the house lot, to prevent such depreciation in its value as might result from the erection of a three-family house upon the adjoining lot.  **It seems to us that the fair inference, and the only one that could reasonably be drawn from the insertion of this restriction in the deed under the circumstances, is that its sole purpose was to protect the grantor's homestead** by restricting the character of any house that might be built upon the adjoining lot.
> ...
> There is nothing to indicate that the parties intended that that agreement should terminate upon the death of the covenantee.  It was manifestly intended to benefit her property and that benefit enures to her successor in title.

Id. at 114-15 (emphasis added).

As Bauby demonstrates, words of succession are not absolutely required in order for restrictions to run with the land, as long as the intent is clear that the restrictions benefit the

5

dominant estate. Id. Thus, even were there no language of succession in the deed, the overall intent of the grantors is clear that the obligations were to run with the land so as to bind all successors to the YMCA's interest in the Island.

Further, the covenants are meaningless without reference to the retained estates of the grantors. They could have no other purpose but to preserve the sightline of the Island and the Long Island Sound from the grantors' other properties, and to protect the market value of those properties. As such, they clearly run with the land to the benefit of all successors to the dominant estates, including Mrs. Wahba. Bauby v. Krasow, 107 Conn. at 115.

II. THE ABSENCE OF LANGUAGE IN THE WAHBA'S DEED AND CHAIN OF TITLE REFERRING TO THE RESTRICTIVE COVENANTS IS IRRELEVANT, AS SUCH LANGUAGE IS NOT REQUIRED.

The YMCA points to the fact that the restrictive covenants are not mentioned in any of the deeds in the chain of title to Mrs. Wahba, or in Mrs. Wahba's deed. They argue that the absence of such reference constitutes a series of admissions over the years by the prior owners of the Wahba lot and by Mrs. Wahba that the restrictive covenants are not enforceable by them. [Def. Mem. at 22-25]. This position has no merit. See, e.g., Schwartz v. Murphy, 74 Conn. App. 286, 290 (2002), cert. denied, 263 Conn. 908 (2003).

In Schwartz the plaintiff sought to enforce a "view easement" of the Long Island Sound over the property of the defendants. The defendants' deed expressly contained several restrictions, including one which incorporated an agreement entered into by the prior owners of the two lots and which prohibited any dwelling, accessory structure or view obstruction over a certain portion of the defendants' lot. Id. at 288-95. The plaintiff's deed contained no reference to any of the restrictions. Id. at 290. The trial court determined that a view easement existed for

6

the benefit of the plaintiff's property, and ruled in favor of the plaintiff.  Id.

The Appellate Court confirmed this portion of the ruling, stating:

> In its memorandum of decision, the [trial] court concluded that "**the source for the view easement** in favor of the plaintiff's property as the dominant estate ... over the defendants' property as the servient estate **is the deed by which the defendants obtained title to their property**, which contains certain conditions or restrictions...."  The [trial] court further concluded that **although the plaintiff's deed did not refer to the view easement, "the plaintiff is still able to enforce this restriction or condition** because both the defendants' predecessor in title ... and the plaintiff's predecessor ... signed an agreement establishing this restriction on the defendants' use of their property."  **We agree with the court.**

Id. (emphasis added).  The YMCA has cited to no law that contradicts the holding of Schwartz.

III.  THE DOMINANT ESTATE DOES NOT HAVE TO BE CONTIGUOUS OR ADJACENT TO THE SERVIENT ESTATE FOR THE COVENANTS TO BE ENFORCEABLE.

The YMCA also argues that the restrictive covenants do not run with the land (and therefore constitute a gross easement) because the lands retained by the grantors and the land deeded to the YMCA (the Island) are not contiguous or adjacent, but, rather, are separated by the Long Island Sound which is owned by a third party.  [Def.Mem. at 29-30].

The YMCA is simply wrong in asserting that the servient and dominant estates must be adjoining, as this is *not* the law in Connecticut.  In Il Giardino v. Belle Haven Land Co., the Connecticut Supreme Court, in deciding whether a resident of a private community in the Town of Greenwich had the right by easement to use the roads of a neighboring private community, stated:  "An easement appurtenant must be of benefit to the dominant estate but the servient estate need not be adjacent to the dominant estate."  254 Conn. at 512.

The Supreme Court had taken the same position in two prior cases. See Phoenix Nat. Bank v. U.S. Security Trust Co., 100 Conn. 622, 633 (1924) (test of whether an easement runs with the land is whether it is to be used in connection with the dominant estate, not whether the easement adjoins the dominant estate); Graham v. Walker, 78 Conn. 130, 134 (1905) ("An easement may be appurtenant to land although the servient tenement is separated by other lands from the dominant tenement").

In Harris v. Pease, the Court upheld a restrictive covenant that precluded all building on property located on the other side of the street so as to protect the dominant estate's view of the landscape and mountains. 135 Conn. 535 (1949). The Court held that as long as the restrictive covenant was not against public policy, it would be enforced. Id. The Court made no reference to the fact that the lands were separated by a roadway or to any requirement that the lands abut one another. See also Restatement (Third) Property: Servitudes §4.5, comment (d), illustration 1, supra, at n. 2.

Additionally, any purported requirement that the dominant and servient estates touch one another, as the YMCA contends, necessarily assumes that even the original grantors could not have enforced the restrictive covenants at issue, as their land, like Mrs. Wahba's, did not abut the Island. Such a result would, of course, be illogical. The YMCA agreed when it received the Island that it would comply with the restrictive covenants. If it is conceded that the grantors had the right to enforce the covenants during the time they owned their respective parcels, then Claimant Wahba had the same right. Schwartz v. Murphy, 74 Conn. App. at 290.

IV.  THE DOCUMENT WHICH YMCA RELIES UPON DOES NOT CONSTITUTE A WAIVER OF CLAIMANT'S RIGHT TO COMPENSATION.

In section 6 of its Memorandum, the YMCA argues that Mrs. Wahba's claim for compensation is moot because she (and her husband) signed a document in November 2001, attached as Exhibit D to Mrs. Wahba's Affidavit, which it contends is a full waiver of any rights. [Def.Mem. at 26-27]. As more fully discussed in her Memorandum dated December 23, Mrs. Wahba signed a document (which was not represented to her to be a waiver and was not identified as a waiver) agreeing that the Island could be used as a wildlife refuge and/or open space. [See Mem. at 11-16]. Preserving the Island as an open space, without construction, was consistent with the wishes of the original grantors, and certainly consistent with the Wahbas desire to protect their view. Mrs. Wahba had no intent – and the document does not indicate otherwise – to waive critical rights that she possessed to limit construction on the Island and to protect her property's sightline.

Indeed the document does not address or purport to affect those covenants prohibiting construction on the northwest side of the Island or restricting building height elsewhere on the Island. As stated previously, if the document is deemed to constitute a waiver of any of Mrs. Wahba's rights, the waiver is limited to those restrictions that the Island be used only for residential purposes, and that no trees or shrubs be cut. See Hackett v. Roosevelt School, 145 Conn. 119, 123 (1958) and other cases cited in Claimant's Memorandum of December 23 (waiver of one deed restriction does not waive all deed restrictions).

Because the facts surrounding the signing of this document are in dispute, Claimant believes that an evidentiary hearing should be conducted before the Court renders a ruling on the

effect of this document on Claimant's Motion for Award of Compensation. See L & R Realty v. Connecticut Nat. Bank, 246 Conn. 1, 16 (1998) (once the party seeking to invalidate a waiver presents evidence of a lack of intent to be bound by the waiver provision, the court must hold a hearing at which additional evidence may be received).

## CONCLUSION

For the reasons set forth in Susanne P. Wahba's Memorandum and Reply Memorandum, Claimant Wahba's Motion for Award of Compensation should be granted.

                                        CLAIMANT SUSANNE P. WAHBA,

By: _____
     DAVID S. GOLUB ct00145
     MARILYN J. RAMOS ct11433
     SILVER, GOLUB & TEITELL LLP
     184 ATLANTIC STREET
     STAMFORD, CT 06905
     203-325-4491

**CERTIFICATION**

This is to certify that a copy of the foregoing is being mailed, postage prepaid, this 20th day of February, 2006 to:

Philip H. Bartels, Esq.
John C. Fusco, Esq.
Shipman & Goodwin
289 Greenwich Avenue
Greenwich, CT 06830

John B. Hughes, Esq.
U.S. Attorney's Office
157 Church Street, 23rd Floor
P.O. Box 1824
New Haven, CT 06510

Julia Evans, Esq.
United States Department of Justice
Environment & Natural Resources Div.
Land Acquisition Section
P. O. Box 561
Ben Franklin Station
Washington, D.C. 20044

John V. A. Murray, Esq.
Diserio, Martin, O'Connor & Castiglioni
One Atlantic Street, Suite 500
Stamford, CT 06901

Mary Sommer, Esq.
Sandak Hennessey & Greco
707 Summer Street
Stamford, CT 06901-1026

Dorothy Nelson Stookey, Esq.
New England Regional Counsel
The Trust for Public Land (Inc.)
33 Union Street
Boston, MA 02108

                                                          _____
                                                          MARILYN J. RAMOS ct11433